# Exhibit 12

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **National Council of Nonprofits** et al.,<br><br>*Plaintiffs*<br><br>v.<br><br>**Linda McMahon** et al.,<br><br>*Defendants* | Case No. 25-cv-13242-MJJ |

### DECLARATION OF MICHAEL LUKENS

I, Michael Lukens, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Executive Director for the Capital Area Immigrants' Rights Coalition, d/b/a, the Amica Center for Immigrant Rights ("Amica Center"). I am above the age of 18 and have personal knowledge of the facts set forth in this Declaration.

2. Amica Center is a 501(c)(3) nonprofit organization based in Washington, DC. We employ over 110 full-time employees.

3. Amica Center's mission is to ensure equal justice for all immigrant adults and children through direct legal representation, impact litigation, education, and client-centered advocacy.  We are driven in our pursuit of a vision for a country with a humane and just immigration system that affords everyone due process and direct legal representation, protects all people seeking safety, and keeps communities together.  Amica Center is focused on providing legal services to clients—many of whom are children – who are detained in detention facilities overseen by U.S. Immigration and Customs Enforcement or placed in shelters overseen by the U.S. Department of Health and Human Services.

1

4. In my role as Executive Director, I oversee our legal and social services programs, our finance team, and our People and Operations Team. I have been with Amica Center for over eleven years.

5. We also encourage our employees to take advantage of PSLF and sign their PSLF paperwork when asked to do so. We have hosted PSLF internal webinars, including on June 6, 2024, and December 11, 2024, and we have spoken to the staff at many monthly all-staff meetings, including most recently on October 6, 2025. We make potential candidates aware of their eligibility for PSLF during the interview process.

6. Historically, when an employee requests to have their PSLF paperwork signed, our practice is to have the director of People and Operations review the documents and that it is sent to our People and Operations staff for signature. This includes for former employees.

7. Over the past twelve months, Amica Center has completed PSLF paperwork for approximately 15 employees or former employees. We have many dozens of employees who are, or will be soon, eligible for loan forgiveness.

8. Being able to support our employees' financial well-being through PSLF is important to us. Our employees are mission-driven, nonprofit workers who typically have significant student loan debt. They come to Amica Center to make a difference and to help people who are facing trauma, deportation, and an unjust legal system. PSLF allows them some security in their financial future by removing student loan debt, which can be crushing.

9. Without PSLF, we will face increased pressure to hire from the private immigration bar. We compete for immigration-focused attorneys with small and medium private law firms in the Washington, DC, Maryland, and Virginia markets. As a nonprofit, we cannot provide the same salary as a private firm. The advantages of PSLF help to close some of the gap between our salaries

and those of the private bar. If we lose the ability to do so, we will face hurdles to hiring that we have not had before.

10. As an immigration legal service provider, our movement has faced numerous allegations from the current administration that the type of services we provide could be considered illegal, including: assisting immigrants with deportation defense; providing Know Your Rights training events to community members as to how to protect themselves from ICE; and, providing legal support to alleged gang members and ex-members. We have also sued the administration several times over its immigration policies and tactics.

11. Typically when completing the PSLF paperwork, our staff only provides factual information: the employee's start date, their full-time status, and that Amica Center is a 501(c)(3) tax exempt nonprofit organization.

12. Since the new rule was first proposed, we have provided public comments to the Notice of Proposed Rulemaking and have asked staff about the impact of the proposed rule. We have also discussed the issue at length with staff at all staff meetings.

13. With the rule, we will need to secure counsel to help us determine how to adjust our policies, hiring practices, and policies on PSLF certification. We are also planning on providing additional PSLF information sessions for staff. All of this is a time burden on our already overstretched staff.

14. In addition to internal changes, we are figuring out how to appropriately work with potential candidates for employment so that they are aware of the possibility that PSLF will not be available and what that will mean for our salary structures.

15. Since the new rule was first proposed, our employees have also voiced their concerns that working at Amica Center may no longer qualify them for PSLF. One of our attorneys, Eric Lopez, had this to say:

16. PSFL is the key to my family's financial success and stability. I went into public service not solely because of the mission of my work, which is near and dear to me, but also because of long term debt relief possible through PSFL. Despite making a decade of consistent monthly payments, I owe more in student loans today than I did when I graduated in 2014. I am now 8.5 years into a public service career. Having PSFL taken away from me now means I will never be able to save for a down payment for a home or set away money for emergencies or create a college fund account for my 3-year-old daughter or meaningfully save for retirement. PSFL is the only way a person with my background with working class immigrant parents stands a chance at obtaining pieces of the American Dream.

17. The risk of losing PSLF eligibility puts Amica Center in a very difficult position. We cannot forgo our mission to help immigrants in order to avoid any activities that could be construed as having a "substantial illegal purpose" under the Department's definition, but given the vagueness of that definition and how the regulation will be interpreted and applied, Amica Center cannot guarantee its current or future staff that it will always be a PSLF-eligible employer.

18. Although we maintain that our work is both legal and important, recent actions by this administration make Amica Center worry that the Department will target it and will disqualify it from the PSLF program.

19. This administration has, to date, tried to shut down our work. They have cut all of our federal funding streams, which have been in place for many years. We are litigating all of these cuts. They have changed rules to make our litigation for our clients more difficult, and they have

made it harder for us to find and meet with our clients in detention. This administration has made it its mission to dehumanize immigrants and to denounce our mission.

20. If the Department determines Amica Center is no longer eligible for PSLF, we expect that we will lose staff, have a harder time hiring staff, and have to expend time and money to keep up our mission at a level commensurate with our current standard.

I declare under penalty of perjury that the foregoing is true and correct.

Washington, D.C.  
February 12, 2026

_____  
Michael Lukens