# Exhibit 13

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **National Council of Nonprofits** et al.,<br><br>*Plaintiffs*<br><br>v.<br><br>**Linda McMahon** et al.,<br><br>*Defendants* | Case No. 25-cv-13242-MJJ |

**DECLARATION OF ANGELICA SALAS**

I, Angelica Salas, declare as follows:

1. I am the Executive Director for the Coalition for Humane Immigrant Rights (CHIRLA). I am above the age of 18 and have personal knowledge of the facts set forth in this Declaration.

2. CHIRLA is a 501(c)(3) nonprofit organization based in Los Angeles, CA. CHIRLA employs over 200 full-time employees.

3. At CHIRLA, our mission is to achieve a just society, fully inclusive of immigrants. In furtherance of this goal, we: organize immigrants, including undocumented people, to advocate effectively for their own rights; advocate for pro-immigrant policies at the federal, state and local levels; offer community education services, including know your rights presentations; and offer immigration legal services. The legal services are provided on a pro bono basis, including removal defense, naturalization, Deferred Action for Childhood Arrivals (DACA) renewal, and services delivered on state college campuses; and asylum assistance.

1

4. Further, CHIRLA helps collect and distribute items to help meet basic needs of certain immigrants; manages and redistribute state grants to subgrantees; operates hotlines to field questions and requests for help from CHIRLA members and members of the public; engages in impact litigation in order to move US immigration policy in a more pro-immigrant direction; and takes a leading role in the Los Angeles Rapid Response network, which documents immigration arrests during this era of mass immigration raids and seeks to connect impacted individuals with support, among other efforts.

5. In my role as Executive Director, I oversee all of CHIRLA's programs and am responsible for strategic planning and CHIRLA's annual budget.

6. CHIRLA actively uses its status as an eligible employer for the Public Service Loan Forgiveness (PSLF) program to recruit and retain employees. One way we do this is by stating to applicants and employees, when asked, that we are a PSLF-eligible organization.

7. We also encourage our employees to take advantage of PSLF and sign their PSLF paperwork when asked to do so. A true and accurate copy of our communications to employees about PSLF is attached as Exhibit A.

8. Historically, when an employee requests to have their PSLF paperwork signed, CHIRLA's practice is to have the employee submit the completed form using the U.S. Department of Education's (the "Department") online PSLF tool, providing the e-mail address of our Director of Administration and Human Resources, who then confirms the employees' employment information and signs the form.

9. Over the past twelve months, CHIRLA has completed PSLF paperwork for approximately 10 employees.

10. Being able to support our employees' financial wellbeing through PSLF is important to us. The PSLF program allows us to attract talented attorneys to our organization who, given the financial constraints they are operating under as a result of their student loans, can only consider working for employers who either participate in the PSLF or pay more than we can afford to offer. Some of our attorneys who participate in this program are themselves the children of immigrants, which shows that this program has helped us to hire individuals who are not just professionally qualified but who also bring relevant life experience to the job. Moreover, it is important to us to support our staff who have taken out student loans in managing that debt, because we value all of our employees and want to see them all succeed financially.

11. Our status as a PSLF-eligible employer is an important advantage that sets us apart from private sector employers who are competing to hire the same attorneys whom we ultimately hire. There are many talented experienced and up and coming attorneys who would jump at the chance to do the kind of work that we do at CHIRLA, because they care so deeply about the wellbeing of the immigrant community and they want to use their skills in furtherance of that. However, many attorneys, and many attorneys who are drawn to this kind of work, graduate law school with enough debt that the salaries we offer are not, on their own, enough to make it a financially viable proposition for those attorneys to work with us. On the other hand, there are plenty of private sector law firms that can offer these attorneys significantly higher pay because they are making a significant amount of money in representing their clients. By contrast, we represent all our clients pro bono, putting us at a disadvantage in attracting attorneys to our organization if the PSLF program were to be taken away from us.

12. Because of the Department's changes to the PSLF program and paperwork, we have had to consider whether the Department would determine that our work has a "substantial illegal purpose" and exclude us from the program.

13. The Trump administration, which has described the very presence of immigrants in the US as "illegal" and an "invasion," could classify literally every CHIRLA activity named in paragraph 3 above as "activities with a substantial illegal purpose," according to their own idiosyncratic interpretation of what that term means.

14. In addition, two federal grants have been terminated mid-cycle and prior to payout respectively, due to vague insinuations regarding our work. Together, these increase our fear of imminent harm in the wake of the new PSLF policy.

15. Typically when completing the PSLF paperwork, our staff only provides factual information: the employee's start date, their full-time status, and that CHIRLA is a 501(c)(3) tax exempt nonprofit organization.

16. Since the new rule was first proposed, CHIRLA has had internal discussions regarding the significant burden it would put on us. For example, to comply with the new rule, our staff will have to certify that CHIRLA is not engaged in any activities with a "substantial illegal purpose" as defined in the new regulation. This requires a legal determination that is difficult for us to make in the abstract, without more clarity about how the Department will interpret and apply this new term in its regulations.

17. We had a number of other internal meetings to discuss what the impact of this would be on the organization. Our impact litigation team has had to conduct internal research, talking to individuals in departments as diverse as Human Resources to Legal Services to Policy, in order to grasp the scope of the disruption that our organization is facing.

18. We anticipate having to reassess numerous internal policies and procedures depending on how the rule is implemented, including but not limited to, internal training, salary structure and benefits packages.

19. Since the new rule was first proposed, some employees have also voiced their concerns that working at CHIRLA may no longer qualify them for PSLF. One team leader in the Legal Services department said that if CHIRLA could not participate in the PSLF program, so many attorneys would have to leave that it would "destroy" our ability to provide legal services to people on the scale that we do now. The person added that for the government to float this change so late in the game, after she and so many others already made major life decisions in reliance on the promise represented by the PSLF program to forgive loans after 10 years of public service work, would expose her and others in similar positions to the possibility of financial ruin, something they never would have signed up for had they known in advance that the government would change its mind once they were years into the process.

20. Another team leader in the Legal Services department said that it was the existence of the PSLF program that gave her the financial confidence to even go to law school in the first place.

21. A third CHIRLA attorney called the situation "despair inducing" and said that he tries to avoid thinking about it too much to avoid the anxiety that this causes. He added that while he might have the option to work in private law in order to eventually pay down his debt, many opportunities in the private sector will have already closed off to him since he decided to move directly into the public interest space following law school, without first spending time at a private firm such as a "big law" firm.

22. An additional CHIRLA attorney described it as a "kick in the gut" the possibility that the PSLF program could be yanked away from her after she spent 7 years participating in it. The financial relief offered by the PSLF program was a very significant factor in her decision to work in the public interest sphere.

23. The risk of losing PSLF eligibility puts CHIRLA between a rock and a hard place. It cannot forgo its mission to achieve a just society, fully inclusive of immigrants in order to avoid any activities that could be construed as having a "substantial illegal purpose" under the Department's definition, but given the vagueness of that definition and how the regulation will be interpreted and applied, CHIRLA cannot guarantee its current or future staff that it will always be a PSLF-eligible employer.

24. Although we maintain that our work is both legal and important, recent actions by this administration make CHIRLA worry that the Department will target it and will disqualify it from the PSLF program.

25. In February 2025, Department of Homeland Security (DHS) Secretary Kristi Noem froze and terminated funding related to the Citizenship and Integration Grant Program as part of a broader assault on funding to immigration related programs. This resulted in CHIRLA losing around $100,000 worth of Congressionally approved funds. In early 2025, the City of Los Angeles was told it would not be receiving the awarded Federal Emergency Management Agency (FEMA) Shelter and Services grant to help recent migrant arrivals. CHIRLA was an intended subgrantee and as a result lost several million dollars in expected funding.

26. If the Department determines CHIRLA is no longer eligible for PSLF, we will likely lose key staff, including several lawyers, many who serve in positions of leadership. Losing these individuals would mean a tremendous loss in institutional knowledge, as some of them have

worked at CHIRLA for years as they climbed to reach the positions they are in now. This would make it difficult for these teams and departments to continue working effectively on their ongoing work, such as providing legal services to clients and engaging in impact litigation in cooperation with other organizations, and would make it challenging for these teams to take on new clients and new cases, and to grow in the ways that we currently envision. It would leave us in a position of needing to rebuild some of the departments most important to our members and our donors in the midst of the chaos of the Trump administration's immigration antics and the immense need for organizations like ours to respond on many fronts at once.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___2/12/2026___ at ___Los Angeles, CA___.

_[signature]_

ANGELICA SALAS

7

# Exhibit A

 Outlook

## Re: Public Service Loan Forgiveness Waiver due today

**From** Maritza Agundez <magundez@chirla.org>
**Date** Mon 10/31/2022 2:13 PM
**To** CHIRLA Staff <staff@chirla.org>

Following up with a link that Carl shared with me this morning for reference:
https://studentaid.gov/announcements-events/pslf-limited-waiver

Thanks Carl!

In Solidarity,
Maritza

*If you are receiving this email outside of your typical working hours, I hope you feel no pressure to read or respond until your schedule and workload permit.*



**Maritza R. Agundez, Esq.**
Director of Programs and Subcontract Administration

tel: 213.201.3781
chirla.org

700 N Bullis Rd Suite 1A
Compton, CA 90221

Sacramento · Washington, D.C. · Downtown Los Angeles
South Los Angeles · East Los Angeles · San Fernando Valley
San Bernardino · Orange County · Central Valley

*****CONFIDENTIAL INFORMATION****
The information contained in this email is ATTORNEY PRIVILEGED AND CONFIDENTIAL. It is intended only for the use of the individual or entity named above. If the reader is not the intended recipient, or the employee or agent responsible for its delivery to the intended recipient, you are hereby notified that the dissemination, distribution or copying of this document is strictly prohibited. If you have received this communication in error, please immediately notify the sender by e-mail, and destroy the original message.

On Mon, Oct 31, 2022 at 9:50 AM Maritza Agundez <magundez@chirla.org> wrote:
> Hi team,
>
> I hope you had a great weekend.
>
> Just wanted to remind folks that today is the due date for the public service loan forgiveness waiver, October 31, 2022.
>
> Today is the last day you can submit a waiver to ensure that any payment made from October 2007 until now, while you were working full time at a 501(c)(3) can be counted towards the 120 payments needed for forgiveness.
>
> In regards to the student debt relief of up to $20,000 for Pell grant recipients, that due date is much farther away, December 2023.
>
> Hope that brings clarity to some folks.
>
> In Solidarity,
>
> Maritza

--

In Solidarity,

Maritza
Inline image

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

 **Outlook**

**Fwd: Take Advantage of Public Service Student Loan Forgiveness by October 31**

From  Angelica Salas <asalas@chirla.org>
Date  Thu 10/6/2022 4:31 PM
To       CHIRLA Staff <staff@chirla.org>

 

link to the campaign landing page.


---------- Forwarded message ---------
From: **Congresswoman Judy Chu** <CA27JCima-113@mail.house.gov>
Date: Thu, Oct 6, 2022 at 11:05 AM
Subject: Take Advantage of Public Service Student Loan Forgiveness by October 31
To: <asalas@chirla.org>



Dear Friend,

If you have a federal student loan and are employed by a U.S. federal, state, local, or tribal government or a not-for-profit organization, you may be able to benefit from temporary

changes made by the Biden Administration to the Public Service Loan Forgiveness (PSLF) program. These changes, called the "Limited PSLF Waiver," are helping borrowers across the nation more easily have their loans forgiven – but if you haven't already applied for PSLF, you must **submit a PSLF form and/or consolidate your non-Direct federal student loans by October 31, 2022, to qualify for the benefit.**

The PSLF program forgives the remaining balance on your Direct Loans after you have made 10 years/120 qualifying monthly payments under a qualifying repayment plan while working full-time for a qualifying employer. The current Limited PSLF Waiver allows more borrowers to be eligible for PSLF credit, even if they had been told previously that they had the wrong loan type or the wrong repayment plan. For example:

- The waiver gives borrowers credits for past periods of repayment on federal student loans – <u>even loan types that would otherwise not qualify for PSLF</u> (i.e., Federal Family Education Loans (FFEL), Federal Perkins Loans, Federally Insured Student Loans (FISL), National Defense Student Loans (NDSL), and other types of federal loans that are not Direct Loans) - as long as the borrower consolidates these loans into a federal Direct Loan by October 31.
- Past periods of repayment <u>will now count</u> whether or not you made that payment on time, for the full amount due, or on a qualifying repayment plan. The Department of Education will even count certain periods of forbearance toward PSLF.

You can learn more about the waiver here.

There's no specific application for the waiver – <u>you will just need to submit a PSLF form by October 31 if you haven't already done so</u>. If you have non-Direct federal student loans, you'll also need to consolidate into a Direct Loan before October 31. Once you have submitted a PSLF form and (if necessary) consolidated into the Direct Loan program, you will be automatically opted into the waiver and will start accruing credit towards PSLF.

To take advantage of the waiver, you need to take the following steps:

1. Register for an FSA ID if you don't already have one at this link.
2. Check to see if you work or previously worked for a qualifying employer using the PSLF Help Tool at this link.
3. If you have Federal Family Education Loans (FFEL), Perkins loans, or other federal student loans including FISL or NDSL, you will need to apply to consolidate your loans into a Direct Consolidation Loan to qualify for PSLF. You can consolidate your loans if you need to at this link.
4. Submit a PSLF form to certify employment for PSLF that you want credit for through the waiver. You can find the PSLF form at this link.

    a. In the PSLF Help Tool, it's important to use the appropriate Federal Employer Identification Number (EIN). Please check with your HR department for the correct EIN for your employer. You can also find it on your W-2.

**If you previously applied for PSLF and were denied, we encourage you to try again. If you previously applied for PSLF, we encourage you to update your employment certification by completing a PSLF form.**

**Remember, you need to take the above steps BEFORE OCTOBER 31, 2022, to qualify for the Limited PSLF Waiver. Just a few minutes of your time may save you *thousands of dollars* on your student loans!**

Sincerely,

*Judy Chu*

Judy Chu, PhD
Member of Congress

Unsubscribe