# Exhibit 14

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **National Council of Nonprofits** et al.,<br><br>*Plaintiffs*<br><br>v.<br><br>**Linda McMahon** et al.,<br><br>*Defendants* | Case No. 25-cv-13242-MJJ |

## DECLARATION OF IAN STOKER

I, Ian Stoker, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Human Resources Director for Plaintiff City of Albuquerque (the "City"). I have held this position since 2024. In this role, I am responsible for overseeing recruitment, hiring, benefits administration, employee relations, retention strategies, workforce planning, and compliance with employment-related laws and regulations. I am over the age of 18 and have personal knowledge of the matters set forth in this declaration and could competently testify to them.

2. The City of Albuquerque is the largest city in the State of New Mexico, serving more than 560,000 residents. The City employs more than 5,800 personnel working across numerous departments, including but not limited to the Albuquerque Police Department, Fire Rescue, Aviation Department, Community Safety, Emergency Management, Planning Department, and others that provide essential public services.

3. As a local government employer, the City employs numerous individuals who participate, or have participated, in the federal Public Service Loan Forgiveness ("PSLF")

1

program. Although the City does not centrally track PSLF participation, the City conducted an internal survey in October of 2025 to better understand employee reliance on PSLF.

4. Based on that survey, 829 City employees responded. Approximately 200 respondents (24.2%) indicated that they are currently participating in PSLF. Approximately 337 respondents (40.7%) stated that the availability of PSLF influences their decision to continue working for the City. Approximately 24.2% of respondents also indicated that PSLF was a factor in their decision to accept employment with the City.

5. PSLF is a significant recruiting and retention tool for the City, particularly for positions that require post-secondary education, professional licensing, or advanced training. These positions include, for example, law enforcement officers, attorneys, engineers, social workers, emergency medical technicians, and other professional and technical employees. In many of these fields, the City competes directly with private-sector employers that can often offer substantially higher compensation.

6. Based on my experience overseeing the City's workforce needs, PSLF is frequently discussed in recruitment and onboarding conversations, benefits orientations, and retention discussions with employees. Employees routinely identify PSLF as a reason they are able to remain in public service despite more lucrative private-sector opportunities.

7. The PSLF rule and related federal actions have already created uncertainty among City employees. Human Resources has received inquiries from employees concerned about whether their service with the City will continue to qualify for PSLF and whether they should seek alternative employment to protect their eligibility.

8. If the City were excluded from PSLF eligibility, I expect the City would face immediate and significant challenges in retaining employees who are currently relying on PSLF.

Based on the survey results and my experience, a substantial number of employees would likely seek employment with other PSLF-eligible entities or private-sector employers offering higher wages. This would result in increased turnover, loss of institutional knowledge, operational disruption, and degradation in the delivery of public services.

9. The City would also face heightened difficulty recruiting qualified candidates. Positions requiring specialized training or professional credentials are already difficult to fill. Loss of PSLF eligibility would materially impair the City's ability to compete for candidates, lengthen vacancies, and increase the cost and time required to fill critical roles.

10. The City operates under a constrained municipal budget. The City does not have the financial capacity to replace PSLF as a recruitment and retention tool through salary increases, loan repayment programs, or other compensation enhancements. Any attempt to offset the loss of PSLF would require diverting limited funds from other essential City services.

11. As a result, the City would likely be forced to adjust hiring practices, including reducing hiring in certain positions, restructuring job qualifications, increasing reliance on contractors, or leaving vacancies unfilled for extended periods. Each of these measures would negatively affect City operations and service delivery.

12. The PSLF rule and related federal actions also impose and will continue to impose significant compliance and administrative burdens on the City. The City has already been required to devote increased staff time to monitoring federal developments, responding to employee concerns, reviewing guidance, and assessing potential impacts on City operations.

13. The City anticipates the need to divert additional Human Resources, Legal, and administrative staff resources to understand, interpret, and attempt to comply with the PSLF rule.

This includes potential retention of outside legal counsel, development of new internal guidance and training materials, and ongoing monitoring of employee eligibility issues.

14. These activities divert staff time and City resources away from the City's core mission of providing public services. They also impose real and ongoing costs that the City would not otherwise incur.

15. Recent actions by the federal government have heightened the City's concern that enforcement or exclusion efforts are likely. For example, the Department of Justice has publicly identified Albuquerque as a targeted "sanctuary jurisdiction" in connection with the City's Immigrant Friendly Resolution.

16. The risk that the City's eligibility for PSLF could be challenged or withdrawn has already affected workforce stability, employee planning, and Human Resources operations.

17. If the City were required to change its policies, programs, or activities to attempt to comply with the PSLF rule or avoid potential exclusion, the City would be forced to reevaluate aspects of its operations that are unrelated to education finance and directly tied to the City's public mission. Such changes would interfere with the City's priorities, limit its discretion as a municipal employer, and impair its ability to serve residents effectively.

18. In my professional judgment, the PSLF rule places the City at substantial risk of staffing shortages, increased costs, administrative burdens, and disruption to essential services, all of which harm the City's operations today and threaten greater harm in the near future.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __2/11/2026__, in Albuquerque, New Mexico.

*Ian Stoker*
F38A9B3E3D744BE...

Ian Stoker
Human Resources Director
City of Albuquerque

5