# Exhibit 17

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **National Council of Nonprofits** et al., <br><br> *Plaintiffs* <br><br> v. <br><br> **Linda McMahon** et al., <br><br> *Defendants* | Case No. 25-cv-13242-MJJ |

### DECLARATION OF RONNY LAU

I, Ronny Lau, declare as follows:

1. I am the Associate Director of Government Relations for the National Education Association ("NEA"). I am above the age of 18 and have personal knowledge of the facts set forth in this Declaration.

2. In my role as Associate Director of Government Relations, I oversee NEA's national advocacy strategy to help ensure higher education is accessible and affordable for all Americans, and lead efforts that assist NEA members in successfully navigating federal student loan relief options, such as Public Service Loan Forgiveness (PSLF).

3. NEA is the nation's largest labor union, representing nearly 3 million members who work at every level of education – from pre-school to university graduate programs. Our members include aspiring educators, K-12 classroom teachers, education support professionals, school counselors, school psychologists, and other professional support personnel as well as higher education faculty and staff, who engage in a variety of educational activities both inside and outside of the classroom.

1

4. NEA has statewide affiliates in every state, the District of Columbia, an affiliate representing federal employees, and more than 17,000 local affiliates in communities across the United States. NEA's Constitution and Bylaws provide for unified membership in NEA, meaning that to become an NEA member, individuals must also join their local and state affiliate. Consequently, NEA members are also members of their state and local affiliate.

5. NEA was founded in 1857 to advocate for education professionals and to unite our members and the nation to fulfill the promise of public education to prepare every student to succeed in a diverse and interdependent world. This includes supporting members' financial well-being through education and advocacy regarding student loan debt.

6. NEA is a democratically governed union. Our highest governing body is the NEA Representative Assembly, which consists of thousands of duly elected delegates who meet annually to approve NEA's budget, elect NEA's officers, adopt and amend NEA's Constitution, Bylaws, Resolutions, and Standing Rules, and chart the course of the organization for the coming year.

7. NEA's overall goals, as adopted by the duly elected delegates to the NEA Representative Assembly, are set forth in the Preamble to the NEA Constitution, and include that NEA will "advance the cause of public education for all individuals" and "protect the rights of educational and other public employees and advance their interests and welfare."

8. NEA expresses its position on various issues through Resolutions adopted by the Representative Assembly. Through various Resolutions, NEA has reaffirmed its commitment to ensuring that students have affordable access to a postsecondary education and that educators have access to the Public Service Loan Forgiveness Program (PSLF) and other student loan relief programs.

9. In pursuit of its goal, NEA educates and assists members with navigating the complicated student loan debt system, including the PSLF Program and other debt-relief programs. We maintain and regularly update a "Student Debt Support" website as part of NEA's broader internet presence.[1] On that site, we educate members about student debt issues, inform members about ways to seek student debt relief, answer common questions about PSLF with our Frequently Asked Questions page, and encourage members to seek PSLF if they believe they are eligible. We host regular webinars with members to present information about student debt relief programs and answer members' questions. And with the support of NEA Member Benefits, all NEA members receive free access to our Student Debt Navigator tool, created in partnership with a company called Savi. Through the Navigator tool, members receive personalized advice from student debt experts about student debt relief options and assistance in e-filing PSLF applications.

10. The vast majority of NEA members work for employers who are "qualifying employers" under the PSLF program. Most work for government entities, including public school districts, state colleges and universities, early childhood education providers, and Department of Defense Education Activity schools. Others work for educational institutions that are 501(c)(3) nonprofit organizations.

11. Based on our own research, we believe that NEA members and other educators rely heavily on federal financial aid programs to complete their own education and to support their children's education. On average, 45% of educators take out student loans to finance their education. This number increases to 56% for Black educators and 65% for educators between the ages of 18 and 35.[2] This is a daunting amount of debt for our members, who generally earn less

---

[1] NEA, *Student Debt Support*, https://perma.cc/GEW8-MDDT (last visited Feb. 9, 2026).

[2] M. Hershcopf et al., *Student Loan Debt among Educators: A National Crisis,* National Education Association (2021), https://perma.cc/WYU9-QHGG.

3

than similarly situated, college-educated professionals. As a result, many educators rely heavily on PSLF as a financial lifeline.

12. The promise of loan forgiveness creates an incentive for college students – many of whom join NEA as "Aspiring Educator" members - to pursue careers in education, and for classroom teachers, education support professionals, and other educators – who join NEA as "Active" members - to remain in the profession.

13. The Administration has made clear that it includes within the scope of activities with an allegedly "substantial illegal purpose" a broad range of activities that are lawful and oftentimes engaged in by schools at which NEA members work. For example, in March 2025, the Department of Education's Office for Civil Rights opened investigations into 45 universities claiming they engaged in illegal discrimination in violation of Title VI of the Civil Rights Act of 1964 by maintaining race-conscious admissions practices.[3] Under the Final PSLF Rule, the Department could disqualify those universities and others if it finds their actions unlawful, even if the courts determine that the universities violated no law. Were that to occur, employees of those universities, including NEA members, would stop accruing credit toward PSLF for payments made while they worked for those universities after those institutions are deemed to have engaged in activities with a substantial illegal purpose.

14. The Department has also opened dozens of investigations of PreK-12 schools, alleging they have refused to comply with guidelines on transgender students' rights in violation of Title IX of the Education Amendments of 1972, which prohibits sex-based discrimination in any school or any other education program that receives federal funding. For instance, in August 2025, the Department announced that it was placing on "high-risk status" five school districts in

---

[3] Press Release, U.S. Dep't of Educ., Office for Civil Rights Initiates Title VI Investigations into Institutions of Higher Education (Mar. 13, 2025), https://perma.cc/7P5N-DBFC.

4

northern Virginia, asserting that "all five Divisions have been found in violation of Title IX."[4] In January 2026, the Department announced that it had initiated investigations into 18 educational entities in 10 states – including public school districts, higher education institutions, and others - based on alleged Title IX violations.[5] NEA represents thousands of educators employed in those school districts. Should the Department decide that those districts are engaged in activities with a substantial illegal purpose, those NEA members would not receive credit towards loan forgiveness under PSLF for loan payments made after the Department makes that determination.

15. Likewise, NEA fears that the Department will use the Final Rule to exclude schools from the PSLF program based on policies related to the immigration status of students and employees. For example, in June, the Department of Justice filed suit against the Minnesota Office of Higher Education, as well as the State of Minnesota, Governor Tim Walz, and Minnesota Attorney General Keith Ellison, challenging a Minnesota law that grants in-state tuition to residents of Minnesota who are not lawfully present in the United States. The complaint asserts that the law is preempted by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). Relying on this same argument, the Department could maintain that public universities in Minnesota are excluded because they engage in the substantial illegal purpose of aiding or abetting violations of federal immigration law, thereby harming NEA members employed by those schools.

16. The ability to exclude school districts, colleges, and universities from the definition of "qualifying employer" under PSLF also injures NEA. This uncertainty harms NEA's ability to

---

[4] Press Release, U.S. Dep't of Educ., U.S. Department of Education Places Five Northern Virginia School Districts on High-Risk Status and Reimbursement Payment Status for Violating Title IX (Aug. 19, 2025), https://perma.cc/CT8U-DX5T.
[5] Press Release, U.S. Dep't of Educ., U.S. Department of Education's Office for Civil Rights Initiates 18 Title IX Investigations (Jan. 14, 2026), https://perma.cc/4574-VGRH.

5

carry out our core mission of "protect[ing] the rights of educational and other public employees and advanc[ing] their interests and welfare." *See supra* at ¶ 7. The Final Rule, and the uncertain nature of how it will be deployed, will make it more difficult, expensive, and time-consuming for NEA to advise members of their eligibility for PSLF through webinars, guidance, and other member communications. Likewise, the Final Rule creates a danger that would impact NEA's ability to advocate on behalf of all students and educators, including those who identify as transgender or nonbinary, and those who are undocumented, without potentially impacting the PSLF eligibility of NEA members.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  2/11/2026  in Washington, D.C.

_____

RONNY LAU