# EXHIBIT A

# [Proposed] Brief of *Amici Curiae* Civil Legal Aid Organizations

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL COUNCIL OF NONPROFITS, et al., | |
| *Plaintiffs*, | |
| v. | Case No: 1:25-cv-13242 |
| LINDA MCMAHON, et al., | **Leave to file granted on:** |
| *Defendants*. | _____ |

**[PROPOSED] BRIEF OF *AMICI CURIAE* MARYLAND LEGAL AID, GREATER BOSTON LEGAL SERVICES, INC. AND OTHER CIVIL LEGAL SERVICES ORGANIZATIONS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Kevonne Small*
Chief Legal Director
MARYLAND LEGAL AID

Kathryn Baxter*
Staff Attorney
MARYLAND LEGAL AID

Lauren D. Song (BBO# 6378715)
Lead Attorney | Community & Public Initiatives
GREATER BOSTON LEGAL SERVICES, INC.

*Counsel for proposed* Amici Curiae *Maryland Legal Aid, Greater Boston Legal Services, Inc., and Other Civil Legal Aid Organizations as identified in full on Appendix A attached hereto.*

*\*Pro hac vice* pending.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

SUMMARY OF THE ARGUMENT .................................................................................. 1

ARGUMENT ........................................................................................................................ 2

**I.     The Final Rule Harms the Capacity of Civil Legal Aid Organizations to Serve Vulnerable Communities by Injecting Uncertainty and Significantly Impairing Efforts to Recruit and Retain Staff** ............................................................................................ 2

A.    Civil Legal Aid Organizations Strengthen Communities by Providing Assistance to Millions of Americans on a Broad Array of Legal Challenges .................................................... 2

B.    The PSLF Program Embodies the Simple Promise that Borrowers' Eligible Federal Loans will be Forgiven After Ten Years of Public Service .................................................................. 4

C.    The Final Rule's Vague and Subjective Standards Inject Unprecedented Uncertainty ....... 5

D.    The Final Rule Significantly Impairs Civil Legal Aid Organizations' Efforts to Recruit and Retain Staff ...................................................................................................................... 8

    1.    But For the PSLF Program, High Law School Debt Would Prevent Most from Becoming Civil Legal Services Attorneys .................................................................. 8

    2.    For Civil Legal Aid Organizations, the PSLF Program is Central to Recruitment and Retention .......................................................................................................... 12

E.    Clients Served by Civil Legal Aid Organizations are Among the Nation's Most Vulnerable .......................................................................................................................... 15

**CONCLUSION** .............................................................................................................. **20**

**APPENDIX A:** Identity of *Amici Curiae* Civil Legal Aid Organizations ................................. 21

**APPENDIX B:** Statement of Interest of *Amici Curiae* Civil Legal Aid Organizations ............. 27

**APPENDIX C:** Corporate and Funding Disclosure Statements .............................................. 30

**CERTIFICATE OF COMPLIANCE AND SERVICE** ........................................................ **32**

i

# TABLE OF AUTHORITIES

**CASES**

*Hare v. David S. Brown Enters., Ltd.*, 491 Md. 653 (2025) ..................................... 6, 8

*Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003) ..................................................... 8

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015) .......... 6

**STATUTES**

20 U.S.C. § 1087e ........................................................................... 1, 4, 5

**REGULATORY**

Exec. Order No. 14281, Restoring Equality of Opportunity and Meritocracy, 90 Fed. Reg. 17537 (Apr. 23, 2025) .................................................................. 6

Income Level for Individuals Eligible for Assistance, 91 Fed. Reg. 3066 (Jan. 26, 2026) .......... 15

Public Service Loan Forgiveness (PSLF), 90 Fed. Reg. 40154, 40155 (Aug. 18, 2025) (to be codified at 34 C.F.R. pt. 685) ........................................................ 7

William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966 (Oct. 31, 2025) .................................................................... 5, 6, 7

**OTHER AUTHORITIES**

*2022 Civil Legal Services: Need for Increased Investment*, MINN. LEGAL SERVS. COAL. (2022), https://www.house.mn.gov/comm/docs/RmkSZH-PqUunjbm9XjZGGg.pdf ................ 12

*2023 By the Numbers: The Data Underlying Legal Aid Programs*, LSC, https://lsc-live.app.box.com/s/zsplht4zazdna3bo6muoohrvta8itlsx (last visited Jan. 29, 2026) ....... 3, 16

*2024 By the Numbers: The Data Underlying Legal Aid Programs*, LSC, https://lsc-live.app.box.com/s/y5kbvg0x4j07dh9k9p50tl5h8odvu57n (last visited Jan. 29, 2026) 14, 15, 16

*2026 Poverty Guidelines: 48 Contiguous States*, U.S. DEP'T OF HEALTH & HUM. SERVS., https://aspe.hhs.gov/sites/default/files/documents/b1bfa16b20ae9b89d525bc35de7c1643/detailed-guidelines-2026.pdf  (last visited Feb. 9, 2026) ................................ 15

Aoife Delargy Lowe, *What You Need to Know About the Temporary Waiver Opportunity for PSLF*, NAT'L ASS'N FOR L. PLACEMENT (Apr. 2022), https://www.nalp.org/uploads/_bulletin_article_uploads/NALPBulletinApril2022AoifeDelargyLowePSLF.pdf .................................................................. 11

Apoorva Mandavilli, *Trump Administration to Cut $600 Million in Health Funding From Four States*, N.Y. Times, Feb. 9, 2026, https://www.nytimes.com/2026/02/09/health/trump-public-health-cuts-california.html?smid=nytcore-ios-share ...................................... 7

*Attorney Access*, NAT'L CTR. FOR ACCESS TO JUST., https://ncaj.org/state-rankings/justice-index/attorney-access#:~:text=NCAJ%20also%20maintains%20a%20Count,people%20in%20the%20general%20population (last visited Jan. 29, 2026) ......................... 3

Brandon Drain, *Ask the Expert: Understanding the Realities of Domestic Violence*, MSU TODAY (Oct. 23, 2025), https://msutoday.msu.edu/news/2025/10/understanding-the-realities-of-domestic-violence .................................................................. 17

*California Justice Gap Study: Executive Report*, STATE BAR OF CAL. (2019),
    https://www.calbar.ca.gov/sites/default/files/portals/0/documents/accessJustice/Justice-Gap-
    Study-Executive-Summary.pdf ................................................................................................ 13

*CDC Priorities*, U.S. CTRS. FOR DISEASE CONTROL & PREV. (Sept. 17, 2025),
    https://www.cdc.gov/about/cdc/index.html ............................................................................... 7

Christopher T. Benitez *et al.*, *Do Protection Orders Protect?*, 38 J. AM. ACAD. PSYCHIATRY L.
    376 (2010) https://jaapl.org/content/jaapl/38/3/376.full.pdf ................................................. 17

*Economic Return on Investment of Providing Counsel in Philadelphia Eviction Cases for Low-
    Income Tenants*, STOUT RISIUS ROSS, LLC (Nov. 13, 2018), https://perma.cc/UFH2-2AWJ 18

Emily A. Benfer, et al., *A Descriptive Analysis of Tenant Right to Counsel Law and Praxis 2017-
    2024*, 35 HOUS. POLICY DEBATE 470 (2025) ....................................................................... 15

*FY 2025 Budget Request*, LSC, https://lsc-
    live.app.box.com/s/oi1atcgn8xmvofc70aildz3bhg5p0zn5 (last visited Jan 15, 2026).......... 18

*H.R. 2669 – College Cost Reduction and Access Act*, CONGRESS.GOV,
    https://www.congress.gov/bill/110th-congress/house-bill/2669/all-actions (last visited Jan.
    29, 2026)................................................................................................................................... 4

*How Legal Aid Helps Domestic Violence Survivors*, LSC, https://lsc-
    live.app.box.com/s/jn2ijyk6vhsyenukcyhu2k47y73z6blf (last visited Jan. 29, 2026).......... 16

*How PSLF Works: A Lifeline for Legal Professionals in Public Service*, AM. BAR
    ASS'N (Aug. 25, 2025), https://www.americanbar.org/advocacy/governmental_legislative_w
    ork/priorities_policy/legaleducation/pslf-homepage/how-pslf-works/ ............................. 4, 13

*How to Manage your Student Debt while Pursuing a Public Interest Legal Career*, EQUAL
    JUSTICE WORKS (2017), https://www.equaljusticeworks.org/wp-content/uploads/2018/09/A-
    Guide-to-Managing-Your-Student-Debt-Ebook.pdf ............................................................. 10

Jennifer S. Rosenberg & Denise A Grab, *The Economic Benefits of Providing Civil Legal
    Assistance to Survivors of Domestic Violence*, INST. FOR POL'Y INTEGRITY (July 2015),
    https://policyintegrity.org/documents/SupportingSurvivors.pdf ........................................... 17

Joe Walsh, *Accusations of 'Sedition' Spark Uproar after Video on Refusing Illegal Orders.
    Here's What the Law Says*, CBS News (updated Nov. 25, 2025),
    https://www.cbsnews.com/news/sedition-uproar-video-refusing-illegal-orders-trump-what-
    the-law-says/.............................................................................................................................. 7

*Legal Aid #BestJobEver*, SUMMIT LEGAL AID, https://summitlegal.org/employment/ (last visited
    Feb. 5, 2026)............................................................................................................................ 13

*Legal Aid Recruitment, Retention, and Diversity: A Report to the State Bar of California*, CAL.
    ACCESS TO JUST. COMM'N (Feb. 2022), https://perma.cc/2W6H-CPH8 ........................ 12, 13

Letter from 104 Business Leaders to Congress (June 17, 2025), https://www.cpbo.org/wp-
    content/uploads/2025/06/FY26-Corporate-Counsel-Letter-on-LSC.pdf .............................. 19

Letter from Forty State Attorneys General to Congressional Leadership on House and Senate
    Appropriations Committees (April 22, 2025),

https://ag.ny.gov/sites/default/files/letters/letters-to-congress-on-the-legal-services-corporation-letter-2025.pdf ........................................................................................... 19

Letter from U.S. Law Firm Leaders to Congress, *Fully Fund the Legal Services Corporation for FY 2025*, https://lsc-live.app.box.com/s/snkhodoz5wnl91b6oumywepph9qc5j31 (last visited Jan. 29, 2026) ........................................................................................................ 19

Letter to Leaders of the Subcommittees on Commerce, Justice, Science and Related Agencies from Thirty-Seven State Supreme Court Chief Justices (May 28, 2025), https://lsc-live.app.box.com/s/p5zyylywmmlgrfb00mfk21pl8g0vzint ................................................... 19

*LSC 101 Fact Sheet*, LSC, https://lsc-live.app.box.com/s/7f4y34xk63ka1y9b0wly45uoq6q27xxx (last visited Jan. 29, 2026) ......................................................................................... 2, 15

Maryland Legal Aid, Comment Letter on Notice of Proposed Rulemaking, William D. Ford Federal Direct Loan Program, 34 CFR Part 685 (Sept. 17, 2025), https://www.regulations.gov/comment/ED-2025-OPE-0016-10231 ...................................... 3

Melanie Hanson, *Average Law School Debt*, EDUC. DATA INITIATIVE (last updated Oct. 1, 2024), https://educationdata.org/average-law-school-debt ...........................................................9, 11

*NALP's Public Service Salary Survey Shows Pay Remains Lowest at Civil Legal Services Organizations*, NAT'L ASS'N FOR L. PLACEMENT (May 2024), https://www.nalp.org/0524research .................................................................................. 9, 10

Nat'l Consumer Law Ctr. et al., Comment Letter from Legal Aid Organizations on Proposed Changes to Public Service Loan Forgiveness Rules, Docket ID ED-2025-OPE-0016 (Sept. 17, 2025), https://www.nclc.org/wp-content/uploads/2025/09/Legal-Aid-PSLF-Comments-9.17.pdf ....................................................................................................................... 17

*Our Grantees*, LSC, https://www.lsc.gov/grants/our-grantees (last visited Jan. 29, 2026) ........... 2

*Our Impact*, LSC, https://www.lsc.gov/our-impact (last visited Jan. 29, 2026) ........................... 3

*Our Mission & Impact*, LSC, https://www.lsc.gov/about-lsc (last visited Jan. 29, 2026) .............. 2

Press Release, *New LSC Report Shows Increase in Housing Cases, Number of Low-Income Americans Helped by Legal Aid*, LSC (Sept. 9, 2024), https://perma.cc/GKV8-MND4 ...... 17

*PSLF: A Crucial Tool for Recruiting and Retaining Legal Professionals*, AM. BAR ASS'N (Aug. 26, 2025), https://www.americanbar.org/advocacy/governmental_legislative_work/priorities_policy/legaleducation/pslf-homepage/pslf-overview-and-purpose/ ...................................................... 14

*Public Service Loan Forgiveness and the Justice System*, NAT'L LEGAL AID & DEFENDER ASS'N, https://www.nlada.org/sites/default/files/PSLF%20and%20the%20Justice%20System.pdf (last visited Jan. 29, 2026) ...................................................................................2, 9, 11, 13

Russell Engler, *Connecting Self-Representation to Civil Gideon: What Existing Data Reveal About When Counsel is Most Needed*, 37 Fordham Urb. L.J. 37 (2010) ............................. 16

*Staff Attorney, Housing Justice Tenant Defense (Staten Island)*, LEGAL AID SOCIETY, https://myjobs.adp.com/thelegalaidsociety/cx/job-details?__tx_annotation=false&reqId=5001164206800 (last visited Jan. 29, 2026) ............ 12

iv

*The Economic Case for Civil Legal Aid*, Office of Data Governance and Analysis, LSC, https://lsc-live.app.box.com/s/0ldo54a34zc7s3dgp6ci2ra8r5qb61lf (last visited Jan. 29, 2026).................................................................................................................. 3, 18

*The Economic Impact of an Eviction Right to Counsel in Baltimore City*, STOUT RISIUS ROSS, LLC (May 8, 2020), https://perma.cc/989X-M6EF ............................................................ 18

*The Justice Gap: The Unmet Civil Legal Needs of Low-Income Americans*, LSC (Apr. 2022), https://lsc-live.app.box.com/s/xl2v2uraiotbbzrhuwtjlgi0emp3myz1 .................................... 16

*What is Legal Aid?*, LSC, https://www.lsc.gov/about-lsc/what-legal-aid (last visited Jan. 29, 2026)........................................................................................................................................ 2

*White House Budget Proposes Eliminating LSC, Defunding Civil Legal Aid for Millions of Low-Income Americans*, LSC (May 30, 2025), https://www.lsc.gov/press-release/white-house-budget-proposes-eliminating-lsc-defunding-civil-legal-aid-millions-low-income-americans ................................................................................................................................................ 12

*Who We Are*, LSC, https://www.lsc.gov/about-lsc/who-we-are (last visited Jan. 29, 2026) .......... 2

## SUMMARY OF THE ARGUMENT

The Department of Education's recent Final Rule ("Final Rule" or "Rule") altering the statutorily required employer-eligibility criteria for the Public Service Loan Forgiveness ("PSLF") program threatens the stability and effectiveness of civil legal aid organizations across the country. A bipartisan Congress created PSLF in 2007, adding 20 U.S.C. § 1087e(m) to the Higher Education Act of 1965 and defining the public service jobs that qualify for loan forgiveness, including jobs at 501(c)(3) nonprofits. The statute's plain language makes clear that any job at a nonprofit providing legal services on behalf of low-income communities qualifies as a "public service job" for purposes of loan forgiveness. The Final Rule violates that mandate by granting the Secretary of Education broad, arbitrary authority to revoke PSLF eligibility from organizations the Secretary, in her sole discretion, deems to have a "substantial illegal purpose."

This unlawful change injects uncertainty into the careers of civil legal aid attorneys and jeopardizes a vital benefit to the public that enables these public servants to serve low-income communities. This change not only damages the ability of civil legal aid organizations to recruit and retain qualified staff, but it also risks depriving millions of vulnerable Americans confronted with life-altering legal problems of essential legal assistance.

The undersigned organizations submit this amicus brief to explain how the Final Rule harms our organizations and the communities we serve.

**ARGUMENT**

I.  **The Final Rule Harms the Capacity of Civil Legal Aid Organizations to Serve Vulnerable Communities by Injecting Uncertainty and Significantly Impairing Efforts to Recruit and Retain Staff.**

A.  **Civil Legal Aid Organizations Strengthen Communities by Providing Assistance to Millions of Americans on a Broad Array of Legal Challenges.**

Civil legal aid organizations exist to ensure that all individuals—regardless of their financial status—have "access to legal assistance in critical civil matters that affect their safety, stability and well-being."[1]  The largest national funder of civil legal aid services for Americans today is the Legal Services Corporation (LSC).[2]  Established by Congress in 1974,[3] LSC distributes grants to 130 nonprofit legal aid organizations that operate more than 900 offices nationwide, including offices in every congressional district.[4]  Together, LSC grantees assist over five million people each year, thus helping to ensure "low-income individuals and families have equal access to justice and due process" in critical civil legal matters despite the lack of a constitutional right to counsel.[5]  In addition to LSC-funded legal aid organizations, more than 550

---

[1] *What is Legal Aid?*, LSC (emphasis removed), https://www.lsc.gov/about-lsc/what-legal-aid (last visited Jan. 29, 2026).

[2] *Who We Are*, LSC, https://www.lsc.gov/about-lsc/who-we-are (last visited Jan. 29, 2026).

[3] *What is Legal Aid?*, LSC, *supra* note 1.

[4] *Our Mission & Impact*, LSC, https://www.lsc.gov/about-lsc (last visited Jan. 29, 2026). *See also Our Grantees*, LSC, https://www.lsc.gov/grants/our-grantees (last visited Jan. 29, 2026) (listing LSC grantees by state).

[5] *LSC 101 Fact Sheet*, LSC, https://lsc-live.app.box.com/s/7f4y34xk63ka1y9b0wly45uoq6q27xxx (last visited Jan. 29, 2026); *see also Public Service Loan Forgiveness and the Justice System*, NAT'L LEGAL AID & DEFENDER ASS'N, at 4, https://www.nlada.org/sites/default/files/PSLF%20and%20the%20Justice%20System.pdf (last visited Jan. 29, 2026) ("Civil legal aid ensures that regardless of how much money a person has, they have the same level of access to a fair adjudication of their civil legal problems as anyone else.  They provide legal help that enables people to protect their livelihoods, their health, and their families.").

2

non-LSC funded civil legal aid organizations (employing nearly 5,000 attorneys) further expand communities' access to justice.[6]

Civil legal aid organizations address a wide range of issues that affect the most fundamental aspects of daily life for low-income and vulnerable individuals and families. They routinely handle matters such as eviction defense and homeownership preservation; family law cases, including protection for survivors of domestic violence; direct representation of children in cases involving abuse or neglect, emancipation, guardianship, or the child welfare system; consumer and financial disputes; access to critical public benefits, including veterans' benefits, disability benefits, and Social Security; protection of older adults and other vulnerable individuals in matters involving guardianship, nursing homes, or healthcare access; and workers' rights and employment barriers.[7] The impact of this work extends far beyond individual clients and families. It improves court efficiency, saves taxpayer dollars, and strengthens the overall health and stability of communities.[8] But, as explained below, the Final Rule disrupts legal aid organizations' ability to continue this important work.

---

[6] *Attorney Access*, NAT'L CTR. FOR ACCESS TO JUST., https://ncaj.org/state-rankings/justice-index/attorney-access#:~:text=NCAJ%20also%20maintains%20a%20Count,people%20in%20the%20general%20population (last visited Jan. 29, 2026).

[7] *See, e.g.*, *2023 By the Numbers: The Data Underlying Legal Aid Programs*, LSC, at 31, https://lsc-live.app.box.com/s/zsplht4zazdna3bo6muoohrvta8itlsx (last visited Jan. 29, 2026); *The Economic Case for Civil Legal Aid*, Office of Data Governance and Analysis, LSC, at 5, https://lsc-live.app.box.com/s/0ldo54a34zc7s3dgp6ci2ra8r5qb61lf (last visited Jan. 29, 2026); Maryland Legal Aid, Comment Letter on Notice of Proposed Rulemaking, William D. Ford Federal Direct Loan Program, 34 CFR Part 685, at 1 (Sept. 17, 2025), https://www.regulations.gov/comment/ED-2025-OPE-0016-10231.

[8] *See, e.g.*, *Our Impact*, LSC, https://www.lsc.gov/our-impact (last visited Jan. 29, 2026).

**B. The PSLF Program Embodies the Simple Promise that Borrowers' Eligible Federal Loans will be Forgiven After Ten Years of Public Service.**

The PSLF program "was created by Congress in 2007 to allow professionals with significant student debt to pursue lower-paying careers in public service."[9]  For civil legal aid attorneys—like their counterparts in public defense and government—PSLF is too often "the only viable path to managing the financial burden of law school."[10]

The promise that a bipartisan Congress made to legal aid attorneys and other public servants in instituting the PSLF program is simple.[11]  If a student leverages their education to serve the public for ten years in a qualifying public service job, the federal government will forgive the remaining balance of their eligible Federal Direct Loans.[12] The statute guarantees that a job with a civil legal services organization doing "legal advocacy on behalf of low-income communities" will qualify for PSLF, as will a job at any other tax-exempt 501(c)(3) organization.[13]  To obtain loan forgiveness, the student must serve the public full-time for ten years while making (not necessarily consecutive) monthly payments toward their federal debt.[14]  The Final Rule constitutes a substantial breach of this simple promise by granting the Secretary broad, arbitrary authority to

---

[9] *How PSLF Works: A Lifeline for Legal Professionals in Public Service*, Am. Bar Ass'n (Aug. 25, 2025), https://www.americanbar.org/advocacy/governmental_legislative_work/priorities_policy/legaleducation/pslf-homepage/how-pslf-works/.

[10] *Id.*

[11] The conference report for the College Cost Reduction and Access Act, which created the PSLF program, was approved by the U.S. House of Representative on a vote of 292-97, and the U.S. Senate on a vote of 79-12.  *H.R. 2669 – College Cost Reduction and Access Act*, Congress.gov, https://www.congress.gov/bill/110th-congress/house-bill/2669/all-actions (last visited Jan. 29, 2026).

[12] 20 U.S.C. § 1087e(m)(1). Eligible Federal Direct Loans include a "Federal Direct Stafford Loan, Federal Direct PLUS Loan, or Federal Direct Unsubsidized Stafford Loan, or a Federal Direct Consolidation Loan." *Id.* § 1087e(m)(3)(A).

[13] *Id.* § 1087e(m)(3)(B)(i).

[14] *Id.* § 1087e(m)(1).

disqualify public service organizations (including civil legal aid organizations) from PSLF in contravention of the statute's plain language.

**C. The Final Rule's Vague and Subjective Standards Inject Unprecedented Uncertainty.**

The Final Rule authorizes the Secretary to strip PSLF eligibility from otherwise qualifying employers at will under vague, subjective criteria that appear nowhere in the statute Congress enacted. The predictable result is unprecedented uncertainty for public service employers, including civil legal aid organizations, and their staff.

Congress did not give the Secretary the authority to pick and choose which organizations qualify for loan forgiveness. Instead, Congress commanded that "[t]he Secretary shall cancel the balance of interest and principal due" on borrowers' remaining eligible loans after the borrower has made 120 qualifying monthly payments while "employed in a public service job[,]" which the statute defines expansively, without reservation or limitation to include, for example, a "full-time job in . . . legal advocacy on behalf of low-income communities at a nonprofit organization" or work at any other tax-exempt 501(c)(3) nonprofit organization.[15] Despite that plain language, the Final Rule changes the regulatory definition of "[q]ualifying employer" to enable the Secretary to revoke an organization's eligibility if the Secretary finds the organization has a "[s]ubstantial illegal purpose[.]"[16]

The Final Rule defines "substantial illegal purpose" broadly. For example, an organization will now lose its status as a qualifying employer if the Secretary finds, without sufficient due process, that it engaged "in a pattern of aiding and abetting illegal discrimination[,]" meaning "a

---

[15] *Id.* § 1087e(m)(1), (m)(3)(B)(i).
[16] William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966, 49001 (Oct. 31, 2025).

violation of any Federal discrimination law[.]"[17]  This provision is ripe for abuse.  The current

Administration, for instance, has publicly declared that generally disparate impact liability[18] is

"unlawful[]" based on its belief that disparate impact claims "imperil[] the effectiveness of civil

rights laws by mandating, rather than proscribing, discrimination."[19]  Under the Final Rule's

framework, the Administration's contested legal position (*i.e.*, that it is "illegal discrimination" to

seek to redress policies that result in disparate impact) can become the basis for disqualifying

organizations that litigate, advocate, or advise in ways the Administration disfavors.

Supreme Court precedent recognizing that claims supported by disparate impact evidence

are viable, including cases under the Fair Housing Act,[20] will not be enough to protect civil legal

aid organizations whose views differ from the current Administration (or any future

administration). The Final Rule gives the Secretary plenary authority to decide that an organization

has a substantial illegal purpose.  Under the Final Rule, the Secretary may make that decision based

on a mere preponderance of the evidence. Organizations the Secretary disqualifies from PSLF

must either enter a "corrective action plan" acknowledging that they previously engaged in

"activities that have a substantial illegal purpose" or wait ten years to reapply (and even then, the

---

[17] *Id.* at 49000-01.

[18] Disparate impact embodies the understanding that discriminatory *intent* is not the only way that discrimination can and does occur.  It recognizes that actors may be liable for unlawful discrimination based on the *effects* of their policies or acts.  For example, as described by the Maryland Supreme Court, "if you assign a test of flight to a bird and a fish, you will have treated them the same, but the impact of the facially equal treatment discriminates against the fish."  *Hare v. David S. Brown Enters., Ltd.*, 491 Md. 653, 673 (2025).  Importantly, disparate impact liability only applies to policies and acts that create "'artificial, arbitrary, and unnecessary barriers,' not policies that are 'necessary to achieve a valid interest[.]'"  *Id.* at 681 (alteration in original) (quoting *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 540-41 (2015)).

[19] Exec. Order No. 14281, Restoring Equality of Opportunity and Meritocracy, 90 Fed. Reg. 17537 (Apr. 23, 2025).

[20] *Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 545.

organization must certify it is no longer engaged in the purportedly unlawful activity).[21]  More than that, the Final Rule requires employers to "certify that [they have] not participate[d] in activities that have a substantial illegal purpose" and, if they are unable to do so because the Final Rule is ambiguous or because the Administration's legal and political preferences shift, disqualification follows.[22]

The ease with which the Secretary can disqualify organizations from PSLF is significant because the current Administration has shown a willingness to advance meritless, pretextual legal theories to punish dissent.[23]  Indeed, the Administration recently decided to cut funding to health departments across the country for grants such as gender affirming care, HIV prevention therapy for Black women, and research targeted to benefit the LGBTQ community based on the CDC's priorities, which include "removing unlawful discriminatory practices[.]"[24]  Similarly, in the Notice of Proposed Rulemaking for the PSLF rule, the administration indicated the rule would punish employers "deemed to have engaged in activities that breach federal or state law or established public policy."[25]

As a result, the practical effect of the Final Rule is perverse: civil legal aid organizations that fight to vindicate clients' rights—whether using disparate impact evidence in cases under the

---

[21] 90 Fed. Reg. at 49002.

[22] *Id.*

[23] *See e.g.*, Joe Walsh, *Accusations of 'Sedition' Spark Uproar after Video on Refusing Illegal Orders.  Here's What the Law Says*, CBS News (updated Nov. 25, 2025), https://www.cbsnews.com/news/sedition-uproar-video-refusing-illegal-orders-trump-what-the-law-says/.

[24] *CDC Priorities*, U.S. CTRS. FOR DISEASE CONTROL & PREV. (Sept. 17, 2025), https://www.cdc.gov/about/cdc/index.html; Apoorva Mandavilli, *Trump Administration to Cut $600 Million in Health Funding From Four States*, N.Y. Times, Feb. 9, 2026, https://www.nytimes.com/2026/02/09/health/trump-public-health-cuts-california.html?smid=nytcore-ios-share.

[25] Public Service Loan Forgiveness (PSLF), 90 Fed. Reg. 40154, 40155 (Aug. 18, 2025) (to be codified at 34 C.F.R. pt. 685).

Fair Housing Act,[26] pursuing claims under the Americans with Disabilities Act in nursing home cases,[27] or litigating child welfare matters involving gender-affirming care in foster homes and courts—can no longer reliably assure staff that their organizations will remain eligible as a PSLF employer. The Final Rule thus enables the current—and any future—presidential administration to penalize public service organizations that take positions or represent clients in ways that conflict with an administration's political agenda. The foreseeable result is fewer qualified attorneys choosing careers in civil legal aid and reduced access to justice for low-income Americans.

### D. The Final Rule Significantly Impairs Civil Legal Aid Organizations' Efforts to Recruit and Retain Staff.

The PSLF program is essential to the financial viability of civil legal aid careers. The Final Rule now casts doubt on whether civil legal aid lawyers will actually qualify for loan forgiveness after ten years of public service. That uncertainty destabilizes the already-fragile financial calculus many young lawyers rely on to make long-term legal aid work sustainable.

### 1. But For the PSLF Program, High Law School Debt Would Prevent Most from Becoming Civil Legal Services Attorneys.

The PSLF program's guarantee of loan forgiveness in return for a decade of service is a game-changer for legal aid attorneys. Civil legal aid attorneys know their work will never make

---

[26] Legal Aid helps clients challenge discrimination to ensure they have fair and stable access to housing. Sometimes clients are harmed, in part, by the disparate impact that a policy has on them because of their protected characteristics. Legal Aid helps clients whose landlords refuse to alter policies that place unnecessary fees on people seeking accommodations for their disability or clients who are subjected to financial screening policies that discriminate against their source of income. Using this type of evidence to support a claim is an ethical responsibility for civil legal aid attorneys in states where the courts have specifically recognized this method of proving discrimination. *See, e.g.*, *Hare*, 491 Md. 653.

[27] *E.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) ("[D]isparate-impact claims are cognizable under the [Americans with Disabilities Act].").

them wealthy, but like all public servants, they must still be able to support themselves, sustain the work, and repay their student loan debt.

The PSLF program enables civil legal services attorneys to achieve these goals.  As one North Carolina legal aid attorney put it, without PSLF they would "be living paycheck-to-paycheck with no margin for simple self-care" and that stress, "compounded by the stress of working with underserved and under-resourced populations would not be sustainable."[28]  Others have "explained PSLF would enable them to start a family, purchase their first home, or start saving for retirement but that without the program, they would need to leave public service to do so."[29]

Indeed, most lawyers would be unable to begin a career in civil legal aid but for the PSLF program because, without the program, they could not realistically expect to repay their student loans. The average law student graduates with roughly $130,000 in student loan debt, including $100,000 borrowed to pursue their J.D.[30] This debt is a significant obstacle for attorneys entering civil legal aid organizations, where salaries lag far behind both the private sector and other public service positions.  By making PSLF eligibility uncertain and unpredictable, the Final Rule turns that obstacle into a barrier—deterring capable graduates from entering legal aid in the first place.

In 2023, the median salary for an entry-level civil legal services lawyer was just $64,200, which was more than $5,000 less than the median entry-level salary at other public interest organizations (including other nonprofits) at $69,499, or for public defenders at $69,608,[31] and

---

[28] *Public Service Loan Forgiveness and the Justice System*, NAT'L LEGAL AID & DEF. ASS'N, *supra* note 5, at 14.

[29] *Id.*

[30] Melanie Hanson, *Average Law School Debt*, EDUC. DATA INITIATIVE (last updated Oct. 1, 2024), https://educationdata.org/average-law-school-debt.

[31] *NALP's Public Service Salary Survey Shows Pay Remains Lowest at Civil Legal Services Organizations*, NAT'L ASS'N FOR L. PLACEMENT (May 2024), https://www.nalp.org/0524research.

this pay gap grows with experience.  Compared to public defenders, civil legal services attorneys earn a median of $16,300 less with five years of experience, $20,883 less with eleven to fifteen years of experience, and $19,779 less with more than fifteen years of experience.[32]  Civil legal services attorneys also earn $7,300 less than other public interest organization attorneys with five years of experience, $21,085 less with eleven to fifteen years of experience, and $29,530 less with more than fifteen years of experience.[33]

There is an even starker gap between civil legal aid organizations and private law firm salaries.  In 2023, "the median first-year associate salary at a law firm of 100 or fewer lawyers was $155,000 . . ., more than double that of entry-level lawyers within public service organizations.  The median first-year salary for firms with 101-250 lawyers was $160,000 and it was $215,000 in the largest firms of more than 1,000 lawyers."[34]

Income-driven repayment (IDR) plans, which calculate monthly payments on eligible federal student loans based on a percentage of discretionary income, can make payments more manageable for borrowers with modest salaries. But these plans are often insufficient to help borrowers realistically pay down their loans.[35]  Because IDR payments are based on discretionary income rather than the amount needed to cover monthly interest, borrowers "may accumulate large amounts of unpaid interest[,]" and because "payments are required to be allocated to accrued interest first, it is possible that [borrowers] could be paying off very little of the actual loan principal."[36]  As a result, many borrowers see their total debt actually *grow* over time.  One report

---

[32] *Id.* at Table 1.

[33] *Id.*

[34] *Id.* (in body of text).

[35] *How to Manage your Student Debt while Pursuing a Public Interest Legal Career*, EQUAL JUSTICE WORKS, at 1, 38 (2017), https://www.equaljusticeworks.org/wp-content/uploads/2018/09/A-Guide-to-Managing-Your-Student-Debt-Ebook.pdf.

[36] *Id.*

found that 15% of law school borrowers were unable to reduce their student loan debt after graduation, and 26.9% saw their debt increase—a phenomenon that disproportionately affected Black graduates (43.7% saw debt increase).[37]

The answer to this challenge—for civil legal services attorneys and others—is the PSLF program. The PSLF program is "the only educational debt program specifically targeted at public service professionals, designed to make a career in public service possible."[38] As indicated above, without the promise of loan forgiveness after 120 qualifying payments, too many lawyers would be unable to "pursue their passion for service professionally [] if they have student debt."[39] Research underscores this reality. For example, a 2017 survey of members of the National Legal Aid & Defender Association found that—among members who were aware of the PSLF program when they took their current job—the PSLF program "significantly influenced" the decision of 81% of respondents to accept their position. 51% reported they "were not likely or certain not to have taken their positions had PSLF not existed[.]"[40]

Simply put, a large portion of law graduates from all backgrounds—but especially those from underrepresented groups or with limited personal or family wealth—would be unable to afford to work in legal aid organizations without the promise of PSLF. By making PSLF eligibility uncertain, the Final Rule will push many lawyers away from legal aid and weaken organizations' ability to recruit and retain staff.

---

[37] Hanson, *supra* note 30.

[38] Aoife Delargy Lowe, *What You Need to Know About the Temporary Waiver Opportunity for PSLF*, NAT'L ASS'N FOR L. PLACEMENT, at 39 (Apr. 2022), https://www.nalp.org/uploads/_bulletin_article_uploads/NALPBulletinApril2022AoifeDelargyLowePSLF.pdf.

[39] *Id.* at 40.

[40] *Public Service Loan Forgiveness and the Justice System*, NAT'L LEGAL AID & DEFENDER ASS'N, *supra* note 5, at 5.

2. **For Civil Legal Aid Organizations, the PSLF Program is Central to Recruitment and Retention.**

The Final Rule poses a significant threat to civil legal aid organizations because the PSLF program is a key tool in the constant fight to recruit and retain staff who could make more money elsewhere. The uncertainty that the Final Rule creates as to whether public service loan forgiveness will be available for employees of legal aid organizations frustrates their ability to provide vital legal services.

Funding for staff salaries at civil legal aid organizations is both limited and, too often, also unpredictable;[41] as a result, civil legal aid organizations necessarily depend on a steady flow of recent graduates into their organizations because low pay (described above) can also drive high turnover.[42] Unsurprisingly, "low compensation is the number one obstacle to recruitment and retention of lawyers by legal aid organizations."[43]

The PSLF program acts as an offset for the higher salaries that civil legal services organizations cannot afford to provide. Eligibility for PSLF is commonly advertised in job postings[44] and the American Bar Association reports that "[t]wo thirds of public service legal

---

[41] *See, e.g.*, *White House Budget Proposes Eliminating LSC, Defunding Civil Legal Aid for Millions of Low-Income Americans*, LSC (May 30, 2025), https://www.lsc.gov/press-release/white-house-budget-proposes-eliminating-lsc-defunding-civil-legal-aid-millions-low-income-americans.

[42] *See, e.g.*, *2022 Civil Legal Services: Need for Increased Investment*, MINN. LEGAL SERVS. COAL. (2022), https://www.house.mn.gov/comm/docs/RmkSZH-PqUunjbm9XjZGGg.pdf (reporting that in 2022 civil legal services attorneys in Minnesota were "the lowest paid attorneys in the public and non-profit sectors" which contributed to a "turnover rate of 39% in 2021").

[43] *Legal Aid Recruitment, Retention, and Diversity: A Report to the State Bar of California*, CAL. ACCESS TO JUST. COMM'N, at 25 (Feb. 2022), https://perma.cc/2W6H-CPH8.

[44] *E.g.*, *Staff Attorney, Housing Justice Tenant Defense (Staten Island)*, LEGAL AID SOCIETY, https://myjobs.adp.com/thelegalaidsociety/cx/job-details?__tx_annotation=false&reqId=5001164206800 (last visited Jan. 29, 2026) (advertising that a staff attorney position "allows an employee to take advantage of PSLF"); *Legal Aid #BestJobEver*, SUMMIT LEGAL AID, https://summitlegal.org/employment/ (last visited Feb. 5,

employers consider PSLF critical to maintaining" their workforce, "especially in underserved areas[,]" and amongst rural legal employers, "68% reported PSLF was essential to their ability to hire and retain qualified attorneys."[45]

The staff of civil legal services organizations agree.  A survey of the National Legal Aid & Defender Association's members revealed that "87 percent of respondents indicated that qualification for PSLF would make them much more likely to accept a particular opportunity in the future, and more than half would be very likely or certain to leave their jobs if PSLF did not exist."[46]  The weight that civil legal aid staff place on eligibility for PSLF is unsurprising given that, in California for example, "over 75 percent of legal aid and government lawyers . . . hope[] to receive" loan forgiveness through the PSLF program.[47]  Indeed, even before law students graduate, their concerns about paying back their loans can drive them away from public service. It is an unfortunate reality that concern about student loans is "the most widely cited reason" that law students pivot away from public service to instead pursue other opportunities.[48]

The impact that the Final Rule will have on recruitment and retention will be especially dire for "rural counties and low-income communities" that "suffer from severe attorney shortages

---

2026) ("Summit Legal Aid is an eligible employer for the Public Service Loan Forgiveness (PSLF) Program").

[45] *How PSLF Works: A Lifeline for Legal Professionals in Public Service*, AM. BAR ASS'N, *supra* note 9.  *See also Public Service Loan Forgiveness and the Justice System*, NAT'L LEGAL AID & DEF. ASS'N, *supra* note 5, at 5 ("71 percent of respondents who are top executives [at civil legal aid or public defender programs] consider PSLF to be a highly important tool for retaining experienced staff, and almost two thirds believe it is important for attracting new hires." (emphasis removed)).

[46] *Public Service Loan Forgiveness and the Justice System*, NAT'L LEGAL AID & DEF. ASS'N, *supra* note 5, at 5.

[47] *Legal Aid Recruitment, Retention, and Diversity: A Report to the State Bar of California*, CAL. ACCESS TO JUST. COMM'N, *supra* note 43, at 18.

[48] *California Justice Gap Study: Executive Report*, STATE BAR OF CAL., at 19 (2019), https://www.calbar.ca.gov/sites/default/files/portals/0/documents/accessJustice/Justice-Gap-Study-Executive-Summary.pdf.

[] termed legal deserts" where there are "few or no lawyers to serve local residents' needs."[49] According to the American Bar Association, "PSLF has been a lifeline for these legal deserts, making it financially feasible for lawyers to practice in high-need areas that can't compete with urban salaries."[50] The Final Rule threatens to "upend staffing in legal deserts and jeopardize hard-won stability in rural courts and legal aid systems."[51]

Indeed, civil legal aid organizations depend on experienced staff to train new hires, who are often fresh law school graduates. Already, half of all staff attorneys employed by LSC grantees have seven or fewer years of professional experience.[52] If the Final Rule stands, the resulting uncertainty about loan forgiveness will cause many experienced attorneys to pursue higher-paying jobs to ensure they can pay back their loans and protect the financial wellbeing of their families. The loss of that experience will ripple across civil legal aid organizations and further exacerbate the justice gap for the communities legal aid organizations serve. As staffing becomes more precarious, legal aid organizations will be forced to turn away more eligible clients, reduce coverage at geographically spread-out courthouses, and narrow the types of cases they take—directly reducing access to justice and impacting low-income Americans' ability to resolve fundamental legal issues that threaten their families' stability and well-being.

---

[49] *PSLF: A Crucial Tool for Recruiting and Retaining Legal Professionals*, AM. BAR ASS'N (Aug. 26, 2025), https://www.americanbar.org/advocacy/governmental_legislative_work/priorities_policy/legaleducation/pslf-homepage/pslf-overview-and-purpose/ (emphasis removed).

[50] *Id.* (emphasis removed).

[51] *Id.* (emphasis removed).

[52] *2024 By the Numbers: The Data Underlying Legal Aid Programs*, LSC, at Appx. Table 7.2, https://lsc-live.app.box.com/s/y5kbvg0x4j07dh9k9p50tl5h8odvu57n (last visited Jan. 29, 2026).

**E. Clients Served by Civil Legal Aid Organizations are Among the Nation's Most Vulnerable.**

By destabilizing civil legal aid organizations' ability to recruit and retain the attorneys and staff needed to meet overwhelming community need, the Final Rule harms the very clients these organizations exist to protect. Most of the individuals and families civil legal aid organizations serve could not otherwise afford legal representation. LSC-funded legal aid is generally restricted to households at-or-below 125% of the federal poverty guidelines[53]—equivalent to just $19,950 for an individual (approximately $1,663/month), or $41,250 for a family of four (approximately $3,438/month)[54]—an income threshold that highlights the severe economic hardship faced by civil legal aid clients. Nationwide, 52 million Americans, representing 16% of the total population, are eligible for LSC-funded legal aid.[55] Non-LSC funded organizations similarly restrict eligibility for legal services by establishing income guidelines relative to the area median income in their state or region.[56] Taken together, civil legal aid organizations already address only a small percentage of the civil legal needs of those who would otherwise qualify for legal assistance.

Civil legal aid organizations help reduce systemic inequities by enabling low-income Americans to navigate complex legal systems that would otherwise be inaccessible due to cost, language barriers,[57] or limited legal understanding. They also help individuals overcome the

---

[53] Income Level for Individuals Eligible for Assistance, 91 Fed. Reg. 3066 (Jan. 26, 2026) (to be codified at 45 C.F.R. pt. 1611).

[54] *2026 Poverty Guidelines: 48 Contiguous States*, U.S. DEP'T OF HEALTH & HUM. SERVS., at 1-2, https://aspe.hhs.gov/sites/default/files/documents/b1bfa16b20ae9b89d525bc35de7c1643/detailed -guidelines-2026.pdf (last visited Feb. 9, 2026).

[55] *LSC 101 Fact Sheet*, LSC, *supra* note 5.

[56] *See, e.g.*, Emily A. Benfer, et al., *A Descriptive Analysis of Tenant Right to Counsel Law and Praxis 2017-2024,* 35 HOUS. POLICY DEBATE 470, 479, 482 (2025) (noting income-based eligibility criteria for non-LSC funded tenant right to counsel programs in fourteen jurisdictions).

[57] Approximately 10% of LSC grantees' named clients in 2024 had a preferred language other than English. *2024 By The Numbers*, LSC, *supra* note 52, at 71.

profound power imbalances that often exist between them and their abusers or with entities and institutions such as landlords, employers, or government agencies.[58] This work is essential because legal problems are more common—not less—for low-income Americans.[59]

In addition to being economically disadvantaged, many legal aid clients also contend with legal issues related to their identity or background. In 2024, approximately 71% of named clients served by LSC-funded grantees were women, 54% were people of color, and 22% were age 60 or older.[60] In 2023, legal aid organizations funded by LSC closed cases involving households with a combined 810,000 children, and nearly 4.5% of all clients lived in a home with at least one veteran.[61] In short, civil legal services organizations serve culturally and demographically diverse client populations,[62] and the scope of the legal problems these communities face is daunting.[63]

---

[58] For example, in many housing dockets tenants are rarely represented by counsel during eviction cases, yet the representation rate for landlords can reach "highs of 85-90%[,]" thus "pit[ting] a represented landlord against [] unrepresented tenant[s]" who are "typically poor, often women, and disproportionately racial and ethnic minorities." Russell Engler, *Connecting Self-Representation to Civil Gideon: What Existing Data Reveal About When Counsel is Most Needed*, 37 FORDHAM URB. L.J. 37, 47 (2010).

[59] Approximately three in four low-income Americans will have at least one civil legal issue each year and yet these Americans "do not get any or enough legal help for 92% of their substantial civil legal problems." *The Justice Gap: The Unmet Civil Legal Needs of Low-Income Americans*, LSC, at 7, 10 (Apr. 2022), https://lsc-live.app.box.com/s/xl2v2uraiotbbzrhuwtjlgi0emp3myz1. This problem is especially acute for low-income domestic-violence survivors: nearly all (98%) experienced at least one civil legal problem in the previous year, and 87% experienced at least *five* civil legal problems in the prior year. *How Legal Aid Helps Domestic Violence Survivors*, LSC, at 1, https://lsc-live.app.box.com/s/jn2ijyk6vhsyenukcyhu2k47y73z6blf (last visited Jan. 29, 2026).

[60] *2024 By the Numbers*, LSC, *supra* note 52, at 3, 70.

[61] *2023 By the Numbers*, LSC, *supra* note 7, at 5, 57.

[62] For example, in 2023, in addition to providing services that are tailored to Native Americans and agricultural workers, approximately 39% of named clients served by LSC-funded legal services organizations were White, 32% were Black, 17% were Hispanic, and 3% were Asian/Pacific Islander. *Id.* at 8, 60.

[63] As a coalition of civil legal aid organizations summarized in a recent letter to the Department of Education concerning the then-proposed Rule:

Among households under 125% of the federal poverty level, the following percentages reported having one or more legal problems: 70% of senior households,

16

## II.  Civil Legal Aid Has a Profound Impact and Provides Access to Justice.

Civil legal aid organizations have a deep impact on the communities they serve, but the Final Rule threatens that impact by reducing access to justice.  Two case types that legal aid organizations commonly take on—domestic violence and housing cases—illustrate this impact.

Civil legal aid organizations funded by LSC closed nearly 160,000 cases involving domestic violence in 2023.[64]  Legal representation is often the key difference maker for these clients.  For instance, one study found that "83 percent of victims represented by an attorney successfully obtained a protective order, as compared to just 32 percent of victims without an attorney."[65]  These in-court successes have lasting impacts on clients' lives.  For example, obtaining a permanent protective order has been "associated with an 80 percent reduction in police-reported physical violence" during the subsequent twelve-month period[66] and because "[d]omestic violence is one of the leading causes of homelessness among women and children[,]"[67] civil legal aid can be instrumental in helping survivors secure safe stable housing.

---

76% of veteran households, 83% of households with children, 98% of households with recent domestic violence, and 77% of rural households.

Nat'l Consumer Law Ctr. et al., Comment Letter from Legal Aid Organizations on Proposed Changes to Public Service Loan Forgiveness Rules, Docket ID ED-2025-OPE-0016, at 4 (Sept. 17, 2025) (footnote omitted), https://www.nclc.org/wp-content/uploads/2025/09/Legal-Aid-PSLF-Comments-9.17.pdf.

[64] Press Release, *New LSC Report Shows Increase in Housing Cases, Number of Low-Income Americans Helped by Legal Aid*, LSC (Sept. 9, 2024), https://perma.cc/GKV8-MND4.

[65] Jennifer S. Rosenberg & Denise A Grab, *The Economic Benefits of Providing Civil Legal Assistance to Survivors of Domestic Violence*, INST. FOR POL'Y INTEGRITY, at 8 (July 2015) (citation omitted), https://policyintegrity.org/documents/SupportingSurvivors.pdf.

[66] Christopher T. Benitez *et al.*, *Do Protection Orders Protect?*, 38 J. AM. ACAD. PSYCHIATRY L. 376, 381 (2010) (citation omitted), https://jaapl.org/content/jaapl/38/3/376.full.pdf.

[67] Brandon Drain, *Ask the Expert: Understanding the Realities of Domestic Violence*, MSU TODAY (Oct. 23, 2025), https://msutoday.msu.edu/news/2025/10/understanding-the-realities-of-domestic-violence.

Civil legal aid organizations' impact on their clients' ability to retain or secure safe and affordable housing is also well-documented, reducing the human and societal costs of homelessness. Organizations that received LSC funding closed more than 312,000 housing-related cases in 2022 alone,[68] thus providing crucial support to tenants in places like Hennepin County, Minnesota and Seattle, Washington, where research demonstrates that represented tenants are about twice as likely to remain in their homes compared to unrepresented tenants.[69] Preserving housing is particularly impactful to children in at-risk households because "[l]ow-income children of parents who are experiencing homelessness are four times more likely to become involved with the child welfare system" than other low-income children who have stable housing.[70]

The work of civil legal aid organizations is efficient as well as effective. A comprehensive review of more than fifty independent studies concluded that civil legal aid generates an average return of $7 for every $1 spent.[71] Research also demonstrates that civil legal aid reduces the demand for costly government services. According to one report, for example, "a homeless individual residing in Massachusetts creates an additional cost burden for state-supported services (shelter, emergency room visits, incarceration, etc.) that is $9,372 greater per year than an individual who has stable housing[,]" and "[e]ach time a homeless family enters a state-run emergency shelter, the cost to the state is estimated at $26,620."[72]

---

[68] *FY 2025 Budget Request*, LSC, at 15, https://lsc-live.app.box.com/s/oi1atcgn8xmvofc70aildz3bhg5p0zn5 (last visited Jan 15, 2026).

[69] *The Economic Impact of an Eviction Right to Counsel in Baltimore City*, STOUT RISIUS ROSS, LLC, at 52 (May 8, 2020), https://perma.cc/989X-M6EF.

[70] *Economic Return on Investment of Providing Counsel in Philadelphia Eviction Cases for Low-Income Tenants*, STOUT RISIUS ROSS, LLC, at 26 (Nov. 13, 2018) (citation omitted), https://perma.cc/UFH2-2AWJ.

[71] *The Economic Case for Civil Legal Aid: A Systematic Review of Economic Impact Studies*, LSC, *supra* note 7, at 2.

[72] *Economic Return on Investment of Providing Counsel in Philadelphia Eviction Cases for Low-Income Tenants*, STOUT RISIUS ROSS, LLC, *supra* note 70, at 28 (citation omitted).

Due to their demonstrated impact, civil legal services organizations—including those funded by LSC—enjoy robust support from the judiciary, private law firms, state attorneys general, and the business community.  More than 150 leaders representing many of the nation's preeminent law firms recently urged Congress to maintain strong LSC funding.[73]  A group of thirty-seven state supreme court chief justices stressed that, without civil legal aid, "injustices go unremedied[,]" "court procedures are slowed, backlogs of other cases occur, and judges confront the challenge of explaining court procedures while maintaining[74]  A bipartisan coalition of forty state attorneys general praised the work of LSC-funded civil legal aid organizations to support veterans and their families, respond to natural disasters, and preserve rural communities.[75]  And general counsel and chief legal officers from over 100 of the nation's largest corporations wrote to Congress to emphasize that legal issues resulting from a lack of access to legal resources lead to economic instability" to the detriment of both families and the business community.[76]  In short, civil legal aid provides an indispensable lifeline—improving lives, strengthening communities, and reinforcing systems of justice nationwide.

---

[73] Letter from U.S. Law Firm Leaders to Congress, *Fully Fund the Legal Services Corporation for FY 2025*, at 1, https://lsc-live.app.box.com/s/snkhodoz5wnl91b6oumywepph9qc5j31 (last visited Jan. 29, 2026).

[74] Letter to Leaders of the Subcommittees on Commerce, Justice, Science and Related Agencies from Thirty-Seven State Supreme Court Chief Justices (May 28, 2025), https://lsc-live.app.box.com/s/p5zyylywmmlgrfb00mfk21pl8g0vzint.

[75] Letter from Forty State Attorneys General to Congressional Leadership on House and Senate Appropriations Committees (April 22, 2025), https://ag.ny.gov/sites/default/files/letters/letters-to-congress-on-the-legal-services-corporation-letter-2025.pdf.

[76] Letter from 104 Business Leaders to Congress (June 17, 2025), https://www.cpbo.org/wp-content/uploads/2025/06/FY26-Corporate-Counsel-Letter-on-LSC.pdf.

**CONCLUSION**

The Department's Final Rule threatens to significantly undermine civil legal aid organizations' ability to carry out their core mission of serving the nation's low-income and most vulnerable communities.  By injecting unprecedented uncertainty into PSLF eligibility and granting the Secretary sweeping power to disqualify organizations for vaguely defined reasons, the Final Rule jeopardizes both the recruitment and retention of qualified legal aid staff and the promise of justice for those who need it most.  The destabilization of civil legal aid organizations will inevitably translate into diminished legal support for low-income Americans facing life-altering legal challenges, further widening the justice gap.  If left unchecked, the Final Rule gravely damages the capacity of civil legal aid organizations to fulfill their essential role within our justice system and communities.  Ultimately, this Court can prevent the Final Rule from undermining the statutory framework Congress enacted and from inflicting lasting harm on the communities that depend on civil legal aid.  For the foregoing reasons, *amici curiae* respectfully request that this Court grant the Plaintiffs' motion for summary judgment.

Dated: February 23, 2026                            Respectfully Submitted,

/s/ Lauren D. Song                                  /s/ Kevonne Small*
Lauren D. Song (BBO #637871)                        Kevonne Small*
GREATER BOSTON LEGAL SERVICES, INC.                 Kathryn Baxter*
197 Friend Street                                   MARYLAND LEGAL AID
Boston, MA 02114                                    500 E. Lexington Street
627-603-1729                                        Baltimore, MD 21202
lsong@gbls.org                                      443-845-9294
                                                    ksmall@mdlab.org
                                                    kbaxter@mdlab.org

*Counsel for* Amici Curiae *Maryland Legal Aid, Greater Boston Legal Services, and Other Civil Legal Aid Organizations identified in full on Appendix A attached hereto.*

* *Pro hac vice* pending

20

# APPENDIX A

# Identity of *Amici Curiae* Civil Legal Aid Organizations

## Amici Curiae Civil Legal Aid Organizations

1.   Maryland Legal Aid
     500 E. Lexington Street
     Baltimore, MD 21202

2.   Greater Boston Legal Services
     197 Friend Street
     Boston, MA 02114

3.   Amicus Curiae Committee of the
     California Access to Justice
     Commission
     PO Box 645
     Carmichael, CA 95609

4.   Bay Area Legal Aid
     1735 Telegraph Ave.
     Oakland, CA 94612

5.   Blue Ridge Legal Services, Inc.
     303 S. Main St.
     Harrisonburg, VA 22801

6.   California Center for Movement
     Legal Services
     436 14th St., Suite 1305
     Oakland, CA 94612

7.   California Women's Law Center
     7700 Irvine Center Dr., Suite 800
     Irvine, CA 92618

8.   CAMBA Legal Services, Inc.
     19 Winthrop St., 2nd Floor
     Brooklyn, NY 11225

9.   Catholic Migration Services
     191 Joralemon St., 4th Floor
     Brooklyn, NY 11201

10.  Center for Access to QDROs
     121 W. 27th St., Suite 804
     New York, NY 10001

11.  Center for Civil Rights and
     Critical Justice at Seattle
     University School of Law
     901 12th Avenue
     Seattle, WA 98122

12.  Center for Disability & Elder
     Law
     438 Main St., Suite 1200
     Buffalo, NY 14202

13.  Center for Elder Law & Justice
     438 Main St., Suite 1200
     Buffalo, NY 14202

14.  Charlotte Center for Legal
     Advocacy
     5535 Albemarle Rd.
     Charlotte, NC 28212

15.  City Bar Justice Center
     42 W. 44th St.
     New York, NY 10036

16.  Clark County Volunteer Lawyers
     Project
     1104 Main Street, Suite 1
     Vancouver, WA 98660

17.  Colorado Legal Services
     1560 Broadway Ste 1100
     Denver, CO 80202

18.  Columbia Legal Services
     1201 5th Ave. Suite 1200
     Seattle, WA 98101

19.  Community Law Center
     P.O. Box 4735
     Baltimore, MD 21211

20.     Community Legal Aid Society
Inc. (Delaware)
100 W. 10th St., Suite 801
Wilmington, DE 19801

21.     Community Legal Services
1424 Chestnut St.
Philadelphia, PA 19102

22.     Community Legal Services in
East Palo Alto
2117 University Ave.
East Palo Alto, CA 94303

23.     DC Bar Pro Bono Center
901 4th St. NW
Washington, DC 20001

24.     Disability Law United
1330 Broadway, Suite 500
Oakland, CA 94612

25.     Disability Rights Education &
Defense Fund
3075 Adeline St., Suite 210
Berkeley, CA 94703

26.     Disability Rights Washington
315 5th Ave. S., Suite 850
Seattle, WA 98104

27.     DNA - People's Legal Services
P.O. Box 306
Window Rock, AZ 86515

28.     East Bay Community Law
Center
2921 Adeline St.
Berkeley, CA 94703

29.     East Bay Sanctuary Covenant
2362 Bancroft Way
Berkeley, CA 94704

30.     Eastside Legal Assistance
Program
520 Bellevue Way NE, Suite
500
Bellevue, WA 98004

31.     Enlace Services, Inc.
2100 N. Major Ave.
Chicago, IL 60639

32.     Equal Justice Works
1730 M St. NW, Suite 800
Washington, DC 20036

33.     Housing Rights Legal Clinic,
University of San Diego School
of Law
5998 Alcala Park
San Diego, CA 92110

34.     Indiana Legal Services
1500 N. Illinois St.
Indianapolis, IN 46202

35.     Inland Empire Legal Aid
5887 Pine Ave., Suite J
Chino Hills, CA 91709

36.     Kids' Voice of Indiana
1431 N. Delaware St.
Indianapolis, IN 46202

37.     Kitsap Legal Aid Services
500 Pacific Ave #401
Bremerton, WA 98337

38.     LAW Advocates
1008 7th Ave.
Seattle, WA 98104

39.     Law Foundation of Silicon
Valley
152 N. Third St., 3rd Floor
San Jose, CA 95112

40.   Lawyers Alliance for New York
      171 Madison Ave., Ninth Floor
      New York, NY 10016

41.   Legal Aid Association of
      California
      1832 Second Street, Suite 105
      Berkeley, CA 94710

42.   Legal Aid Center of Southern
      Nevada
      725 E. Charleston Blvd.
      Las Vegas, NV 89104

43.   Legal Aid Chicago
      200 N. LaSalle St., Ste. 1400
      Chicago, IL 60601

44.   Legal Aid Foundation of Los
      Angeles
      1550 W. 8th St.
      Los Angeles, CA 90017

45.   Legal Aid Justice Center
      1000 Preston Ave., Suite A
      Charlottesville, VA 22903

46.   Legal Aid of Nebraska
      209 S. 19th St., Suite 200
      Omaha, NE 68102

47.   Legal Aid of Western Missouri
      4001 Dr. Martin Luther King, Jr.
      Blvd., Suite 300
      Kansas City, MO 64130

48.   The Legal Aid Society of
      Cleveland
      1223 W 6th St
      Cleveland, OH 44113

49.   Legal Aid Society of
      Northeastern New York
      17 Hodskin St.
      Canton, NY 13617

50.   The Legal Aid Society of
      Rochester
      One West Main St.
      Buffalo, NY 14614

51.   Legal Aid Society of San Mateo
      County
      330 Twin Dolphin Dr., Suite
      123
      Redwood City, CA 94065

52.   Legal Assistance of Western
      New York, Inc.
      1 W. Main St., Suite 400
      Rochester, NY 14614

53.   Legal Service for Maine Elders
      5 Wabon Street
      Augusta, ME 04330

54.   Legal Services for Children
      870 Market St., Suite 356
      San Francisco, CA 94102

55.   Legal Services NYC
      40 Worth St., Suite 704
      New York, NY 10013

56.   Legal Services of Eastern
      Missouri
      701 Market Street, Suite 1100
      St. Louis, MO 63101

57.   Legal Services of Northern
      California
      517 12th Street
      Sacramento, CA 95814

58.   Legal Services of Northwest
      Jersey
      90 E. Main Street
      Somerville, NJ 08876

24

59. Legal Services of Southern
Missouri
3130 South Delaware
Springfield, MO 65804

60. Legal Services Vermont
274 N. Winooski Ave.
Burlington, VT 05401

61. Living with Conviction
PO Box 4021
Seattle, WA 98104

62. Maine Volunteer Lawyers
Project
75 Pearl Street
Portland, ME 04101

63. Maryland Volunteer Lawyers for
the Arts
1505 Eutaw Place, Suite 205
Baltimore, MD 21217

64. Maryland Volunteer Lawyers
Service
201 N. Charles St., Suite 1400
Baltimore, MD 21201

65. Mental Health Advocacy
Services
801 N. Brand, Suite 240
Glendale, CA 91203

66. Mid-Minnesota Legal Aid
111 N. Fifth St., Suite 100
Minneapolis, MN 55403

67. National Legal Aid & Defender
Association
1901 Pennsylvania Ave. NW
#500
Washington, DC 20006

68. Neighborhood Legal Services
Association
928 Penn Ave.
Pittsburgh, PA 15222

69. Neighborhood Legal Services of
Los Angeles County
1102 E. Chevy Chase Drive
Glendale, CA 91205

70. New Hampshire Legal
Assistance
117 N. State Street
Concord, NH 03301

71. New York Lawyers for the
Public Interest
151 W. 30th St., 11th Floor
New York, NY 10001

72. Northwest Justice Project
401 Second Ave. S, Suite 407
Seattle, WA 98104

73. Northwest Workers' Justice
Project
310 SW 4th Ave., Ste. 320
Portland, OR 97204

74. Pine Tree Legal Assistance
88 Federal Street
Portland, ME 04101

75. Public Justice Center, Inc.
201 N. Charles St., Suite 1200
Baltimore, MD 21201

76. The Rebuild, Overcome, and
Rise (ROAR) Center at
University of MD, Baltimore
520 W. Fayette Street
Baltimore, MD 21201

77. Rising for Justice, Inc
901 4th St. NW, Suite 6000
Washington, DC 20001

78.   Rural Law Center of New York
      22 U.S. Oval, Suite 101
      Plattsburgh, NY 12903

79.   Senior Advocacy Network
      821 13th Street, Suite A
      Modesto, CA 95354

80.   Sexual Violence Law Center
      810 3rd Ave., Ste. 630
      Seattle, WA 98104

81.   Shore Legal Access
      499 Idlewild Avenue, Suite 102
      Easton, MD 21601

82.   Southern Arizona Legal Aid,
      Inc.
      2343 E. Broadway Blvd.,
      Suite 200
      Tucson, AZ 85719

83.   Southern Minnesota Regional
      Legal Services
      450 N. Syndicate St., Ste. 260
      St. Paul, MN 55104

84.   Southern Nevada Senior Law
      Program
      7690 West Sahara Ave.
      Las Vegas, NV 89117

85.   TeamChild
      625 Andover Park W, Suite 112
      Tukwila, WA 98188

86.   Texas RioGrande Legal Aid
      (TRLA)
      301 South Texas Avenue
      Mercedes, TX 78570

87.   Unemployment Law Project
      1904 Third Ave., Suite 604
      Seattle, WA 98101

88.   Ventura County Legal Aid
      3170 Loma Vista Road,
      Suite 701
      Ventura, CA 93003

89.   Vital Immigrant Defense
      Advocacy & Services
      418 B Street, First Floor
      Santa Rosa, CA 95401

90.   Volunteer Lawyers for Justice
      PO Box 32040
      Newark, NJ 07102

91.   Volunteer Legal Services of
      Monroe County, Inc. (d/b/a
      JustCause)
      1 W. Main St., 5th Floor
      Rochester, NY 14614

92.   We Are Casa
      8151 15th Ave.
      Langley Park, MD 20783

93.   Western New York Law Center
      37 Franklin Street, Suite 210
      Buffalo, NY 14202

94.   Working Washington
      815 1st Ave., Suite 253
      Seattle, WA 98104

# APPENDIX B

# Statement of Interest of *Amici Curiae* Civil Legal Aid Organizations

## STATEMENT OF INTEREST

Established in 1911, *amicus curiae* **Maryland Legal Aid** is a statewide nonprofit 501(c)(3) law firm that advocates with and for Marylanders experiencing poverty to achieve equity and social justice through free civil legal services, community collaboration, and systemic change. From its 11 offices around the state and through its many community-based clinics, Maryland Legal Aid helps its clients preserve and access safe and affordable housing; maintain custody of their children and be safe from domestic violence; and increase their economic security by defending against consumer debt including foreclosures and tax sales, removing barriers to employment and accessing critical income supports such as Medicaid, SNAP, unemployment, and other vital public benefits. It assists its clients in resolving their fundamental legal problems to bring greater stability and possibilities to their lives and seeks systemic change to improve opportunities for Marylanders experiencing poverty.

*Amicus curiae* **Greater Boston Legal Services, Inc** ("GBLS") is a nonprofit, nonpartisan civil legal aid organization based in Boston, Massachusetts with over a 125-year history and is the primary provider of free legal services to low-income, elderly, and disabled people in Boston and thirty-one surrounding cities and towns. GBLS's mission is to provide free, civil legal assistance to as many low-income individuals as possible and address the causes and effects of poverty as they relate to basic human needs such as safety, shelter, financial stability, and employment by advocating for change in those societal systems which present as barriers to escaping poverty. To that end, GBLS prioritizes legal assistance to clients in the direst need of access to housing, access to benefits, health care, immigration support, personal safety, employment protections, food security, and disability benefits. In addition to individual representation, GBLS also meets its mission by engaging in systemic advocacy including representing community advocacy groups, appellate and class action litigation, and

28

legislative advocacy, as well as participating as members of specialized advocacy task forces, councils and advisory groups. GBLS is committed to access to justice for all the eligible people in our catchment area.

The identified *amici curiae* civil legal aid organizations provide free legal assistance to low-income individuals and families, addressing vital issues essential to basic survival--such as housing stability and affordability, access to food and nutrition programs, health care, family and personal safety, and economic security. Beyond direct, individual legal services, some *amici* legal nonprofits also provide systemic advocacy and impact litigation for low-income people and other vulnerable groups, including to identify and challenge agency actions, administrative policies, and bureaucratic procedures. Often in partnership with community-based organizations, some *amici* also provide legal clinics, know-your-rights training, educational materials, train-the-trainer workshops, and online legal tools to support individuals and specific communities to understand and enforce their rights, navigate complex bureaucratic systems and legal processes, and independently advocate for their communities.

# <u>APPENDIX C</u>

# Corporate and Funding Disclosure Statements

## **CORPORATE AND FUNDING DISCLOSURE STATEMENTS**

Maryland Legal Aid is the name under which the Legal Aid Bureau, Inc., a Maryland 501(c)(3) corporation that has no parent corporation, does business.  No publicly held corporation owns any stock of the Legal Aid Bureau, Inc.

Greater Boston Legal Services is a non-governmental, non-profit 501(c)(3) corporation without a parent corporation. No publicly held corporation owns any stock of Greater Boston Legal Services.

No counsel for either party in this action has authored the brief of *amici curiae* in whole or in part, and no party or party's counsel or other entity or person—other than *amici curiae*, its members, or their counsel—made a monetary contribution intended to fund the preparation or submission of this brief.

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that the foregoing proposed brief of *amici curiae* is being filed with the consent of the counsel of both parties to the case and is no longer than 20 pages as approved by the Court.

I further certify that the proposed brief of *amici curiae* and all documents filed therewith through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on <u>February 23, 2026</u>.

<u>*/s/ Lauren D. Song*</u>
Lauren D. Song, BBO# 637871
GREATER BOSTON LEGAL SERVICES, INC.
197 Friend Street
Boston, MA 02114
(617) 603-1729
LSong@gbls.org

*Counsel for proposed* Amici Curiae *Maryland Legal Aid, Greater Boston Legal Services, Inc., and Other Civil Legal Aid Organizations as identified in full on Appendix A attached hereto.*