# United States District Court
# for the District of Massachusetts

NATIONAL COUNCIL OF NONPROFITS, et al.,          No. 1:25-cv-13242

                                        Plaintiffs,

                against                          (Leave to file granted
                                                 on February 24, 2026)

LINDA MCMAHON, et al.,

                                        Defendants.

## BRIEF FOR AMICI CURIAE
## LOCAL GOVERNMENTS AND MUNICIPAL ENTITIES

STEVEN BANKS
*Corporation Counsel*
*of the City of New York*
100 Church Street
New York, New York  10007
212-356-1000
nycappeals@law.nyc.gov
*Attorney for the City of New York*
*and New York City Department of*
*Education*

*(additional counsel*
*listed at end)*

February 24, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................ii

PRELIMINARY STATEMENT
AND INTEREST OF AMICI CURIAE...............................................1

ARGUMENT ...................................................................................2

    THE RULE UNDERMINES THE PSLF PROGRAM'S ROLE
    IN PROMOTING EFFECTIVE LOCAL GOVERNANCE ........2

    A. Defendants' rule threatens the workforces that are
       responsive for delivering critical services to millions of
       Americans. ..........................................................................3

    B. Defendants' rule would put millions of young
       Americans' education at risk. ............................................9

CONCLUSION ................................................................................12

ADDITIONAL COUNSEL...............................................................13

CERTIFICATE OF SERVICE .......................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

20 U.S.C. § 1087e(m)(1) ............................................................................ 3

20 U.S.C. § 1087e(m)(3)(B)(i) .................................................................... 3

N.Y. Educ. Law § 11(6) ............................................................................ 11

N.Y. Educ. Law § 12 ................................................................................ 11

N.Y. Educ. Law § 13 ................................................................................ 11

**Regulations**

34 C.F.R. § 685.219(b)(27)(iii)
 (effective July 1, 2026) ......................................................................... 3, 4

34 C.F.R. § 685.219(b)(30)(i)
 (effective July 1, 2026) ............................................................................ 4

34 C.F.R. § 685.219(b)(30)(v)
 (effective July 1, 2026) ............................................................................ 4

34 C.F.R. § 685.219(i)(2)
 (effective July 1, 2026) ............................................................................ 4

**Cases**

*Divisich v. Marshall*,
 281 N.Y. 170 (1939) ................................................................................. 5

**Litigation**

*Bd. of Educ. of City Sch. Dist. of City of N.Y. v.*
 *U.S. Dep't of Educ.*, No. 1:25-cv-08547 (S.D.N.Y.) ............................. 8

*United States v. City of N.Y.*,
 No. 1:25-cv-4084 (S.D.N.Y.) .................................................................. 8

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Other Authorities**

EducationWeek, *Student Loan Debt Is an Overlooked Crisis in Teacher Education* (Dec. 5, 2024), https://perma.cc/TQ4E-87GS ............................... 10

New York City Department of Citywide Administrative Services, *NYC Government Workforce Profile Report (FY 2024)*, https://perma.cc/HJ6D-7VDY .......................................................... 5

New York City Department of Consumer and Worker Protection, *Mayor Adams Expands Partnership with Student Loan Assistance Company* (Aug. 7, 2025), https://perma.cc/T68E-TNW6 ............................... 7

New York City Department of Education, *Guidelines to Support Transgender and Gender Expansive Students*, https://perma.cc/PV48-P4WP ....................................... 11

New York City Independent Budget Office, *Roll Call: Recent Trends in Teacher Retention & Hiring in New York City Public Schools*, https://perma.cc/K4XW-N88D ............................................... 10, 11

New York City Law Department*, City of New York Files Lawsuit against U.S. Department of Education Seeking to Protect $47 Million in Federal Education Grants* (Oct. 16, 2025), https://perma.cc/77HU-G8EJ ....................................... 8

New York State Department of Labor, *Public Service Loan Forgiveness*, https://perma.cc/D3LV-3XVK .......................... 7

New York State Education Department, *Professional Certification – Education Requirement*, https://perma.cc/5UVS-M7RK ..................................................... 10

NYC Jobs, *Network Epidemiologist*, https://perma.cc/3AWL-83ZX ..................................................... 6

NYC Jobs, *PATH Coordinator*, https://perma.cc/2K45-6UXB ...................................................... 6

NYC Public Schools, *New Employees*, https://perma.cc/4PYB-QMAS ....................................................... 9

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

NYPD Recruitment, *Qualifications*,
  https://perma.cc/957V-HBT2............................................................ 6

NYPD, *More Cops, Better Training* (Feb. 26, 2025),
  https://perma.cc/SEQ9-D9DD ........................................................ 6

United Federation of Teachers,
  *Teacher salary schedule (2022-27)*,
  https://perma.cc/L99V-KMSQ ...................................................... 10

United States Department of Justice, *Justice
  Department Sues New York City Over
  Sanctuary Policies* (July 24, 2025),
  https://perma.cc/84UY-LDFY ........................................................ 8

## PRELIMINARY STATEMENT
## AND INTEREST OF AMICI CURIAE

Amici are a coalition of local governments and municipal entities that provide essential public services to millions of Americans through the hard work and sacrifices of nearly 400,000 dedicated public servants. Two decades ago, Congress established the Public Service Loan Forgiveness (PSLF) program in part to ensure that public servants—firefighters, social workers, teachers, and others—could dedicate themselves to bettering their communities without fear of a lifetime of debilitating student loan debt. The promise was simple but powerful: serve the public for 10 years and have your outstanding debt forgiven.

Now, the United States Secretary of Education and Department of Education want to renege on Congress's promise, rewriting the statute through a rule that would transform the PSLF program from a right that arises when a borrower satisfies enumerated statutory criteria into a political tool for coercing municipalities to toe the line of the federal administration. And the chosen lever is unconscionable: the threat of inflicting profound financial pain on public servants for their employers' views. Fortunately, as plaintiffs have already explained, defendants' rule is unlawful many times over.

We will not repeat plaintiffs' points here, but rather write to emphasize the importance of the PSLF program to municipalities, their employees, and above all the residents they serve. Make no mistake, defendants' rule would do great harm to effective and independent local governance. Amici urge this Court to vacate and annul the rule.

## ARGUMENT

### THE RULE UNDERMINES THE PSLF PROGRAM'S ROLE IN PROMOTING EFFECTIVE LOCAL GOVERNANCE

Amici are local governments and other municipal entities—like school districts—representing more than 11 million Americans. Our residents depend on us for their safety, health, education, and so much more. And we cannot provide our residents with the services they deserve—and often need—without our dedicated public servants. Public servants are the lifeblood of local governance.

Since its inception nearly two decades ago, the federal Public Service Loan Forgiveness program has been—by congressional design—an essential tool for recruiting and retaining employees for government positions that require higher education. The program is now a pillar of municipal governance, from classrooms to safety-net hospitals to patrol cars and beyond. Defendants' rule—which will deprive large

swaths of public servants student loan forgiveness whenever defendants consider their public employers to have engaged in a "substantial illegal purpose," 34 C.F.R. § 685.219(b)(27)(iii) (effective July 1, 2026)—will cut far and deep into municipal governance.

## A. Defendants' rule threatens the workforces that are responsive for delivering critical services to millions of Americans.

In crafting the Public Service Loan Forgiveness program, Congress directed that the Secretary of Education "*shall* cancel the balance of interest and principal due" on eligible federal loans, so long as the borrower has been employed in "a public service job" for 10 years and has made monthly payments during that period. 20 U.S.C. § 1087e(m)(1) (emphasis added). And Congress defined the term "public service job" to categorically include any full-time employment in "government," "public safety," "law enforcement," "public health," "public education," and other fields. *Id.* § 1087e(m)(3)(B)(i).

So under the PSLF statute, what matters is whether a borrower's job falls within an enumerated field. Nowhere did Congress authorize the Secretary to pick and choose which jobs count based on her view as to whether the borrower's employer—though indisputably employing the borrower in an enumerated field—should be excluded from the

program based on her own extra-statutory criteria. But that is exactly what defendants' rule does: it disqualifies any employer that defendants deem as having engaged in a "substantial illegal purpose," 34 C.F.R. § 685.219(b)(27)(ii)—a vague yet sweeping concept that is a thinly disguised mechanism to target employers who disagree with the current federal administration's policy preferences by, for example, declining to facilitate federal civil immigration enforcement, *see id.* § 685.219(b)(30)(i), or adopting transgender-inclusive policies, *see id.* § 685.219(b)(30)(v). And if an employer is disqualified, *any* borrower who works for that employer is out of luck, unless defendants exercise the power that they have conferred on themselves to consider parts of an entity as distinct. *See id.* § 685.219(i)(2).

One need not look past the rule itself to understand that it is calculated to have far-reaching effects. But to get a better sense of the potential impact, consider the effect on amici, who collectively employ nearly 400,000 public servants. Take the case of New York City. One of the largest employers in the country, New York City has a combined public workforce of more than 360,000 employees, spread across mayoral agencies, the New York City Department of Education, and

other entities.[1] Around half of the city's civil servants have at least 10 years of service—one of the most important conditions for securing loan forgiveness under the PSLF program.[2] Of course, some of these employees started their careers before Congress created the PSLF program, and others have seen their loans forgiven, but the figure nonetheless captures how large a percentage of New York City's workforce may qualify for loan forgiveness under the program.

Indeed, almost 200,000 New York City employees are in civil service positions requiring higher education or an advanced degree—from associate degrees to doctorate degrees. This figure includes municipal employees with degrees that require multiple years of post-graduate education, like city lawyers and doctors in safety-net hospitals. And it also includes a wide range of positions across municipal governance.

For example, to join the ranks of the more than 30,000 police officers who serve in New York City, an applicant must either serve in the military or complete at least 24 college semester credits—the equiva-

---

[1] New York City Department of Citywide Administrative Services, *NYC Government Workforce Profile Report (FY 2024)*, at 4-5, https://perma.cc/HJ6D-7VDY. The Department of Education "is not a department of city government," but rather "an independent corporate body." *Divisich v. Marshall*, 281 N.Y. 170, 173 (1939).

[2] New York City Department of Citywide Administrative Services, *NYC Government Workforce Profile Report (FY 2024)*, at 12, https://perma.cc/HJ6D-7VDY.

lent of about a year of full-time higher education.[3] That is why the Police Department tops the list of agencies with the highest headcount in civil service titles that are most likely to support student loan forgiveness under the PSLF program. Other New York City agencies in the top 10 include the Department of Social Services—where, for example, a social worker counseling victims of domestic violence requires a Master of Social Work[4]—and the Department of Health and Mental Hygiene—where, for example, an epidemiologist tracking the spread of tuberculosis requires a Master of Public Health or Epidemiology.[5]

The list goes on and on, capturing the full extent of municipal services—from child protection, to education, to firefighting, to health, to housing, to recreation, to sanitation. Demonstrating the program's reach, last year New York City launched a pilot program providing employees with free access to student loan experts and online debt assistance tools to help them in securing student loan forgiveness under the

---

[3] NYPD Recruitment, *Qualifications*, https://perma.cc/957V-HBT2. Until just recently, aspiring police officers had to obtain 60 college semester credits—the equivalent of two years of full-time higher education. NYPD, *More Cops, Better Training* (Feb. 26, 2025), https://perma.cc/SEQ9-D9DD.

[4] NYC Jobs, *PATH Coordinator*, https://perma.cc/2K45-6UXB.

[5] NYC Jobs, *Network Epidemiologist*, https://perma.cc/3AWL-83ZX.

PSLF program.[6] Though the four-month pilot program was limited to just three city agencies and entities, it assisted hundreds of employees in applying for PSLF and companion programs, and it was on track to wipe out nearly $14 million in debt.[7]

Defendants' rule threatens to deny debt relief to countless New York City public servants who—under the statute enacted by Congress—have a right to student loan forgiveness upon satisfying specified criteria. That will do great harm to those who have already pursued degrees and made major life decisions based on the availability of loan forgiveness under the PSLF program. But defendants' threat, whether followed through on or not, will discourage people from pursuing careers in public service in the future. And since the PSLF program penetrates nearly every corner of New York City's governance, the cumulative effect of defendants' rule will be to gut the City's ability to recruit and retain qualified employees in highly competitive job markets where private employers can generally pay more and the cost

---

[6] New York City Department of Consumer and Worker Protection, *Mayor Adams Expands Partnership with Student Loan Assistance Company* (Aug. 7, 2025), https://perma.cc/T68E-TNW6.

[7] *Id.*; *see also* New York State Department of Labor, *Public Service Loan Forgiveness* (noting that from 2007 through 2022, eligible public service workers secured an average of more than $61,000 in debt relief), https://perma.cc/D3LV-3XVK.

of living is among the highest in the country. That, in turn, will disrupt the City's capacity to provide its 8.5 million residents with all manner of essential public services.

The notion that defendants will seek to disqualify New York City from the PSLF program is far from theoretical. After all, the current federal administration has already sued the City claiming that its policies governing cooperation with federal civil immigration enforcement "reflect an intentional effort to obstruct federal law enforcement."[8] And the administration has already tried to claw-back tens of millions of dollars in funding from the New York City Department of Education based on the claim that transgender-inclusive policies constitute sex discrimination.[9] These are just two examples of the administration's efforts to twist federal law in service of imposing its policy preferences on local governments across the nation.

While these efforts by the current federal administration have no merit behind them, the key point here is that what motivates them

---

[8] United States Department of Justice, *Justice Department Sues New York City Over Sanctuary Policies* (July 24, 2025), https://perma.cc/84UY-LDFY; *see generally United States v. City of N.Y.*, No. 1:25-cv-4084 (S.D.N.Y.).

[9] New York City Law Department*, City of New York Files Lawsuit against U.S. Department of Education Seeking to Protect $47 Million in Federal Education Grants* (Oct. 16, 2025), https://perma.cc/77HU-G8EJ; *see generally Bd. of Educ. of City Sch. Dist. of City of N.Y. v. U.S. Dep't of Educ.*, No. 1:25-cv-08547 (S.D.N.Y.).

has absolutely nothing to do with an individual borrower's right to student loan forgiveness under the PSLF program upon satisfying the criteria set by Congress. And this problem spans the nation, with defendants' threat looming from coast to coast, over large municipalities in "blue" states and small municipalities in "red" states. Amici are different in some respects, but they share a commitment to providing their residents with the services that they deserve. And our dedicated public servants—who may or may not agree with the policies we adopt—deserve better than to be treated as pawns in the administration's attempt to force its policy agenda down the throats of local governments.

### B. Defendants' rule would put millions of young Americans' education at risk.

While the impact of defendants' rule will reverberate across all aspects of municipal governance, the consequences for public education offer a helpful illustration of the problem. Few responsibilities of local government are more important than educating our nation's children. The New York City Department of Education is the largest school district in the nation, with around 150,000 employees.[10] And as with other school districts in the United States—whether large and small—

---

[10] NYC Public Schools, *New Employees*, https://perma.cc/4PYB-QMAS.

the Public Service Loan Forgiveness program provides a vital recruitment and retention tool.

It is simple math. About half of the New York City Department of Education's employees are teachers,[11] who must obtain a master degree within five years of being hired.[12] That means a teacher will often rack up student loan debt exceeding $40,000.[13] Meanwhile, a teacher with a master degree will earn around $70,000 to $80,000 a year while working in New York City public schools.[14] But if that person takes advantage of the Public Service Loan Forgiveness program with an income-driven repayment plan, at the end of 10 years of service they would see the majority of the original loan amount forgiven. For someone inclined toward public service, debt forgiveness can make all the difference in taking a job educating our public schoolchildren.

---

[11] New York City Independent Budget Office, *Roll Call: Recent Trends in Teacher Retention & Hiring in New York City Public Schools*, at 2, https://perma.cc/K4XW-N88D.

[12] New York State Education Department, *Professional Certification – Education Requirement*, https://perma.cc/5UVS-M7RK.

[13] EducationWeek, *Student Loan Debt Is an Overlooked Crisis in Teacher Education* (Dec. 5, 2024), https://perma.cc/TQ4E-87GS.

[14] United Federation of Teachers, *Teacher salary schedule (2022-27)*, https://perma.cc/L99V-KMSQ.

The New York City Department of Education strongly believes that transgender-inclusive policies—required by state and local law[15]—are essential to ensuring that schoolchildren receive the supportive educational environment they need to learn and thrive.[16] The current federal administration has already targeted the department for these policies (*see supra* at 8). There is thus a real risk that defendants will apply their rule in a way that creates new obstacles to teacher hiring, discouraging people from pursuing careers in public education and exacerbating post-pandemic declines in teacher retention.[17] New York City's teachers will suffer, and our schoolchildren will suffer with them.

The Public Service Loan Forgiveness program arose out of a shared understanding of the value of public service, but defendants' rule runs roughshod over that idea and weaponizes the program as part of the federal administration's campaign to bring local governments to heel. The rule is unlawful, it is wrong, and it is dangerous.

---

[15] *See, e.g.*, N.Y. Educ. Law §§ 11(6), 12-13

[16] New York City Department of Education, *Guidelines to Support Transgender and Gender Expansive Students*, https://perma.cc/PV48-P4WP.

[17] New York City Independent Budge Office, *Roll Call: Recent Trends in Teacher Retention & Hiring in New York City Public Schools*, at 3, https://perma.cc/K4XW-N88D.

## CONCLUSION

This Court should grant summary judgment to plaintiffs, vacating and annulling defendants' rule.

Dated:  New York, New York
       February 24, 2026

Respectfully submitted,

STEVEN BANKS
*Corporation Counsel*
*of the City of New York*

By:      /s/_____
TOBIAS ZIMMERMAN (BBO# 647668)
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-2423
tzimmerm@law.nyc.gov

## ADDITIONAL COUNSEL

ATLEEN KAUR
City Attorney
Guy C. Larcom City Hall 301
East Huron, 3rd Floor
Ann Arbor, MI 48104
*Attorney for the City of Ann Arbor, Michigan*

JESSICA C. BROWN
City Attorney
Office of City Attorney &
Corporation Counsel
149 Church Street
Burlington, VT 05401
*Attorney for the City of Burlington, Vermont*

MEGAN BAYER
City Solicitor
795 Massachusetts Avenue
Cambridge, MA 02139
*Attorney for the City of Cambridge, Massachusetts*

ZACHARY M. KLEIN
City Attorney
77 N. Front Street, 4th Floor
Columbus, OH 43215
*Attorney for the City of Columbus, Ohio*

ALEXANDRA B. RUGGIE
Corporation Counsel
909 Davis Street
Evanston, IL 60201
*Attorney for City of Evanston, Illinois*

RODERICK R. WILLIAMS
Acting Corporation Counsel
Office of New Haven Corporation
Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
*Attorney for the City of New Haven, Connecticut*

ROBERT TAYLOR
City Attorney
1221 Southwest Fourth Avenue,
Room 430
Portland, OR 97204
*Attorney for the City of Portland, Oregon*

DOUGLAS T. SLOAN
City Attorney
1685 Main Street, Room 310
Santa Monica, CA 90401
*Attorney for the City of Santa Monica, California*

ERIKA EVANS
City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
*Attorney for the City of Seattle, Washington*

## CERTIFICATE OF SERVICE

I certify that this brief and its accompanying certification will be served on all registered parties through this Court's CM/ECF system.

_____/s/_____
TOBIAS ZIMMERMAN (BBO# 647668)