## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL COUNCIL OF NONPROFITS, *et al.*,<br><br>              *Plaintiffs*,<br><br>        v.<br><br>LINDA MCMAHON, *et al.*,<br>              *Defendants*. | Case No. 25-cv-13242-MJJ |

| | |
|---|---|
| MASSACHUSETTS, *et al.*,<br><br>              *Plaintiffs*,<br><br>        v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br>              *Defendants*. | Case No. 25-cv-13244-MJJ<br><br>Leave to file excess pages granted on January 27, 2026 |

## DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND CROSS-MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    I.     Statutory and Regulatory Background ..................................................................... 2

    II.    Factual Background ................................................................................................ 4

LEGAL STANDARD .............................................................................................................. 5

    I.     Dismissal Standard ................................................................................................. 5

    II.    Summary Judgment Standard ................................................................................ 6

ARGUMENT ........................................................................................................................ 6

    I.     Dismissal Is Warranted Because Plaintiffs Cannot Satisfy Article III Standing
          and Ripeness Requirements. ................................................................................... 6

          A.    Plaintiffs Cannot Establish Standing. ........................................................ 6

          B.    Plaintiffs' Claims are not Ripe .................................................................. 11

    II.    Defendants are Entitled to Summary Judgment on Plaintiffs' APA Claims. ....... 12

          A.    The PSLF Final Rule is Neither Contrary to the HEA Nor in Excess of
              HEA Authority ......................................................................................... 12

          B.    The PSLF Final Rule is Not Arbitrary or Capricious. .............................. 17

          C.    The PSLF Final Rule Does Not Implicate the First Amendment ............. 24

    III.   Any Relief Should be Limited to the Parties Before the Court. ........................... 26

CONCLUSION .................................................................................................................... 28

CERTIFICATE OF SERVICE ............................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs v. Gardner*,
    387 U.S. 136 (1967) ............................................................................... 7

*Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell, No. 25-10276-GAO*,
    2025 WL 470459 (D. Mass. Feb. 12, 2025) ........................................ 10

*Am. Power & Light Co. v. Sec. & Exch. Comm'n*,
    329 U.S. 90 (1946) ............................................................................... 15

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health*,
    145 F.4th 39 (1st Cir. 2025) ................................................................. 27

*Arizona v. Biden*,
    40 F.4th 375 (6th Cir. 2022) ............................................................... 27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 5, 6

*Ass'n of Am. Univs. v. Dep't of Def.*,
    806 F. Supp. 3d 79 (D. Mass. 2025) ................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 5

*Blum v. Holder*,
    744 F.3d 790 (1st Cir. 2014) ............................................................... 7

*Bob Jones Univ. v. United States*,
    461 U.S. 574 (1983) ........................................................................... 16

*California v. Texas*,
    593 U.S. 659 (2021) ............................................................................27

*Church of Scientology of Cal. v. Comm'r*,
    83 T.C. 381 (1984) ............................................................................. 16

*City of City of Providence v. Barr*,
    954 F.3d 23 (1st Cir. 2020) ............................................................... 13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................. 6, 7, 9, 10

*Cutter v. Wilkinson*,
    423 F.3d 579 (6th Cir. 2005) ............................................................. 26

*Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*,
    958 F.3d 38 (1st Cir. 2020) ................................................................. 5

*Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*,
    162 F.3d 1206 (D.C. Cir. 1998) ............................................................................ 22

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ............................................................................................ 18

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ............................................................................................ 26

*Duncan v. Walker*,
    533 U.S. 167 (2001) ............................................................................................ 14

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ..................................................................................... 17, 21

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ...................................................................................... 7, 10

*Gonzalez v. United States*,
    284 F.3d 281 (1st Cir. 2002) ................................................................................ 5

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) ............................................................................................ 13

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944) ............................................................................................ 27

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977) ............................................................................................ 11

*King v. Burwell*,
    576 U.S. 473 (2015) ............................................................................................ 14

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................................ 16

*Lopez-Soto v. Hawayek*,
    175 F.3d 170 (1st Cir. 1999) .............................................................................. 15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 6, 10

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ............................................................................................ 28

*Mangual v. Rotger-Sabat*,
    317 F.3d 45 (1st Cir. 2003) .................................................................................. 7

*Michigan v. EPA*,
    576 U.S. 743 (2015) ............................................................................................ 21

*Mobil Oil Exploration & Prod. S.W. v. United Distrib. Cos.*,
  498 U.S. 211 (1991) ......................................................................... 18

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ......................................................................... 25

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ..................................................................... 17, 21

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ....................................................................... 6, 10

*N.H. Lottery Comm'n v. Rosen*,
  986 F.3d 38 (1st Cir. 2021) ............................................................. 12

*Nat'l Urban League v. Trump*,
  783 F. Supp. 3d 61 (D.D.C. 2025) ............................................... 25, 26

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ......................................................................... 11

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024) ......................................................................... 26

*Navegar, Inc. v. United States*,
  103 F.3d 994 (D.C. Cir. 1997) ........................................................... 8

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) ......................................................................... 17

*Petal Gas Storage, LLC v. FERC*,
  496 F.3d 695 (D.C. Cir. 2007) ......................................................... 21

*R.I. Ass'n of Realtors v. Whitehouse*,
  199 F.3d 26 (1st Cir. 1999) ............................................................. 12

*Reddy v. Foster*,
  845 F.3d 493 (1st Cir. 2017) ............................................................. 7

*Rhode Island v. Massachusetts*,
  37 U.S. 657 (1838) ........................................................................... 26

*River St. Donuts, LLC v. Napolitano*,
  558 F.3d 111 (1st Cir. 2009) ........................................................... 21

*Santana v. Holder*,
  731 F.3d 50 (1st Cir. 2013) ............................................................. 15

*Savage v. U.S. SBA*,
  552 F. Supp. 3d 241 (D.R.I. 2021) ................................................. 7, 8

*Seegars v. Gonzales*,
   396 F.3d 1248 (D.C. Cir. 2005) ...................................................... 8

*Sierra Club v. EPA*,
   129 F.3d 137 (D.C. Cir. 1997) ...................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ...................................................... 5

*Students for Fair Admissions, Inc., v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023) ...................................................... 11

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009) ...................................................... 10

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...................................................... 7

*Texas v. United States*,
   523 U.S. 296 (1998) ...................................................... 11

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ...................................................... 27

*Trump v. New York*,
   592 U.S. 125 (2020) ...................................................... 11

*United States v. Texas*,
   599 U.S. 670 (2023) ...................................................... 26, 27

*Waterkeeper All. v. EPA*,
   853 F.3d 527 (D.C. Cir. 2017) ...................................................... 15

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ...................................................... 26

*West v. Lynch*,
   845 F.3d 1228 (D.C. Cir. 2017) ...................................................... 10

*West Virginia v. Env't Prot. Agency*,
   597 U.S. 697 (2022) ...................................................... 13

*WorldCom, Inc. v. FCC*,
   238 F.3d 449 (D.C. Cir. 2001) ...................................................... 24

**Statutes**

5 U.S.C. § 702 ...................................................... 27

5 U.S.C. § 706 ...................................................... 12, 27

8 U.S.C. § 1189 ............................................................................................... 23

20 U.S.C. § 1082 ............................................................................................... 12

20 U.S.C. § 1087e ........................................................................................ *passim*

20 U.S.C. § 1221e-3 .......................................................................................... 312

20 U.S.C. § 3441 .......................................................................................... 12-13

20 U.S.C. § 3471 ............................................................................................... 13

20 U.S.C. § 3474 ............................................................................................... 13

College Cost Reduction and Access Act ("CCRAA"),
   Pub. L. No. 110–84, 121 Stat. 784, 800 (2007) ......................................... 2

**Rules**

Federal Rule of Civil Procedure 12 ...................................................................... 5

Federal Rule of Civil Procedure 56 ...................................................................... 6

**Regulations**

34 C.F.R. § 685.219 .................................................................................... 3, 13

73 Fed. Reg. 63232 (Oct. 23, 2008) ................................................................... 3

74 Fed. Reg. 55972 (Oct. 29, 2009) ................................................................... 3

77 Fed. Reg. 76414 (Dec. 28, 2012) ................................................................... 3

80 Fed. Reg. 67204 (Oct. 30, 2015) ................................................................... 3

85 Fed. Reg. 49798 (Aug. 14, 2020) .................................................................. 3

87 Fed. Reg. 65904 (Nov. 1, 2022) .................................................................... 3

88 Fed. Reg. 43064 (July 6, 2023) ..................................................................... 3

88 Fed. Reg. 43820 (July 10, 2023) ................................................................... 3

90 Fed. Reg. 40154 (Aug. 18, 2025) .................................................................. 3

90 Fed. Reg. 48966, 48966 (Oct. 31, 2025) ............................................... *passim*

91 Fed. Reg. 12302 (Mar. 13, 2026) ................................................................................. 3

**Other Authorities**

153 Cong. Rec. H7556 (July 11, 2007) ........................................................................... 14

## **INTRODUCTION**

The Public Service Loan Forgiveness ("PSLF") program seeks to incentivize public service employment by cancelling the balance of interest and principal due on eligible Federal student loans for borrowers who have made 120 payments while employed in a public service job. *See* 20 U.S.C. § 1087e(m). Pursuant to its authority and obligation to administer the PSLF program, the Department of Education ("Department") recently published a final regulation that requires PSLF-participating employers to certify that they do not engage in illegal activities, as proscribed under Federal or State law, such that they have a substantial illegal purpose, in order to retain their status as an eligible employer under the PSLF program. *See* William D. Ford Direct Loan ("Direct Loan") Program, 90 Fed. Reg. 48966, 48966 (Oct. 31, 2025) ("PSLF Final Rule"). The PSLF Final Rule details the substantive certification requirements that employers must satisfy to retain PSLF eligibility, the process by which the Department will assess and enforce compliance with the Rule, the reconsideration tools available to employers following an ineligibility determination, and the procedure employers may follow to re-establish PSLF eligibility.

Although the employer Plaintiffs concede that none of their activities violate any Federal or State laws, Plaintiffs nonetheless argue that the PSLF Final Rule is contrary to the Administrative Procedure Act ("APA") and the Constitution and request that it be vacated. As a threshold matter, Plaintiffs lack standing and their claims are unripe because their allegations rest on speculative fears of future enforcement and unreasonable misinterpretations of the challenged regulation. Taking as true Plaintiffs' assertions that they are not violating Federal or State laws, the PSLF Final Rule could not be used as a basis for PSLF disqualification. Because Plaintiffs cannot identify any actual or imminent loss of any Federal benefits, any investigation, or any enforcement action traceable to the Department, they do not have standing under Article III.

Plaintiffs' claims also fail on the merits. The Department promulgated the PSLF Final Rule pursuant to its broad authority to issue regulations governing the programs it administers and in doing so, properly discharged its obligation "to encourage borrowers to enter occupations

1

that improve their communities and advance the public good while also guarding against the diversion of Federal benefits to organizations that harm their fellow Americans by engaging in illegal conduct." PSLF Final Rule at 48968. Spanning nearly 40 pages, the PSLF Final Rule easily clears the APA's deferential arbitrary and capricious standard through its extensive and reasoned explanation for the Rule.

The First Amendment claim also fails because Plaintiffs have not carried their burden in asserting a facial challenge to the PSLF Final Rule. Additionally, the PSLF Final Rule does not target constitutionally protected speech, but instead only clarifies the consequences of engaging in conduct that is already illegal.

Accordingly, Plaintiffs' Motions should be denied, Defendants' Cross-Motion should be granted, and final judgment should be entered for Defendants.

## **BACKGROUND**

### I.    **Statutory and Regulatory Background**

The College Cost Reduction and Access Act ("CCRAA") amended section 455(m) of the Higher Education Act of 1965 ("HEA") to establish the PSLF program. *See* Pub. L. No. 110–84, 121 Stat. 784, 800 (2007). Under the PSLF program, the Secretary of Education "shall cancel the balance of interest and principal due . . . for a borrower who . . . has made 120 monthly payments on the eligible Federal Direct Loan." 20 U.S.C. § 1087e(m)(1)(A). To be eligible, the borrower must be "employed in a public service job at the time of such forgiveness." *Id*. § 1087e(m)(1)(B). Public service job means:

> i) a full-time job in emergency management, government (excluding time served as a member of Congress), military service, public safety, law enforcement, public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics), public education, social work in a public child or family service agency, public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization), early childhood education (including licensed or regulated childcare, Head Start, and State funded prekindergarten), public service for individuals with disabilities, public service for the elderly, public library sciences, school-based library

sciences and other school-based services, or at an organization that is described in section 501(c)(3) of title 26 and exempt from taxation under section 501(a) of such title; or (ii) teaching as a full-time faculty member at a Tribal College or University as defined in section 1059c(b) of this title and other faculty teaching in high-needs subject areas or areas of shortage (including nurse faculty, foreign language faculty, and part-time faculty at community colleges), as determined by the Secretary.

*Id.* § 1087e(m)(3)(B).

Pursuant to its authority to promulgate rules and regulations governing the programs it administers—*see* 20 U.S.C. § 1221e-3—the Department promulgated a PSLF regulation that became effective on July 1, 2009. *See* Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 73 Fed. Reg. 63232 (Oct. 23, 2008) (34 C.F.R. § 685.219). Since its original promulgation, § 685.219 has been amended seven times. *See* 74 Fed. Reg. 55972 (Oct. 29, 2009); 77 Fed. Reg. 76414 (Dec. 28, 2012); 80 Fed. Reg. 67204 (Oct. 30, 2015); 85 Fed. Reg. 49798 (Aug. 14, 2020); 87 Fed. Reg. 65904 (Nov. 1, 2022); 88 Fed. Reg. 43064 (July 6, 2023); 88 Fed. Reg. 43820 (July 10, 2023).

On August 18, 2025, the Department published a notice of proposed rulemaking ("PSLF NPRM"), reflecting proposed amendments to § 685.219. *See* William D. Ford Federal Direct Loan (Direct Loan) Program, 90 Fed. Reg. 40154 (Aug. 18, 2025). On October 31, 2025, after receiving 13,989 comments in response to the PSLF NPRM, the Department issued the PSLF Final Rule. *See* 90 Fed. Reg. 48966. On March 13, 2026, the Department published a technical correction to the PSLF Final Rule, which makes no changes to the regulatory text and only addresses errors in the placement of certain text. *See* 91 Fed. Reg. 12302 (Mar. 13, 2026).

The PSLF Final Rule amends § 685.219 to exclude from the PSLF program "employers that engage in specific enumerated illegal activities such that they have a substantial illegal purpose"; define "obligations and processes tied to making such a determination of an employer," including employers' obligation to certify that they do not participate in activities that have a substantial illegal purpose; "clarify[] that borrowers will receive full credit for work performed, until the effective date of the Secretary's determination that an employer is no longer

a qualifying employer under the rule"; and "establish[] methods for an employer to regain eligibility following a determination of ineligibility by the Secretary."  PSLF Final Rule at 48966.

The PSLF Final Rule explains that the Department, through an "unbiased adjudicator," will weigh "any evidence presented showing that an organization's activities violated any laws and make a determination if those violations rise to the level of substantial illegal purpose." PSLF Final Rule at 48970.  The Department will consider whether an "employer has a substantial illegal purpose by a preponderance of the evidence after weighing the employer's illegal conduct, narrowly focusing on only the illegal conduct enumerated in the regulation."  *Id*. at 48987; *see also id*. at 48973 ("[T]he Secretary will need to find that it is more likely than not that an organization's illegal activity is more than an insubstantial part of its activities that advance an illegal  purpose.").  Specifically, "the activities included within the definition of substantial illegal purpose are explicit violations of either State or Federal law, and as such, are actions which inherently do not serve the public good."  *Id*. at 48988. "When reviewing an employer's conduct, the Secretary will consider any reliable evidence, including countervailing evidence provided by the employer."  *Id*. at 48971.  Employers deemed ineligible under the PSLF Final Rule may seek reconsideration of the Department's determination—they "may seek review, submit documentation, and receive written explanations of the Secretary's determination."  *Id*.  "Organizations that want to avoid ineligibility altogether may suggest a corrective action plan to the Secretary in tandem with any submission under the employer reconsideration process" and "if the Secretary approves a corrective action plan for the organization, it can regain eligibility on an expedited timeline."  *Id*. at 48990.

## II.    Factual Background

Plaintiffs filed two sets of related cases challenging the PSLF Final Rule.  *See National Council of Nonprofits v. McMahon*, 1:25-cv-13242 (D. Mass.) ("NCP Case"); *Commonwealth of Massachusetts v. U.S. Department of Education*, 1:25-cv-13244, (D. Mass.) ("Mass. Case").

In the NCP Case, the plaintiffs are "a group of cities and counties, 501(c)(3) nonprofit

4

organizations, and associations representing nurses, teachers, social workers, government employees, and other professionals" ("NCP Plaintiffs").  NCP Case, Am. Compl., ¶ 5, ECF No. 46.   The NCP Plaintiffs state that they "are engaged in lawful activities."  *Id*.  The NCP Plaintiffs allege that the PSLF Final Rule violates the APA because it is contrary to law, in excess of statutory authority, arbitrary and capricious, and contrary to the First Amendment.  *Id*. ¶¶ 253-99.

In the Mass. Case, the plaintiffs are 23 states ("State Plaintiffs") that "strongly defend their conduct and laws as lawful."  Mass. Case, Am. Compl., ¶¶ 9-31, 89, ECF No. 92.  The State Plaintiffs claim the PSLF Final Rule violates the APA because it is contrary to law, in excess of statutory authority, and arbitrary and capricious.  *Id*. ¶¶ 155-77.

Each set of Plaintiffs filed their own summary judgment briefs.  *See* NCP Case, ECF No. 48-1 ("NCP Mot."); Mass. Case, ECF No. 94 ("Mass. Mot.").  Plaintiffs seek a declaration that the PSLF Final Rule violates the law and request that the Rule be vacated.  *See* NCP Mot. at 35; Mass. Mot. at 35.  Pursuant to the parties' stipulation, Defendants file the instant consolidated opposition and cross-motion.  *See* NCP Case, ECF Nos. 36-37; Mass. Case, ECF Nos. 81-82.

## <u>LEGAL STANDARD</u>

### I.   **Dismissal Standard**

Under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden to establish subject matter jurisdiction, and the Court must determine whether it has jurisdiction before addressing the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 104 (1998). Standing is "a prerequisite to" a court's subject matter jurisdiction.  *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020) (citation omitted).  When adjudicating a 12(b)(1) motion, courts may consider material from outside the pleadings.  *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

## II.    Summary Judgment Standard

In an APA case, the Federal Rule of Civil Procedure 56(a) summary judgment standard, requiring the court to determine if there is a genuine dispute of material fact, does not apply. "[T]he traditional Rule 56 standard does not apply at summary judgment due to the limited role of a court in reviewing the administrative record.  In the administrative law context, a motion for summary judgment is simply a vehicle to tee up a case for judicial review."  *Ass'n of Am. Univs.. v. Dep't of Def.*, 806 F. Supp. 3d 79, 89-90 (D. Mass. 2025), *appeal filed*, No. 25-2184 (1st Cir. Dec. 16, 2025) (citation modified).

## <u>ARGUMENT</u>

## I.    Dismissal Is Warranted Because Plaintiffs Cannot Satisfy Article III Standing and Ripeness Requirements.

Threshold jurisdictional defects plague Plaintiffs' claims and establish that Plaintiffs cannot reach—let alone succeed on—the merits.  Plaintiffs lack standing because their claims are based on speculative fears of future enforcement and unreasonable interpretations of the PSLF Final Rule.  For similar reasons, their claims are unripe.

### A.  Plaintiffs Cannot Establish Standing.

As a threshold matter, Plaintiffs' claims should be dismissed because they lack the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To meet that constitutional requirement, Plaintiffs must establish that they "[have] suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Only "actual or imminent" injuries are redressable for Article III purposes.  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).  Allegations that are "too speculative" or merely

assert "possible future injury" do not suffice.  *Clapper*, 568 U.S. at 409 (emphasis and citation omitted).  Plaintiffs' facial challenges to the PSLF Final Rule do not satisfy Article III's jurisdictional requirements.

Plaintiffs assert that they *may* be impacted by the PSLF Final Rule if, following the enforcement process, the Department ultimately determines that they or their employers have a substantial illegal purpose and those employers are excluded from the PSLF program.  *See* Mass. Mot. at 8; NCP Mot. at 12.  Plaintiffs state that they are not engaged in unlawful conduct, NCP Am. Compl. ¶ 5 and Mass. Am. Compl. ¶ 89, thereby conceding that the PSLF Final Rule will not require them to "make significant changes" to avoid being "exposed to the imposition of strong sanctions."  *Abbott Labs v. Gardner*, 387 U.S. 136, 154 (1967) (holding that pre-enforcement standing is satisfied where the regulated entity must make significant changes to its conduct to avoid regulatory sanctions), *abrogated on different grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

"In certain circumstances, 'the threatened enforcement of a law' may suffice as an 'imminent' Article III injury in fact."  *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  However, under the prevailing Supreme Court standard, "[i]t is not enough . . . to allege a subjective fear of injurious government action, even if that subjective fear is 'not fanciful, irrational, or clearly unreasonable.'"  *Blum v. Holder*, 744 F.3d 790, 797 (1st Cir. 2014) (quoting *Clapper*, 568 U.S. at 416); *see also Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("A plaintiff's subjective and irrational fear of prosecution is not enough to confer standing under Article III."). Even under the "potentially more lenient 'substantial risk' standard," fear of enforcement alone is not a cognizable injury.  *Savage v. U.S. SBA*, 552 F. Supp. 3d 241, 248 (D.R.I. 2021) (quoting *Blum*, 744 F.3d at 799).

Here, there exists no threat of enforcement because the Department has not made any indication that any of the Plaintiffs or their employers will be (or are likely to be) the target of

any enforcement activity.[1]  *See, e.g., Seegars v. Gonzales*, 396 F.3d 1248, 1255 (D.C. Cir. 2005)

("[T]here is nothing in the record to indicate that [the plaintiff] has been personally threatened

with prosecution or that his prosecution has 'any special priority' for the government." (quoting

*Navegar, Inc. v. United States,* 103 F.3d 994, 1001 (D.C. Cir. 1997)); *see also Savage*, 552 F.

Supp. 3d at 248 ("[A] plaintiff claiming standing must show that the likelihood of future

enforcement is 'substantial.'").  To the contrary, the Department has emphasized that future

determinations as to any employer "will be objective and based on evidence such as judgments

of State or Federal courts, guilty pleas of the organization, or statements by the organization

admitting that it engaged in such conduct (such as in a settlement agreement)."  PSLF Final Rule

at 48973.  Indeed, the PSLF Final Rule mandates a multi-step enforcement process—it "makes

clear that employer disqualification requires the Department to find that an employer has a

substantial illegal purpose by a preponderance of the evidence after weighing the employer's

illegal conduct, narrowly focusing on only the illegal conduct enumerated in the regulation."  *Id*.

at 48987.  "Employers may seek review, submit documentation, and receive written explanations

of the Secretary's determination."  *Id*. at 48971; *id.* at 48977 ("[E]mployers will be provided with

a notice, a transparent record, and an opportunity to review, respond, and rebut the Department's

findings to a neutral adjudicator, thereby ensuring that due process is afforded to all impacted

stakeholders and applied fairly and consistently.").  Moreover, "[o]rganizations that take

corrective action, demonstrate compliance, and return to lawful operations should have the

opportunity to be reinstated as an eligible employer" within 10 years.  *Id*. at 48990.  "[I]f the

Secretary approves a corrective action plan for the organization, it can regain eligibility on an

expedited timeline."  *Id*.

In response to comments to the PSLF NPRM, the PSLF Final Rule specifically disavows

that certain employers—similar to Plaintiffs and their employers—will be subject to exclusion

---

[1] Nor, by extension, do the NCP Plaintiffs reasonably expect "reputational injury" stemming
from a determination that the government cannot reasonably be expected to make in the near
future.  *See* NCP Mot. at 13.

*from* the PSLF program pursuant to the PSLF Final Rule.  *See* PSLF Final Rule at 48974 ("Federal law does not prohibit individuals from advocating for illegal immigrants or representing them in Federal immigration court. Organizations that do not aid or abet in criminal activity will not be disqualified from participating in the PSLF program, while organizations that participate in unlawful behavior may have a substantial illegal purpose depending on the nature of the offenses."); *id*. at 48978 ("The Department would have no basis to remove eligibility from nonprofits engaged in work related to immigrant communities, LGBTQ+ individuals, or racial justice if those organizations are following the law."); *id*. at 48980 ("The Department rejects the idea that ordinary, lawful assistance such as legal advice, medical care, or humanitarian support could trigger PSLF disqualification."); *id*. at 48981 ("Medical providers performing activities within the bounds of Federal and State law will not be affected.").

Any enforcement thus depends on employers' compliance with Federal and State laws, *see* PSLF Final Rule at 48973—compliance that the Plaintiffs allege they exhibit—not on potential future action by the Department.  The NCP Plaintiffs claim that "threats and accusations" in other contexts such as federal funding and sanctuary policies suggests a threat of enforcement in this context.  *See* NCP Mot. at 15-16.  However, enforcement of the PSLF Final Rule is limited to the standards and processes set forth in the Rule, which are unrelated to the considerations that may inform funding and other policy determinations.  Indeed, the PSLF Final Rule repeatedly advises that "[o]rganizations that abide by Federal law and the laws of the State in which they operate will not be subject to potential loss of eligibility.  PSLF employer eligibility is not conditioned on political alignment or conformity with any administration policies."  PSLF Final Rule at 48973 Any purported harms stemming from Plaintiffs' speculative fears are neither reasonable nor traceable to any action by the Department but instead result from their own regulatory compliance preparations, *see* NCP Mot. at 10-12, Mass. Mot. at 8-9.  *See Clapper*, 568 U.S. at 416 (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").  And any reliance on the monetary costs associated with compliance, *see* NCP

Mot. at 11, fares no better because Plaintiffs "cannot spend [their] way into standing simply by expending money to gather information and advocate against the [Department's] action." *All. for Hippocratic Med.*, 602 U.S. at 394.

The claims by the associations that represent "teachers, social workers, state and local government employees, and others who work in public-service jobs and have direct student loans," *see* NCP Mot. at 13, are particularly attenuated. Time and again the Supreme Court has rejected theories of standing that rest on a "speculative chain of possibilities," *Clapper*, 568 U.S. at 414, especially where, as here, those possibilities depend on "unfettered choices made by independent actors," *Lujan*, 504 U.S. at 562 (citation omitted). *See also Summers v. Earth Island Institute*, 555 U.S. 488, 495 (2009) (explaining that because the theory of standing depended on a chain of contingencies, it might have demonstrated "a chance" of injury, but "hardly [the] likelihood" necessary to satisfy Article III). The NCP Plaintiff associations rely on a speculative chain of possibilities, including that: employees may lose PSLF benefits if their employers violate Federal or State laws, the Department finds that those employers have a substantial illegal purpose under the PSLF Final Rule, following any reconsideration process that determination is upheld by the Department, and the employers' eligibility is not re-instated. Any potential injury to employees is premised on the potential future action of a third party, the employers. *See Murthy*, 603 U.S. at 57 (plaintiffs' "one-step-removed, anticipatory" claims of injury that would only result from the independent action of some third party did not support standing against the government). Standing doctrine does not permit the kind of attenuated chain the NCP Plaintiff associations seek to assert. *See, e.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, No. 25-10276-GAO, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (holding that unions lacked standing to challenge an incentive program for resignations because the harm from loss of membership dues in the event of resignations was insufficiently "certain" and related harms from "upstream effects" flowing from employees' choice to resign was not cognizable). When this kind of "conjecture is necessary, redressability is lacking." *West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017) (citation omitted). Because the employees do not have "standing to sue in their

10

own right," the NCP Plaintiff associations that represent them likewise do not have standing. *Students for Fair Admissions, Inc., v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

In sum, Plaintiffs' asserted injuries rest on speculation regarding future enforcement and unsupported interpretations of the PSLF Final Rule. They identify no actual or imminent loss of PSLF benefits and no imminent or likely enforcement actions. Indeed, Plaintiffs concede that none of their activities violate any Federal or State laws. Plaintiffs' speculation is insufficient for pre-enforcement standing and warrants dismissal of their claims.

**B. Plaintiffs' Claims are not Ripe.**

Article III requires that the Court only adjudicate those claims that are ripe for review. A claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted). "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation omitted).

A claim is not fit "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). Plaintiffs' claims are not fit for review because any alleged consequence is entirely speculative and contingent on future events, including Plaintiffs' own participation in illegal conduct under Federal and State law, the completion of enforcement action resulting in a determination that an employer has a substantial illegal purpose rendering it ineligible for PSLF benefits, and unsuccessful reconsideration proceedings. Until the Department issues a final decision finding that a Plaintiff is ineligible for PSLF benefits, Plaintiffs' concerns about losing funding are hypothetical and not grounded in any concrete agency action.

"In the pre-enforcement context, a party's 'concrete plans to engage immediately (or nearly so) in an arguably proscribed activity' gives a 'precise shape to disobedience' and

provides a 'specific legal question fit for judicial review,' and a showing that a 'challenged statute, fairly read, thwarts' those plans can demonstrate hardship." *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 53 (1st Cir. 2021) (citing *R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999)). Plaintiffs identify no imminent injury stemming from the PSLF Final Rule, only an abstract fear that the Rule might be enforced in ways that remove their PSLF benefits despite their compliance with Federal and State laws. But such fears are unsupported by the plain text of the PSLF Final Rule and wholly contingent on future agency decisions that may never occur. Plaintiffs' claims are not ripe and should, therefore, be dismissed.

## II.    Defendants are Entitled to Summary Judgment on Plaintiffs' APA Claims.

Even if the Court had subject matter jurisdiction over Plaintiffs' claims, which Defendants contest, the APA claims nonetheless fail on the merits because the PSLF Final Rule is within the bounds of the Department's authority under the HEA, the Rule is not arbitrary or capricious, and the Rule does not violate the Constitution.

### A.    The PSLF Final Rule is Neither Contrary to the HEA Nor in Excess of HEA Authority.

Under the APA, an agency's decision must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

Despite Plaintiffs' arguments to the contrary—NCP Mot. at 17; Mass. Mot. at 18—the HEA affords the Department broad authority to administer the PSLF program. *See* 20 U.S.C. § 1221e-3 ("The Secretary, in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law, is authorized to make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department."); *id.* § 1082(a)(1) ("In the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may. . . prescribe such regulations as may be necessary to carry out the purposes of this part . . . ."); *id.* §

12

3441(a)(2)(C) (transferring HEA authority to the Department Secretary); *id.* § 3474 ("The Secretary is authorized to prescribe such rules and regulations as the Secretary determines necessary or appropriate to administer and manage the functions of the Secretary or the Department."); *id.* § 3471(a) ("In carrying out any function transferred by this chapter, the Secretary, or any officer or employee of the Department, may exercise any authority available by law . . . .").  This broad delegation of authority squarely places the PSLF Final Rule outside the ambit of *City of Providence v. Barr*, 954 F.3d 23 (1st Cir. 2020), which only applies to those instances where the "agency literally has no power to act unless and until Congress confers power upon it."  Mass. Mot. at 11 (quoting *City of Providence*, 954 F.3d at 31).  And the Department's exercise of delegated authority is not an "extraordinary" case that in any way implicates the major questions doctrine, *see* Mass. Mot. at 17-18.  *See West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022).

The Department has properly discharged this statutory authority in promulgating the PSLF Final Rule, which ensures that, in accordance with the statutory text and purpose, only professions that advance the public interest are included in the list of PSLF-eligible "public service job[s]" under Section 1087e(m)(3)(B).  *See* 34 C.F.R. § 685.219(a) ("The Public Service Loan Forgiveness Program is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans after they satisfy the public service and loan payment requirements of this section.").  The PSLF Final Rule does not purport to "rewrite[e]" or "redefine" terms in the PSLF statute, Mass. Mot. at 14-16, but instead ensures that the term "public service job" is read and applied consistent with Congressional will.

The statute defines a "public service job" eligible under the PSLF program by listing distinct categories of jobs.  *See* 20 U.S.C. § 1087e(m)(3)(B).  The overlap among the categories provides insight into the types of jobs Congress intended to designate as PSLF eligible.  *Cf. Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) ("[A] word is known by the company it keeps (the doctrine of *noscitur a sociis*).").  For example, military service, law enforcement, public

13

library sciences, and public education are distinct categories that are also included within the broad government category. *See* 20 U.S.C. § 1087e(m)(3)(B). There is also overlap between the public interest law services category and the Section 501(c)(3) category. *Id.* The PSLF Final Rule only ensures that this definition is consistent with the broader statutory text and purpose. Plaintiffs argue that the PSLF statute must be read to apply to each distinct category listed under the definition of "public service job" and that the Department has no authority to harmonize the overlapping, and often times duplicative, listing. *See* NCP Mot. at 17-18; Mass. Mot. at 12-13. But courts are "reluctant to treat statutory terms as surplusage," *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation modified), and Plaintiffs' proposed reading of the statute assumes that Congress's enumeration of "public service job" categories was deliberately redundant.

The PSLF Final Rule makes sense of these overlapping categories by properly concluding that "Congress provided for a long list of eligible professions to broadly ensure that" only those "professions that advance the public interest were included in the list." PSLF Final Rule at 48972. Indeed, time served as a member of Congress is carved out from the PSLF statute to ensure that benefits are properly administered. *See* 153 Cong. Rec. H7556 (July 11, 2007) (statement of Rep. Roskam) ("I think we should speak clearly to the American taxpayers that we as elected officials are not trying to create some unfair advantage for ourselves, that we are not trying to reward ourselves, or our elected colleagues, nor any registered lobbyist, by giving away their hard-earned taxpayer dollars to pay off student debts."). The PSLF Final Rule further concludes "that Congress would not want PSLF benefits to be received by employees of organizations that the Department knows are not serving the public interest," which "includes organizations that are breaking the law . . . contrary to the public interest," because "Congress would not want to reward [such] organizations . . . by indirectly subsidizing their organizations by providing loan forgiveness to their employees." PSLF Final Rule at 48972. This interpretation is consistent with the text and purpose of the PSLF statute. *See King v. Burwell*, 576 U.S. 473, 498 (2015) ("A fair reading of legislation demands a fair understanding of the legislative plan."). Contrary to Plaintiffs' arguments that the definition of "public service job" is

exhaustive and that Congress did not envision any other exclusions under any circumstances, *see* NCP Mot. at 17-18; Mass. Mot. at 13, Congress was not required to expressly provide how the PSLF program would be administered in all instances because it delegated broad authority to the Department to ensure that the program was properly administered. *See Am. Power & Light Co. v. Sec. & Exch. Comm'n*, 329 U.S. 90, 105 (1946) ("The legislative process would frequently bog down if Congress were constitutionally required to appraise before-hand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation.").

The State Plaintiffs rely on *Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013) and *Lopez-Soto v. Hawayek*, 175 F.3d 170 (1st Cir. 1999) for the proposition that the PSLF Final Rule improperly adds additional limitations to an unambiguous definition. *See* Mass. Mot. at 13-14; *see also* NCP Mot. at 19. However, the PSLF Final Rule does not purport to "restrict[]," *see Santana*, 731 F.3d at 56, or "eschew[]," *Lopez-Soto*, 175 F.3d at 173, any of the job categories listed in the definition of "public service job." Indeed, the PSLF Rule does not add or remove any categories.[2] Instead, because the "public service job" definition contains a series of overlapping jobs, the PSLF Final Rule "aims to better align PSLF eligibility with the program's statutory intent: to encourage Americans to pursue public service careers that improve their communities." PSLF Final Rule at 48967. It accomplishes this goal by reconciling the definition of "public service job" in a manner that is aligned with the statutory text and purpose—to ensure that the Department is not indirectly subsidizing employers engaged in illegal activities that harm fellow Americans. *Id.*; *see also id.* at 48972 ("Congress provided for a long list of eligible professions to broadly ensure that all professions that advance the public

---

[2] Nor, similarly, is this a case where the agency has "administrative[ly] narrow[ed]" a "clear statutory mandate[]." *See* Mass. Mot. at 13 (quoting *Sierra Club v. EPA*, 129 F.3d 137, 140 (D.C. Cir. 1997)). Rather, consistent with a principle appearing in the same cases the State Plaintiffs cite, *see* Mass. Mot. at 13 n.7, the statute evinces that the Department "had discretion to fashion other exemptions consistent with the statutory purposes," *Waterkeeper All. v. EPA*, 853 F.3d 527, 534 (D.C. Cir. 2017).

interest were included in the list. This provides an important clue in interpreting the underlying statute, as the Department must presume that Congress would not want PSLF benefits to be received by employees of organizations that the Department knows are not serving the public interest. This includes organizations that are breaking the law, which is contrary to the public interest.").

In sum, "the best reading of [the PSLF] statute is that it delegates discretionary authority to" the Department and the Court's role is to "recogniz[e] constitutional delegations, fix[] the boundaries of the delegated authority, and ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (citation modified). The HEA grants the Department broad, discretionary authority to issue regulations over the programs it administers. The Department acted within the bounds of this authority in regulating the meaning of "public service job" for the PSLF program.

The PSLF Final Rule is consistent with the way the government regulates in similar contexts, and which has been upheld by the Supreme Court. For example, under the illegality doctrine, the Internal Revenue Service administers the Internal Revenue Code by revoking the tax-exempt status of organizations that engage in activities that are illegal or otherwise contrary to public policy. *See e.g., Bob Jones Univ. v. United States*, 461 U.S. 574, 591 (1983) (holding that an organization may be denied tax-exempt status if its purposes or activities are illegal or otherwise contrary to public policy); *Church of Scientology of Cal. v. Comm'r*, 83 T.C. 381 (1984) (upholding revocation of tax-exempt status for a religious organization because of its conspiracy to defraud the United States, which violated established public policy), *aff'd* 823 F.2d 1310 (9th Cir. 1987).

As the PSLF Final Rule explained, application of the illegality doctrine "demonstrate[s] that the Department is implementing established legal standards when determining whether organizations are engaging in public service by examining whether they engage in activities that are illegal such that they have a substantial illegal purpose." PSLF Final Rule at 48973-74. These actions, like those taken by the IRS, do not amount to Executive Branch overreach. The

PSLF Final Rule draws on the Department's statutory authority to regulate the PSLF program and to ensure "sound financial stewardship of government programs." *Id.* at 48999. Contrary to Plaintiffs' assertions, the Department does not purport to assess an organization's tax-exempt status, NCP Mot. at 22, or to overtake a determination committed to the IRS, Mass. Mot. at 20. The Department's reliance on the illegality doctrine only demonstrates that its public policy considerations are rooted in the long-standing government practice to address and deter illegal activity as a matter of policy. *Cf. NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (placing "great weight" on the Executive's historical practice). The Department properly relies on its authority under the HEA to promulgate the PSLF Final Rule.

###### B. The PSLF Final Rule is Not Arbitrary or Capricious.

The scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A decision is arbitrary and capricious only when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43.

The PSLF Final Rule plainly meets the deferential APA standard. The PSLF Final Rule explains that its objective is only to "exclude employers that engage in specific enumerated illegal activities such that they have a substantial illegal purpose." PSLF Final Rule at 48966; *id.* at 48967 ("The Department, in this final rule, establishes that to be considered a qualifying employer for purposes of the PSLF program, an organization must not engage in illegal activity such that it has a substantial illegal purpose. Organizations that break the law such that they have a substantial illegal purpose are actively harming the public good. This rule prevents Federal funds from subsidizing harmful illegal activities through a program designed to reward public service." (internal citation omitted)); *id.* ("[T]he rule will ensure that the Department is

17

not indirectly subsidizing employers engaged in activities that have a substantial illegal purpose that harm fellow Americans.").  Plaintiffs fault the Department for its specific identification of certain illegal activities—NCP Mot. at 25-27; Mass. Mot. at 23—but the agency is permitted to deal incrementally with bigger problems, and doing so is not arbitrary or capricious.  *See Mobil Oil Exploration & Prod. S.W. v. United Distrib. Cos.*, 498 U.S. 211, 231 (1991) ("[A]n agency need not solve every problem before it in the same proceeding.").  Plaintiffs' allegations of pretext are insufficient to overcome the agency's valid, stated rationale.  *See Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) ("[A] court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons. Relatedly, a court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities." (citation modified)).

The PSLF Final Rule clearly sets forth the procedure that the Department will follow to advance that objective:

> The Secretary will weigh any evidence presented showing that an organization's activities violated any laws and make a determination if those violations rise to the level of substantial illegal purpose. The Secretary will look to see if there is a pattern of behavior by the organization, the gravity of the violation, and generally exclude evidence of technical violations of law.  When reviewing an employer's conduct, the Secretary will consider any reliable evidence, including countervailing evidence provided by the employer.

PSLF Final Rule at 48970-71.  The PSLF Final Rule also explains the recourse available to employers upon the Department's determination that they have a substantial illegal purpose:

> [E]mployers will be provided with a notice, a transparent record, and an opportunity to review, respond, and rebut the Department's findings to a neutral adjudicator, thereby ensuring that due process is afforded to all impacted stakeholders and applied fairly and consistently.  The rule also provides an opportunity for employers to regain eligibility by following a corrective action plan to come into compliance after a loss of eligibility.  If the processes established in this final rule do not resolve a concern, employers can seek judicial review of the Department's decisions in Federal court.

*Id*. at 48977; *see also id*. at 48971 ("This final rule also establishes a reconsideration process for employers when they have been determined ineligible.  Employers may seek review, submit documentation, and receive written explanations of the Secretary's determination.  This approach ensures transparency, protects taxpayers, and maintains borrower confidence.").

Plaintiffs claim that the PSLF Final Rule does not have a rational connection to the factual record—NCP Mot. at 23-24; Mass. Mot. at 22—but the connection between the Rule's objective and its direction is plain.  "The Department will administer the PSLF program in a manner that provides borrowers with the benefits required by statute, while ensuring the responsible stewardship of taxpayer resources."  PSLF Final Rule at 48973.  "[W]hen employers break the law, such that the organization has a substantial illegal purpose, the Department may take action to safeguard the integrity of the PSLF program by removing eligibility from that employer."  *Id*.; *see also id*. at 48969 ("The Department agrees with the commenters and appreciates their support.  The PSLF program has faced significant challenges over the years, including high denial rates, administrative barriers, and widespread confusion among borrowers.  This final rule delivers clarity, fairness, and accountability for borrowers and qualifying employers under PSLF.  It strengthens transparency and ensures PSLF is restored to its intended focus on public service for the betterment of communities.  This final rule ends the subsidization of employment at organizations that are not only failing to serve the public interest but are actually doing harm by engaging in illegal conduct."); *id*. at 48999 ("Borrowers and taxpayers alike deserve a program that is transparent, fair, and protects Federal investment.  The Department will enforce the law firmly, while making sure compliance is efficient, lawful, and aligned with statutory obligations.").  In reaching these conclusions, the Department expressly considered alternatives, *see* NCP Mot. 25, including "a broad range of proposals from internal sources as well as from non-Federal negotiators and members of the public as part of the negotiated rulemaking process" and ultimately determined that the PSLF Final Rule "will prevent taxpayer-funded PSLF benefits from being improperly provided to individuals who are employed by organizations that engage in activities such that it has a substantial illegal purpose,

19

improve the integrity of the PSLF program, and provide protection for taxpayers."  PSLF Final Rule at 48997 ("The Department believes this final rule preserves flexibility to recognize a wide range of nonprofit and governmental employers while ensuring that the core purposes of the PSLF program are preserved.").  The Department also considered costs.  *See* NCP Mot. at 30.  It "acknowledges that implementing the regulations will generate . . . administrative costs, compliance costs for employers, and potential disruptions for borrowers" but concludes that "[d]espite the initial and ongoing costs, the long-term benefits of this final rule include increased integrity and long-term savings for taxpayers."  PSLF Final Rule at 48993.

Moreover, the Department took reasonable steps to achieve its objectives. "Organizations that abide by Federal law and the laws of the State in which they operate will not be subject to potential loss of eligibility."  *Id*. at 48973.  If—through the enforcement process— the Secretary finds that an organization has engaged in illegal activities such that it has a substantial illegal purpose, the PSLF Final Rule "ensures employers are notified and given an opportunity to respond before any adverse decision by the Secretary."  *Id*. at 48966.  The PSLF Final Rule adequately addresses employers' and employees' reliance interests.  As to employees, "[e]ven if an employer has engaged in unlawful conduct in the past, the Department's determination that an organization engaged in activities such that it has a substantial illegal purpose will not impact PSLF credit a borrower has received for working for that employer in the past" and employees "will have clear notice and the opportunity to change employers after the Department takes action against an employer."  *Id*. at 48984; *id*. at 48985 ("[B]orrowers have significant reliance interests in the PSLF program, but those reliance interests must be balanced against the Department's interest in not indirectly subsidizing employers that have a substantial illegal purpose.").  As to employers, the PSLF Final Rule establishes a process by which organizations may regain eligibility, including an expedited mechanism.  *Id*. at 48989-90; *id*. at 48990 ("The Department believes the temporal disqualification strikes the right balance and ensures that organizations can regain eligibility. In addition, if the Secretary approves a corrective action plan for the organization, it can regain eligibility on an expedited timeline.

20

Organizations that want to avoid ineligibility altogether may suggest a corrective action plan to the Secretary in tandem with any submission under the employer reconsideration process."). This calibrated approach easily satisfies the APA's reasonableness standard and should be afforded adequate deference. *See River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009) ("Review under the arbitrary and capricious standard is narrow and this Court may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions. Accordingly, our review under section 706(2)(A) is highly deferential, and the agency's actions are presumed to be valid. Under this standard, we are required to determine whether the agency's decision is supported by a rational basis, and if so, we must affirm." (internal citations omitted).

Plaintiffs argue that the Department's justifications are unconvincing. *See* NCP Mot. at 23; Mass. Mot. at 22. But the Department need only articulate "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (citation omitted). And the agency appropriately relies on its experience in exercising its judgment. *See id.* at 52 ("It is not infrequent that the available data does not settle a regulatory issue[,] and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion."). Thus, a reviewing court's task is only to determine whether an agency has engaged in "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (citation omitted); *see Prometheus Radio Project*, 592 U.S. at 423 ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision"). The Department's stated interest in administering the PSLF program "to encourage lawful activities that promote the public good," *see* PSLF Final Rule at 48976, its imposition of "defined parameters of the rule [to] help the Department avoid arbitrary enforcement of the rule," *id.* at 48977, and its careful weighing of reliance interests, *id.* at 48984, satisfy the arbitrary and capricious standard. *See Petal Gas Storage, LLC v. FERC*, 496 F.3d 695, 703 (D.C. Cir. 2007) (noting that under the arbitrary-and-capricious standard, the agency was "not required to choose the best solution, only a reasonable

21

one"); *Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1215 (D.C. Cir. 1998) (noting that the arbitrary-and-capricious standard demands a reasonable decision, not the best or most reasonable decision).

Indeed, the PSLF Final Rule on its face addresses the purported ambiguities that Plaintiffs now challenge.  For example, Plaintiffs argue that the PSLF Final Rule targets conduct that "is not actually illegal in many States," Mass. Mot. at 23 (emphasis omitted), and that the "Department has no expertise in administering broad swaths of federal and state law," NCP Mot. at 27.  But the PSLF Final Rule makes clear that it does not "create new interpretations."  PSLF Final Rule at 48980.  The Department relies on "existing findings of unlawful activity by courts or other regulators where appropriate" and "[t]o the extent that State laws may vary, the Department will defer to the judgments of State courts in determining what constitutes unlawful activity *within the jurisdiction where the conduct occurs*."  *Id*. (emphasis added).  The PSLF Final Rule "establishes definitions that are anchored in law, have precise meanings that provide sufficient notice, are written in a manner in which they can be applied uniformly, and are generally understood by the public."  *Id*. at 48980; *see, e.g.*, *id.* at 48988 ("[I]f the organization has engaged in less serious violations, the Department may need to see a pattern and practice of consistent violations to find that the organization has engaged in activities such that it has a substantial illegal purpose.").  The PSLF Final Rule also "explicitly disclaims that it is attempting to or has made any "substantive changes to the legality of certain actions," rather it clarifies the consequences for breaking established Federal or State laws.  *See id*. at 48974; *see, e.g.*, *id.* at 48981 ("The definition of chemical castration or mutilation is not about lawful medical practices; it is about ensuring that PSLF funds do not support the castration or mutilation of children in violation of Federal or State law. Medical providers performing activities within the bounds of Federal and State law will not be affected. Only conduct that is prohibited by Federal law, or State law in the State where the conduct occurs, is at issue. The standard is anchored in law and will be applied narrowly, based on clear evidence of illegality under Federal law or State law."); *id*. at 49001 (Substantial illegal purpose includes "[e]ngaging in the

trafficking of children to another State for purposes of emancipation from their lawful parents in violation of Federal or State law."); *id*. at 48974 ("Organizations that do not aid or abet in criminal activity will not be disqualified from participating in the PSLF program."); *id*. at 49001 ("Supporting terrorism, including by facilitating funding to, or the operations of, cartels designated as Foreign Terrorist Organizations consistent with 8 U.S.C. 1189, or by engaging in violence for the purpose of obstructing or influencing Federal Government policy.").  Ultimately, the Department's determination of "whether an organization has engaged in illegal activities such that it has a substantial illegal purpose will be objective and based on evidence such as judgments of State or Federal courts, guilty pleas of the organization, or statements by the organization admitting that it engaged in such conduct." *Id*. at 48973.

Plaintiffs further claim that the PSLF Final Rule does not propound the standards applicable to its finding that an employer has a substantial illegal purpose.  Mass. Mot. at 32; NCP Mot. at 32-33.  But the PSLF Final Rule is clear in its articulation of the standards and process by which the Department will enforce the Rule.  The PSLF Final Rule explains that its evaluation approach "ensures transparency, protects taxpayers, and maintains borrower confidence."  PSLF Final Rule at 48971.  To that end, an "unbiased adjudicator" who "has not prejudged the law or the facts" will "weigh any evidence presented showing that an organization's activities violated any laws" by "look[ing] to see if there is a pattern of behavior by the organization, the gravity of the violation, and generally exclude evidence of technical violations of law." *Id*. at 48970-71.  The adjudicator will "consider any reliable evidence, including countervailing evidence provided by the employer." *Id*. at 48971.  The adjudicator will determine whether the "employer has a substantial illegal purpose by a preponderance of the evidence after weighing the employer's illegal conduct, narrowly focusing on only the illegal conduct enumerated in the regulation." *Id*. at 48987.  "Employers may seek review, submit documentation, and receive written explanations of the Secretary's determination." *Id*. at 48971. The PSLF Final Rule "also provides an opportunity for employers to regain eligibility by following a corrective action plan to come into compliance after a loss of eligibility." *Id*. at

23

48977.  The PSLF Final Rule thus appropriately "defines to whom the requirements apply, the conduct that is prohibited and the consequence of engaging in illegal activities for an employer who qualifies in the PSLF program." *Id*.  This reasoned approach is neither arbitrary nor capricious.

Finally, the State Plaintiffs incorrectly claim that the Federal government is exempted from the PSLF Final Rule based on the Department's stated assumption that "Federal agencies will comply with the law," PSLF Final Rule at 48994.  *See* Mass. Mot. at 26.  Not so.  The PSLF Final Rule states that the Department "do[es] not expect a reduction in forgiveness for Federal employees," PSLF Final Rule at 48994, but nothing in the Rule carves out or exempts Federal employers.  Additionally, Plaintiffs complain that the PSLF Final Rule's use of an employer's tax employment identification number to determine PSLF eligibility is unreasonable because different government agencies may operate under the same identification number.  *See* Mass. Mot. at 26.  Although the PSLF Final Rule recognizes that "employees in one area or agency may be affected by the activities of employees in other organizations under the same E.I.N" because "[g]overnment agencies may have many service areas under a single E.I.N," this provision was included in the budget impact section of the rule to show the potential breadth of the Rule.  PSLF Final Rule at 48994.  This analysis does not change the fact that any employer improperly excluded from the PSLF program only because of its E.I.N. association may seek reconsideration of that decision as the PSLF Final Rule permits.  Moreover, the Department's selection of a bright-line and administrable standard, even if imperfect, does not render that decision arbitrary or capricious.  *See WorldCom, Inc. v. FCC*, 238 F.3d 449, 459 (D.C. Cir. 2001) (Agency's reliance "upon an admittedly imperfect [standard] does not render its use arbitrary and capricious.").

## C.  The PSLF Final Rule Does Not Implicate the First Amendment.

The NCP Plaintiffs also claim that the PSLF Final Rule violates the APA because it is contrary to a constitutional right insofar as it violates the First Amendment by imposing "viewpoint-discriminatory restrictions on a government program otherwise open to all 501(c)(3)

24

tax-exempt employers."  NCP Mot. at 31.  As a threshold matter, the NCP Plaintiffs assert facial

constitutional challenges to the PSLF Final Rule because they challenge the Rule "as a whole,

rather than as to particular applications."  *Moody v. NetChoice, LLC*, 603 U.S. 707, 717 (2024).

As a result, Plaintiffs must show that "a substantial number of the law's applications are

unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Id*. at 723 (citation

modified).

 The NCP Plaintiffs' Complaint and Motion begins and ends with a sweeping request that

the PSLF Final Rule be vacated without any attempt to "address the full range of activities the

[PSLF Final Rule] cover[s], and measure the constitutional against the unconstitutional

applications."  *Moody*, 603 U.S. at 724.  For example, the NCP Plaintiffs have failed to evaluate

how the PSLF Final Rule's exclusion of organizations that support foreign terrorist organizations

or engage in interstate trafficking of children in any way violates the Constitution.  *See* PSLF

Final Rule at 48981.

 The appropriate posture for Plaintiffs' First Amendment claim is as-applied.  That is

because facial challenges are "hard to win" and "courts usually handle constitutional claims case

by case, not en masse."  *Moody*, 603 U.S. at 723 (citations omitted).  "Claims of facial invalidity

often rest on speculation about the law's coverage and its future enforcement.  And facial

challenges threaten to short circuit the democratic process by preventing duly enacted laws from

being implemented in constitutional ways."  *Id*. (citation modified).  Because the NCP Plaintiffs

have not met the standard for asserting a pre-enforcement facial challenge to the PSLF Final

Rule, their claim fails at the outset.

 The NCP Plaintiffs' First Amendment claim also fails on the merits. The PSLF Final

Rule is not focused on what organizations may *say* about any topic.  Organizations remain

entitled to adopt any viewpoint or policy preference because the PSLF Final Rule is "limited to

ensuring that employers meet statutory requirements for lawful public service activities."  *See*

PSLF Final Rule at 48973.  Moreover, a provision requiring parties "to certify that they do not

violate federal laws that they are otherwise obligated to comply with does not chill protected

speech." *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 103 (D.D.C. 2025). As in *National Urban League,* Plaintiffs' "real concern is with the Executive Branch's interpretation of [relevant] law, not with the Certification Provision." *Id.* But "if the Certification Provision did not exist, Plaintiffs would still be subject to that federal law" and "if Plaintiffs believe that the Executive Branch has wrongly interpreted federal [] law, they can challenge that interpretation in a specific enforcement action." *Id.* (citing *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024)). To be sure, the PSLF Final Rule does not limit Plaintiffs' free speech by compelling or restricting their speech; they remain free to engage in protected speech that espouses any viewpoint they want, including advocating for whatever activities they prefer. *See* PSLF Final Rule at 48973. It simply restricts their ability to engage in illegal activities while also maintaining PSLF benefits—activities that would be illegal even without those benefits. Such restrictions on illegal conduct do not violate the First Amendment. *See Cutter v. Wilkinson,* 423 F.3d 579, 588 (6th Cir. 2005) (conditioning receipt of federal funding on compliance with the Religious Land Use and Institutionalized Persons Act did not violate the First Amendment because recipients had "no constitutional right, much less a fundamental constitutional right, to limit the exercise of religion by inmates" in the first instance).

III.    **Any Relief Should be Limited to the Parties Before the Court.**

Plaintiffs seek a complete vacatur of the PSLF Final Rule, but that remedy is not appropriate. *See* NCP Mot. at 35; Mass. Mot. at 34. If the court's remedial order affects nonparties, it may only do so incidentally. *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs."). "This tracks the founding-era understanding that courts 'render a judgment or decree upon the rights of the litigant[s].'" *Texas*, 599 U.S. at 693 (Gorsuch, J., concurring) (quoting *Rhode Island v. Massachusetts*, 37 U.S. 657, 718 (1838)). To be sure, courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313

26

(1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co.* v. *Bowles*, 321 U.S. 321, 329 (1944). The "set aside" language of Section 706(2) does not meet this standard. It neither refers to vacatur nor specifies as to whom the agency action should be set aside. *See Texas*, 599 U.S. at 696-97 (Gorsuch, J., concurring in the judgment); *Arizona* v. *Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring). And elsewhere, the APA makes clear that it does not upset traditional equitable principles, providing that its authorization of judicial review does not affect "the power or duty of the court to . . . deny relief on any . . . equitable ground." 5 U.S.C. § 702(1).

Even if the APA could be read to authorize vacatur of agency action,[3] "a district court should think twice—and perhaps twice again—before granting such sweeping relief." *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring) (citation omitted). As the Supreme Court explained in *Trump v. CASA, Inc.*, there is no basis in equity for a universal injunction that goes beyond remedying the harms incurred by the plaintiffs who have brought the lawsuit. 606 U.S. 831, 856 (2025).

The Court has long recognized that "equitable relief must be limited to the inadequacy that produced [the] injury in fact" and "[a]ny remedy a judge authorizes must not be more burdensome [to the defendant] than necessary to redress the complaining parties." *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring) (citation modified). To grant universal relief under the auspices of vacatur "strains our separation of powers. It exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide." *Id.* at 703 (Gorsuch, J., concurring). Accordingly,

---

[3] Defendants acknowledge that the First Circuit has recognized vacatur as an available remedy under the APA. *See Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 50 (1st Cir. 2025). Defendants here preserve the argument that 5 U.S.C. § 706(2) does not authorize any particular form of relief; it merely directs a reviewing court to disregard "agency action, findings, and conclusions" that it finds unlawful when resolving an individual APA challenge. *See Texas*, 599 U.S. at 693-703 (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment).

any equitable remedy applied in the nature of vacatur should apply only to the named Plaintiffs in this case. *See California v. Texas*, 593 U.S. 659, 672 (2021) (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract") (citations omitted); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (observing that the "general rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (citations omitted)).

## <u>CONCLUSION</u>

For all the reasons discussed herein, the Court should deny Plaintiffs' Motions, grant Defendants' Cross-Motion, and enter final judgment in Defendants' favor.

Dated:  March 16, 2026

<div style="margin-left:40%">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
*Trial Attorney*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC  20005
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorney for Defendants*

</div>

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 16, 2026, I electronically filed this document with the

Court by using the CM/ECF system, and that this document was served via the Court's CM/ECF

system to all parties of record.

<div align="right">

*/s/ Heidy L. Gonzalez*
Heidy L. Gonzalez

</div>