UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **National Council of Nonprofits** et al.,<br><br>     *Plaintiffs*<br><br>v.<br><br>**Linda McMahon** et al.,<br><br>     *Defendants* | **Case No. 25-cv-13242-MJJ** |

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS-MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... ii

Introduction........................................................................................................................ 1

Argument ........................................................................................................................... 1

I.      This Court has jurisdiction over this case. ............................................................. 1

        A.   Plaintiffs have shown concrete, non-speculative injuries. .......................... 1

             1.   Defendants ignore Plaintiffs' injuries as regulated entities that must
                  comply with the Rule should it take effect. ...................................... 1

             2.   Defendants overstate the showing required for injury based on the
                  threat of enforcement. ....................................................................... 4

             3.   Defendants are wrong that Employee Associations' members' injuries
                  are attenuated. .................................................................................... 6

        B.   Plaintiffs' claims are ripe. ........................................................................... 7

II.     The PSLF Rule is unlawful under the APA. .......................................................... 8

        A.   The Rule is contrary to the Higher Education Act. ..................................... 8

        B.   The Rule is arbitrary and capricious........................................................... 11

        C.   The Rule is viewpoint discriminatory. ....................................................... 16

III.    Vacatur is the appropriate remedy. ....................................................................... 18

Conclusion ........................................................................................................................ 20

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ............................................................................................... 7

*Am. Farm Bureau Fed'n v. EPA*,
   792 F.3d 281 (3d Cir. 2015) ............................................................................. 2, 3

*Am. Pub. Health Ass'n v. NIH*,
   145 F.4th 39 (1st Cir. 2025) ................................................................................ 19

*Amerijet Int'l, Inc. v. Pistole*,
   753 F.3d 1343 (D.C. Cir. 2014) ......................................................................... 14

*Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) .............................................................................................. 7

*Ass'n of Am. Univs. v. Dep't of Def.*,
   806 F. Supp. 3d 79 (D. Mass. 2025) .............................................................. 19, 20

*Ateba v. Leavitt*,
   133 F.4th 114 (D.C. Cir. 2025) ........................................................................... 17

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) .............................................................................................. 5

*Blum v. Holder*,
   744 F.3d 790 (1st Cir. 2014) ................................................................................. 5

*Bob Jones Univ. v. United States*,
   461 U.S. 574 (1983) ............................................................................................ 11

*Career Colls. & Schs. of Tex. v. Dep't of Educ.*,
   98 F.4th 220 (5th Cir. 2024) ............................................................................... 19

*City of Providence v. Barr*,
   954 F.3d 23 (1st Cir. 2020) ................................................................................... 8

*Clapper v. Amnesty International USA*,
   568 U.S. 398 (2013) ..................................................................................... 3, 6, 7

*Corner Post, Inc. v. Bd. of Governors*,
   603 U.S. 799 (2024) ........................................................................................ 19, 20

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
   45 F.3d 530 (1st Cir. 1995) ............................................................................... 7, 8

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ................................................................................................ 3

*Forsyth Cnty. v. Nationalist Movement*,
    505 U.S. 123 (1992) .............................................................................................. 17

*Grand River Enters. Six Nations, Ltd. v. Boughton*,
    988 F.3d 114 (2d Cir. 2021) .................................................................................. 2

*Harmon v. Thornburgh*,
    878 F.2d 484 (D.C. Cir. 1989) ............................................................................ 19

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................................... 3

*HBO, Inc. v. FCC*,
    567 F.2d 9 (D.C. Cir. 1977) ................................................................................ 12

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    37 F.4th 746 (1st Cir. 2022) ................................................................................ 10

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) ............................................................................................... 8

*Liberty Univ., Inc. v. Lew*,
    733 F.3d 72 (4th Cir. 2013) .................................................................................. 3

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ..................................................................................... 8, 10, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 2

*Make the Road N.Y. v. Noem*,
    2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) ................................................... 20

*McInnis-Misenor v. Me. Med. Ctr.*,
    319 F.3d 63 (1st Cir. 2003) ............................................................................... 7, 8

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ............................................................................................. 17

*Michigan v. EPA*,
    268 F.3d 1075 (D.C. Cir. 2001) ........................................................................... 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .......................................................................................... 12, 16

iii

*N.Y. Stock Exch. LLC v. SEC*,
  962 F.3d 541 (D.C. Cir. 2020) ................................................................................................ 9

*Nat'l Ass'n of Broads. v. FCC*,
  39 F.4th 817 (D.C. Cir. 2022) .................................................................................................. 9

*Nat'l Rifle Ass'n v. Vullo*,
  602 U.S. 175 (2024) ................................................................................................................ 18

*Nat'l TPS All. v. Noem*,
  166 F.4th 739 (9th Cir. 2026) ................................................................................................ 20

*National Urban League v. Trump*,
  783 F. Supp. 3d 61 (D.D.C. 2025) ......................................................................................... 18

*New York v. HHS*,
  414 F. Supp. 3d 475 (S.D.N.Y. 2019) .................................................................................... 12

*New York v. Trump*,
  No. 25-1236, 2026 WL 734941 (1st Cir. Mar. 16, 2026) ....................................................... 18

*NIH v. Am. Pub. Health Ass'n*,
  145 S. Ct. 2658 (2025) ...................................................................................................... 18, 19

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................................ 19

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) ................................................................................................................ 11

*Reddy v. Foster*,
  845 F.3d 493 (1st Cir. 2017) ................................................................................................ 4, 5

*Roman Cath. Bishop of Springfield v. City of Springfield*,
  724 F.3d 78 (1st Cir. 2013) ...................................................................................................... 7

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) .................................................................................................................. 3

*Somerville Pub. Schs. v. McMahon*,
  139 F.4th 63 (1st Cir. 2025) ..................................................................................................... 7

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................................... 4, 8

*State Nat'l Bank of Big Spring v. Lew*,
  795 F.3d 48 (D.C. Cir. 2015) ................................................................................................ 2, 5

*Steffel v. Thompson*,
  415 U.S. 452 (1974).................................................................................................... 5

*Stern v. U.S. Dist. Court*,
  214 F.3d 4 (1st Cir. 2010)........................................................................................... 8

*Tennessee v. EEOC*,
  129 F.4th 452 (8th Cir. 2025) ..................................................................................... 2

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025)........................................................................................... 19, 20

*United States v. Abdelaziz*,
  68 F.4th 1 (1st Cir. 2023)............................................................................................ 9

*Waterkeeper All. v. EPA*,
  853 F.3d 527 (D.C. Cir. 2017).................................................................................. 10

**Statutes**

5 U.S.C. § 706(2) ...................................................................................................... 18

20 U.S.C. § 1087e(m)(1)-(2)..................................................................................... 10

20 U.S.C. § 1087e(m)(3)(B) .................................................................................... 8, 9

20 U.S.C. § 3471(a). .................................................................................................... 9

**Other Authorities**

34 C.F.R. § 685.219(a)................................................................................................. 9

90 Fed. Reg. 48966 (Oct. 31, 2025)..................................................... 8, 9, 13, 14, 15

90 Fed. Reg. 18761 (Apr. 28, 2025) ........................................................................... 5

v

**INTRODUCTION**

Contravening congressional intent, the PSLF Rule gives the Secretary of Education virtually untrammeled authority to disqualify law-abiding employers and borrowers from participating in a vital government program just because they do not share the Administration's views on immigration, diversity and inclusion, and other issues. Plaintiffs—a group of cities and counties (Local Governments), tax-exempt organizations (Nonprofit Employers), and associations of borrowers (Employee Associations)—have shown that the PSLF Rule is unlawful.

This Court has jurisdiction to hear Plaintiffs' claims. Defendants' threshold arguments on standing and ripeness misconstrue Plaintiffs' injuries, which do not turn on whether the PSLF Rule is ultimately enforced against them but on, among other things, the cognizable injuries that they incur as regulated entities that must comply with the Rule should it take effect. Plaintiffs have also shown a sufficiently imminent threat of enforcement, an independent harm sufficient to satisfy injury and ripeness. On the merits, Plaintiffs have shown that the Rule is contrary to the Higher Education Act, arbitrary and capricious, and (for Nonprofit Employer Plaintiffs) contrary to their First Amendment rights. Defendants' arguments to the contrary misconstrue the statutory text, rely on inapplicable case law, or fail to engage with Plaintiffs' arguments in the first instance. The Court should declare the Rule unlawful and set it aside.

**ARGUMENT**

**I. This Court has jurisdiction over this case.**

    **A. Plaintiffs have shown concrete, non-speculative injuries.**

        **1. Defendants ignore Plaintiffs' injuries as regulated entities that must comply with the Rule should it take effect.**

Defendants insist that Plaintiffs describe only speculative injuries that will occur only if the Department successfully enforces the PSLF Rule against them. Defs. Br. 6-10. But Defendants

1

mischaracterize—or outright ignore—the injuries that Plaintiffs are already incurring and will continue to incur should the Rule take effect. Plaintiffs have shown multiple, independently sufficient injuries that they are already suffering or will necessarily suffer if the Rule is allowed to take effect, regardless of whether the Department ever enforces the Rule against them.

a. As Plaintiffs explained in their opening brief, at 10-12, Local Government Plaintiffs and Nonprofit Employer Plaintiffs are already incurring the regulatory costs and administrative burdens of the PSLF Rule or will do so if the Rule takes effect. Indeed, these Plaintiffs have already taken or will necessarily have to take measures to fulfill the Rule's new requirement that employers certify that they are not engaged in activities that the Department deems to have a substantial illegal purpose, including by determining what the Rule requires, collecting data on employment-verification processes, responding to inquiries from employees, and employing compliance counsel, among other steps. *See id.* at 11.

Regulatory burdens and compliance costs like the ones Plaintiffs have established, and which are unrebutted by Defendants, are a textbook Article III injury in fact. "'[T]here is ordinarily little question' that a regulated . . . entity has standing to challenge an allegedly illegal . . . rule under which it is regulated." *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also, e.g.*, *Tennessee v. EEOC*, 129 F.4th 452, 457 (8th Cir. 2025) ("A regulated party has a concrete interest . . . in avoiding regulatory obligations above and beyond those that can be statutorily imposed." (citations omitted)); *Grand River Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 121 (2d Cir. 2021) ("A regulated entity may plead an 'injury in fact' by plausibly alleging compliance costs associated with an increased regulatory burden."). And these regulatory burdens create an injury in fact "even before the challenged regulatory action fully takes effect." *Am. Farm Bureau Fed'n*

2

*v. EPA*, 792 F.3d 281, 293 (3d Cir. 2015) (citing *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972)); *id.* ("compliance costs" associated with new regulation and enforcement mechanisms were "classic injury-in-fact," even where it was unknown "precisely what form new regulations [would] take"); *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 90 (4th Cir. 2013) (anticipated regulatory costs sufficient to survive motion to dismiss).

Defendants all but ignore this prototypical injury in fact. They cite no case law undermining the basic proposition that administrative and compliance costs that regulated parties have undertaken or will undertake constitute an injury in fact. And they supply no evidence on the other side of the ledger to rebut Plaintiffs' showing that the PSLF Rule creates administrative burdens and compliance costs. In fact, the Department itself acknowledged that the Rule will "generate . . . administrative costs, [and] compliance costs for employers." *See* AR2492.

Insofar as Defendants do address this injury, they point to cases assessing entirely different injuries experienced by parties not directly regulated by the challenged government action. *See* Defs. Br. 9-10. True, *Clapper v. Amnesty International USA* held that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves." 568 U.S. 398, 416 (2013). But that case was about plaintiffs *not* regulated by the challenged law who incurred expenses in response to their hypothetical, subjective fear of government surveillance, *id.* at 415-17, not regulated parties incurring the regulatory and administrative costs as the reasonable and predictable response to new compliance obligations, as here. And the Supreme Court's admonition in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024), that an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action" relates to the test for organizational standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which evaluates whether an organization's

3

mission has been impaired and whether the organization has diverted resources in response. But here Plaintiffs' regulatory and compliance costs are necessarily incurred to remain eligible for PSLF and are wholly unrelated to any advocacy related to the Rule, so that case is also irrelevant to Plaintiffs' standing.

b. The standing inquiry could end with the assessment of regulatory and compliance costs, but Local Government Plaintiffs and Nonprofit Employer Plaintiffs have also shown a competitive-disadvantage injury that they are already incurring or will incur regardless of whether or how the Department ultimately enforces the PSLF Rule. As Plaintiffs explained in their opening brief, at 12-13, they rely on their status as PSLF-qualifying employers to recruit and retain skilled employees, who may otherwise opt for higher-paying positions in the private for-profit sector. *Id.* at 12. The uncertainty and threat of disruption to PSLF access, which the Rule is already causing and will continue to cause should it take effect, undermines the security and stability of Plaintiffs' workforces and impedes Plaintiffs' ability to attract and maintain that workforce. Defendants have no answer to this Article III injury.

### 2. Defendants overstate the showing required for injury based on the threat of enforcement.

Plaintiffs have also established an Article III injury in fact based on the threat of enforcement of the PSLF Rule against them.

Though Defendants suggest that Plaintiffs must show that they have been "personally threatened with prosecution," Defs. Br. 7-8, courts have cautioned against overstating the required showing to sustain a preenforcement challenge. "An allegation of future injury may suffice . . . if there is a substantial risk that the harm will occur," *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 156 (2014)) (cleaned up), meaning that a plaintiff must show "a realistic danger of sustaining a direct injury" from

4

enforcement, *Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "[I]t would make little sense to force a regulated entity to violate a law (and thereby trigger an enforcement action against it) simply so that the regulated entity can challenge" its legality. *State Nat'l Bank of Big Spring*, 795 F.3d at 54. As the First Circuit has explained, "[t]he rationale for pre-enforcement standing is that a plaintiff should not have to expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Reddy*, 845 F.3d at 500 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

Plaintiffs have made the required showing. While the PSLF Rule itself does not identify specific entities by name, this Administration *has* targeted Plaintiffs for lawful activities that the Secretary may deem to have a "substantial illegal purpose" by the terms of the Rule, including putting Local Government Plaintiffs on lists of so-called sanctuary jurisdictions that purportedly violate federal immigration laws and targeting Nonprofit Employer Plaintiffs for their immigration-advocacy work. *See* Pls. Br. 15-16 and accompanying citations. As Plaintiffs explained in their opening brief, the Rule's definition of "substantial illegal purpose" encompasses some of the same lawful conduct for which Plaintiffs have already been targeted. *See id.* at 16-17. The breadth of the Administration's interpretation of the terms in the Rule and its targeting of Plaintiffs create the requisite "realistic danger" that Plaintiffs will be injured by enforcement of the Rule against them.[1]

---

[1] Defendants assert that the Department's and Administration's actions in other contexts are irrelevant and that enforcement will be "limited to the standards and processes set forth in the Rule." Defs. Br. 9. But the Administration's prior actions demonstrate what it views as unlawful conduct—including, for example, that so-called sanctuary jurisdictions "violate, obstruct, and defy the enforcement of Federal immigration laws" in a "lawless insurrection" against federal law, *see* Pls. Br. 7-8 (quoting Executive Order 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025)).

Defendants argue that the risk of enforcement is undercut by Plaintiffs' affirming that they are engaged in lawful activities only, asserting that enforcement determinations under the Rule will be "objective" and evidence-based, following from settlements and court judgments. *See* Defs. Br. 8-9. But the Rule does not actually require any of those things, and nothing in the Rule stops Defendants from enforcing it based on an aggressive and contested view of what the law requires. While the Secretary *may* rely on objective measures like those highlighted in Defendants' brief, the Secretary retains subjective discretion to enforce the Rule in the absence of a court judgment, in the face of judicial precedent to the contrary, or at the direction of the President. *See, e.g.*, AR2479, AR2486, AR2501. Plaintiffs—already in the Administration's crosshairs—are particularly susceptible to that enforcement discretion. Neither does the Rule's supposed disclaimer that organizations engaging in various legal services on behalf of immigrants will not be disqualified sufficiently mitigate the threat of enforcement, where the Secretary still retains discretion to determine the meaning of "aiding or abetting" and other vague terms in the Rule.

Finally, the risk of future enforcement is not mitigated by the modicum of process that the Rule provides employers facing enforcement proceedings, nor by the opportunity for employers to requalify. Those features of the Rule are irrelevant to whether enforcement injures employers, much less whether there is a substantial risk of enforcement now. And it is absurd to suggest that the potential for reinstatement in ten years eliminates the injury created by the substantial risk of enforcement. That position is totally inconsistent with the letter and spirit of the law regarding preenforcement challenges to agency regulations.

**3. Defendants are wrong that Employee Associations' members' injuries are attenuated.**

Employee Associations do not rely on a "speculative chain of possibilities" like the plaintiffs in *Clapper*, 568 U.S. at 414, to establish standing. These Plaintiffs' members work for

6

government employers that have *already* been targeted by the Administration for lawful conduct that the Secretary may rely on as a basis for disqualification under the PSLF Rule, *see* Pls. Br. 13-14; *see also supra* Section I.A.2. Plaintiffs need not show that the harm has already occurred to satisfy *Clapper*'s "certainly impending" standard. *See Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 69 (1st Cir. 2025) (showing that termination of Department staff would render agency unable to meet statutory obligations satisfied *Clapper* without showing that those obligations were *already* unmet). Plaintiffs have shown that their members' employers have been targeted for conduct that the PSLF Rule targets, and they need not show the employers have already been disqualified to establish injury.

### B. Plaintiffs' claims are ripe.

Plaintiffs challenge a final rule that is about to take effect, imposes immediate compliance obligations, and is already causing harm. Defendants' arguments on ripeness are baseless.

In assessing ripeness, courts evaluate "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) (citation omitted). As with standing, "parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of 'serious criminal and civil penalties.'" *Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967)).

Plaintiffs satisfy both prongs. As to fitness, "the critical question . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated or . . . at all." *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995)). A case is fit for review if it "turns on legal issues 'not likely to be significantly affected by further factual development.'" *Id.* (quoting *Ernst*

7

*& Young*, 45 F.3d at 536). Plaintiffs' claims are "purely legal," *Susan B. Anthony List*, 573 U.S. at 167, and require no further factual development. As to hardship, the PSLF Rule is already creating "a 'direct and immediate' dilemma for the parties," *McInnis*, 319 F.3d at 70 (quoting *Stern v. U.S. Dist. Court*, 214 F.3d 4, 10 (1st Cir. 2010)), including the present injuries they are already suffering as described above. Defendants' arguments to the contrary, at 11-12—that Plaintiffs cannot be injured unless and until the Department disqualifies them from PSLF—fail for the same reasons their standing arguments do.

## II.  The PSLF Rule is unlawful under the APA.

### A.  The Rule is contrary to the Higher Education Act.

Defendants acknowledge that "an agency literally has no power to act . . . unless and until Congress confers power upon it," *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). The question is whether the statute "delegates discretionary authority" for the agency action. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). Defendants do not—and could not—argue that the HEA "expressly delegate[s] . . . authority to give meaning," *id.* at 394, to the term "public service job." Congress defined that term, *see* 20 U.S.C. § 1087e(m)(3)(B); the Rule conflicts with Congress's definition; and the HEA does not authorize the Department to define the term differently, *see* Pls. Br. 17-19.

Defendants protest, at 13-15, that the Rule does not "rewrite" or "redefine terms" in the HEA, nor limit or restrict any job categories. But that's a flat mischaracterization. The Rule newly "exclude[s] organizations" that the Secretary determines have "a substantial illegal purpose." 90 Fed. Reg. 48966. In Defendants' own words, the Rule ensures that jobs with such organizations are no longer "included in the list of PSLF-eligible 'public service jobs' under Section 1087e(m)(3)(B)." Defs. Br. 13. The Rule plainly narrows the definition of "public service jobs."

8

Defendants' resort to other sources of authority is similarly unavailing.

First, Defendants invoke several general provisions that authorize the Department to conduct general rulemaking (to govern programs administered by the Department) and housekeeping (to manage the internal affairs of the Department). Defs. Br. 12-13.[2] But an agency's "general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority." *N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541, 546 (D.C. Cir. 2020). Agencies may not invoke a "generic grant of rulemaking authority" to justify a departure from "the specific choices Congress made." *Nat'l Ass'n of Broads. v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022). Defendants cannot invoke their general rulemaking authorities to evade Congress's clear mandate, and they offer no answer to this basic principle.

Second, Defendants suggest that authority for the Rule is implicit in the statute's public-interest purpose. But "[a]gency authority may not be lightly presumed," *Michigan v. EPA*, 268 F.3d 1075, 1082 (D.C. Cir. 2001), and Defendants do not explain why the Court should "presume" that Congress intended the Department to decide which organizations serve the public interest, nor do they cite any statutory provision to support that presumption.[3] In fact, the statute's text supports the opposite conclusion: Congress already decided for itself. The HEA defines "public interest job" with a comprehensive list of fifteen qualifying job categories and excepts members of Congress. 20 U.S.C. § 1087e(m)(3)(B)); Pls. Br. 17-18. "Congress knew how to exclude" certain jobs and "chose not to" create other exceptions, *United States v. Abdelaziz*, 68 F.4th 1, 23 (1st Cir. 2023). Congress left no gap for Defendants to fill. "[A]gencies are bound not only by the ultimate

---

[2] Defendants also cite one provision that does not itself provide any authority but states that the Department "may exercise any authority" that is *already* "available by law." 20 U.S.C. § 3471(a).

[3] Defendants' cites to the Department's *own* regulatory materials (principally the Rule itself) are irrelevant. *See* Defs. Br. 13, 15 (citing 34 C.F.R. § 685.219(a); PSLF Final Rule at 48967, 48972).

purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes." *Waterkeeper All. v. EPA*, 853 F.3d 527, 535 (D.C. Cir. 2017) (cleaned up). Although there is "no doubt that a desire for [public interest] motivated . . . Congress, . . . those concerns don't give the agency carte blanche to ignore the statute whenever" the agency decides that a particular organization's work does not advance the public good. *Id.*

While *Waterkeeper* acknowledged that agencies "might" sometimes have authority to "fashion other exemptions" from regulatory requirements "consistent with the statutory purposes," *id.* at 534, it held that the EPA lacked authority for two reasons that apply here, too. First, the EPA sought to create an exemption from a statutory "mandate" that was "clear" and "sweeping." *Id.* at 535. Second, "conspicuously missing" from the underlying statute "[was] any language of delegation." *Id.* As in *Waterkeeper,* Defendants here seek to carve out exceptions from Congress' unequivocal "mandate" that the Secretary "shall cancel" the loans of borrowers who hold the public-service jobs enumerated by Congress, 20 U.S.C. § 1087e(m)(1)-(2); and the statute's text contains no "language of delegation," *Waterkeeper*, 853 F.3d at 535.

Nor can Defendants find refuge in the canon of surplusage. While Defendants argue in their brief, at 13-14, that the Rule is necessary to "make[] sense of these overlapping categories" of public-service job, the Department did not raise this rationale in the Rule and Defendants cannot rely on a post-hoc rationalization now, *see, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 37 F.4th 746, 761 (1st Cir. 2022) ("[A]n agency must stand by the reasons it provided at the time of its decision and cannot rely on post-hoc rationalizations . . . presented during litigation."). Moreover, the canon of surplusage has no bearing on an agency's rulemaking authority; it is a tool of statutory interpretation—a task that falls to "courts, not agencies," *Loper Bright*, 603 U.S. at 392. Defendants provide no case law for the proposition that Congress implicitly delegates

10

authority by drafting duplicative lists, and courts should not "presum[e] that statutory ambiguities," or redundancies, are "implicit delegations to agencies," *id.* at 399, 400.

Even if Congress had authorized Defendants to clean up redundancies, it would not justify *this* Rule, which does nothing to address overlap among enumerated public-service jobs. Defendants' argument would suggest that Congress—merely by adopting a definition with some redundancy—delegated authority to rewrite the definition of "public service job" altogether. And as a practical matter, any redundancy here requires no fix: it is not a problem (nor is it particularly surprising) that some public-service employers qualify for PSLF as both 501(c)(3) organizations and under other enumerated categories.

Finally, the illegality doctrine provides no authority for the Rule. As Plaintiffs have explained, that doctrine applies only in the context of the Internal Revenue Code. *Bob Jones Univ. v. United States*, 461 U.S. 574, 586-91 (1983). Defendants maintain that the doctrine is an "established legal standard[]" and "long-standing government practice" that the Supreme Court has affirmed. Defs. Br. 16-17. Although the doctrine has been applied by the IRS, Defendants identify no instance of an agency applying it in any other context, nor any case law upholding such an application. Defendants' reliance on the doctrine to revoke eligibility for a congressionally mandated benefit (beyond 501(c)(3) tax-exempt status) is thus not the sort of "established practice" that should receive "great weight" from reviewing courts, *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014). Defendants also fail to explain why the Court's reasoning in *Bob Jones*—which drew on the legislative history, tradition, and text particular to the tax code, 461 U.S. at 586-91—should apply here or have any application whatsoever to governmental entities.

### B.  The Rule is arbitrary and capricious.

The Rule is arbitrary and capricious in violation of the APA in at least seven different ways, Pls. Br. 17-24. Defendants' arguments in response to each are either unresponsive or unsupported.

11

*Reliance on impermissible factors*. Defendants do not directly acknowledge, let alone rebut, Plaintiffs' argument that the Rule impermissibly "relied on factors which Congress has not intended it to consider"—namely, whether the Secretary determines that an organization has an "illegal purpose." *See* Pls. Br. 23 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). That alone suffices to conclude the Rule is arbitrary and capricious.

*Failure to substantiate the problem*. Defendants cannot justify the Rule's failure to produce any evidence that PSLF employers are actually engaged in unlawful activities. Pls. Br. 23-24. Defendants' brief points to no evidence and no statement in the Rule to corroborate the existence of the supposed problem, *see* Defs. Br. 17-24. Defendants' sole response is that the Department "must exercise its judgment" regarding the "facts and probabilities on the record" where "the available data does not settle a regulatory issue[.]" *Id.* at 21 (quoting *State Farm*, 463 U.S. at 52). Defendants miss the point. This is not a case in which the record contains *some* "facts and probabilities" that could—albeit inconclusively—suggest that a problem exists; this is a case in which the record contains *no* such evidence *whatsoever*.[4] The Rule is "highly capricious" because it "represents a classic solution in search of a problem." *New York v. HHS*, 414 F. Supp. 3d 475, 546 (S.D.N.Y. 2019); *HBO, Inc. v. FCC*, 567 F.2d 9, 36 (D.C. Cir. 1977).

*Failure to account for reliance interests.* Defendants' arguments on reliance interests are also anemic. Defendants insist that the Rule adequately considered employees' interests because an employer's disqualification will not affect the PSLF credit a borrower has already accrued and employees can simply change jobs, Defs. Br. 20. But the Department failed to consider the significant disruption an employee faces when changing jobs (including but certainly not limited

---

[4] As previously explained, *see* Pls. Br. 24, the Rule itself suggests—again without evidence or an explained methodology for the estimate—that fewer than ten of the millions of qualifying employers would be subject to its restrictions annually. *See* AR2495, AR2498.

12

to lost eligibility for family leave), let alone the interests of employees who may not be able to secure a new job with a qualifying employer. *See* Pls. Br. 24-26. Defendants ignore that argument and cannot point to any aspect of the Rule that considers these obvious impacts on borrowers.

Defendants likewise contend that the Rule adequately addressed employers' interests because it includes a process for employers to regain eligibility. Defs. Br. 20. But Defendants again ignore Plaintiffs' actual arguments: the Rule makes it harder for employers across the board to recruit and retain candidates based on PSLF eligibility, regardless of whether the employers are ultimately subject to any enforcement action. Pls. Br. 25. As many commenters explained, employees can no longer rely on their employers' qualifying status in light of the substantial uncertainty that the Rule has introduced. *Id.* (citing AR478-AR479); *see also* AR492-AR493; AR665; AR811. The post-disqualification process does not address these concerns, and the Rule wholly ignores these significant reliance interests.

*Failure to explain rejected alternatives*. Defendants also fall short of their obligation to reasonably explain why the Department declined to simply rely on other entities to enforce the supposed illegal activities that the Rule purportedly targets. The Rule's explanations on that score were implausible and unsupported by evidence. For example, although the Rule asserts that an organization whose 501(c)(3) status is revoked by the IRS "could remain eligible for PSLF," it does not explain why that is so, Pls. Br. 25-26 (citing AR2471). In response to these and other flaws, Defendants summarily assert that the Department "expressly considered" alternatives and "a broad range of proposals" before determining that the Rule is an appropriate solution to prevent PSLF benefits from going to employees of organizations that the Department deems to have an illegal purpose. Defs. Br. 19-20 (citing 90 Fed. Reg. at 48997). Again, Defendants' position is not responsive to Plaintiffs' arguments at all. What's more, the portions of the Rule quoted by

13

Defendants do not provide the requisite explanation. Such "conclusory statements will not do; an 'agency's statement must be one of *reasoning*." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (citation omitted).

*Ambiguous terms that invite arbitrary enforcement.* Defendants also fail to meaningfully address Plaintiffs' argument that key terms are poorly defined and thus create ambiguity that invites arbitrary enforcement. The Rule does not meaningfully define "aiding [and] abetting" or "engaging in a pattern" of discrimination, nor does it specify when an employer "operates separately and distinctly" from another. *See* Pls. Br. 26-27. These terms, then, are left to the Secretary's discretion. *Id.*[5] Defendants neither point to definitions of these terms in the Rule nor explain why such ambiguity will not lead to arbitrary enforcement. *See* Defs. Br. 17-24. Defendants' rejoinder is that the "'defined parameters of the rule [] help the Department to avoid arbitrary enforcement,'" *id.* at 21 (quoting 90 Fed. Reg. at 48977), and that the Rule's definitions "have precise meanings" and are "generally understood by the public," *id.* at 22 (quoting 90 Fed. Reg. at 48980). These are just more "conclusory statement[s]" from the Rule, *Amerijet*, 753 F.3d at 1350, and they are insufficient. Nor can Defendants rely on the enforcement process to cure these ambiguities. Defs. Br. 23. For example, that a supposedly "unbiased adjudicator" will weigh the evidence, *id.*, does not negate the Rule's failure to define a "pattern" of discrimination in the first instance. The Secretary is still free to interpret the evidence as she pleases.[6]

---

[5] Though ambiguous terms alone make the Rule arbitrary and capricious, the problem is exacerbated by this Administration's track record. As explained at length, *see* Pls. Br. 7-8, the Administration has characterized lawful actions by those who do not share its views—including some Plaintiffs—as violations of laws referenced in the Rule. Defendants rely on statements in the Rule implying that employers will not face enforcement so long as they "abide by Federal law." *See, e.g.*, Defs. Br. 20 (quoting 90 Fed. Reg. at 48973). But Defendants do not deny or disavow the Administration's views of the relevant immigration and civil-rights laws. *See generally id.*

[6] Moreover, Defendants repeatedly rely on supposed procedural protections that are promised in the preamble to the Rule but are not required by the regulation itself.

*Failure to consider lack of expertise.* The Rule is also plagued by its failure to consider the Department's lack of expertise in the laws at issue, ranging from complex federal immigration laws to state healthcare regulations. Pls. Br. 27-28. Defendants pin their hopes on the Rule's purported pledge to "defer to the judgments of State Courts" and rely on "existing findings of unlawful activity . . . where appropriate." Defs. Br. 22 (quoting 90 Fed. Reg. at 48980). But the Rule makes clear that the Secretary need not rely on such judgments or existing findings and may substitute her own judgment on complex factual and legal questions in areas completely outside her and the Department's expertise. *See, e.g.*, AR2486 ("[T]he Department does not believe that it is appropriate to only rely on final judicial or administrative rulings before taking action . . . . When the Department finds that an organization's activity . . . has a substantial illegal purpose, . . . it is the appropriate time to remove PSLF eligibility."). As Defendants themselves emphasize, the Department will weigh evidence, identify patterns of behavior, evaluate the severity of the violation, and make a final determination of illegality "by a preponderance of the evidence," Defs. Br. 23 (quoting 90 Fed. Reg. at 48970-71, 48987). Resolution of such issues cannot be reduced to a mechanical application of "existing findings" and "judgments" from "courts and other regulators." The Department fails to explain, for example, how it will handle issues of first impression (for which there are no "existing judgments") or judgments without accompanying findings, or how it will exercise its discretion to *not* defer to existing judgments. In all instances, the adjudicatory role the Department has arrogated to itself and to the Secretary requires expertise that they lack—a key issue that the Rule ignores.

*Failure to consider chilling effects and compliance costs.* The Department neglected to consider that the Rule will undermine the very purpose of the PSLF program by discouraging borrowers from entering or remaining in public service—even though multiple commenters raised

this issue. Pls. Br. 29-30 (quoting AR220, AR366). The Rule did not evaluate an "important aspect of the problem," as it was required to do, *State Farm*, 463 U.S. at 43. Defendants again fail to respond to this defect. Nor do Defendants meaningfully rebut Plaintiffs' arguments that employers will be chilled from engaging in lawful activities, *see* Pls. Br. 30. Although Defendants insist that the Rule will not affect law-abiding organizations, Defs. Br. 20, they ignore the heart of Plaintiffs' argument: that the ambiguities inherent in the definition of "substantial illegal purpose" will cause regulated entities to forgo legal conduct to avoid enforcement risk. Neither the Rule nor Defendants' brief addresses this issue. Finally, Defendants argue that the Rule at least "acknowledges" the compliance costs that Plaintiffs have shown. Defs. Br. 20. But again, Defendants do not actually respond to Plaintiffs' argument that the Rule assumed without evidence that compliance costs for small entities would be "minimal," Pls. Br. 30-31.

### C.  The Rule is viewpoint discriminatory.

Defendants contend that Nonprofit Employer Plaintiffs cannot challenge the Rule on its face[7] and that regardless the Rule does not impinge their—or any other employers'—speech rights. Nonprofit Employer Plaintiffs have shown that the Rule is unconstitutional on its face and as applied to them.

a. The Rule is unconstitutional on its face. It was born of an executive order directing the Department to exclude from PSLF qualification employers who do not share the Administration's views on immigration, diversity and inclusion, gender-affirming care, and protest activity—views that the order characterized as "anti-American," not "legitimate," and undermining "American values." *See* AR2502-AR2505. The Department fulfilled that mandate by promulgating a rule that

---

[7] Defendants argue that Plaintiffs' request improperly "begins and ends with a sweeping request that the PSLF Final Rule be vacated," but vacatur is an appropriate and typical remedy for an agency action that violates the Administrative Procedure Act, *see infra* Section III.

disqualifies, at the Secretary's discretion, employers that the Secretary determines are engaged in those activities and thus have a so-called "substantial illegal purpose." In the administration of a benefit designed to facilitate private speech, the Rule threatens disqualification of employers who hold views at odds with the Administration's on these subjects but imposes no such threat on employers who hold views that are consistent with the Administration's.

A facial challenge is appropriate because every application of the Rule poses a risk of chilling protected speech, *see Ateba v. Leavitt*, 133 F.4th 114, 119 n.5 (D.C. Cir. 2025). As Plaintiffs have explained, the breadth with which the Department and this Administration have characterized the categories of activities that give rise to disqualification; the vagueness and malleability of the Department's definition of terms like "substantial illegal purpose," "aiding and abetting," and "pattern of discrimination"; the lack of guardrails around how determinations of illegality are made; and the Secretary's substantial and arbitrary enforcement discretion together mean that the Rule threatens speech and expressive conduct that the First Amendment protects. *See, e.g.*, Pls. Br. 29-31, 32-34; *supra* pp. 14-16. It sets an unduly restrictive and ultimately opaque standard for what speech is permissible that is inherently unlawful because virtually "every application creates an impermissible risk of suppression of ideas." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129 (1992); *see also, e.g.*, *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984); *Ateba*, 133 F.4th 119 n.5 (facial challenge permissible where rule delegated too much discretion to decisionmaker).

b. Even as applied to Nonprofit Employer Plaintiffs, Defendants argue that Plaintiffs' speech is not violated by having to certify that they are not violating federal or state law. Defs. Br. 25-26. But, as described above, the Rule itself is not limited to disqualifying employers found to violate federal or state law, and it permits investigation, enforcement, and punishment for

17

conduct—including Nonprofit Employer Plaintiffs' protected speech and expression—that is not otherwise prohibited by federal or state law and protected by the First Amendment. The breadth of the Rule sets it apart from the certification at issue in *National Urban League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025)—the only case that Defendants cite in support of their position—which was solely about violations of federal anti-discrimination laws.

And insofar as Defendants suggest that the Rule does not impinge Nonprofit Employer Plaintiffs' speech because Plaintiffs can still technically express any view they want (they just might sacrifice PSLF qualification), Defs. Br. 25-26, they are wrong. Government "cannot do indirectly what [it] is barred from doing directly," *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 190 (2024), and Defendants ignore the well-established doctrine concerning the impermissibility of viewpoint- or content-based discrimination when the government subsidizes private speech, *see* Pls. Br. 33-34.

### III. Vacatur is the appropriate remedy.

The plain text of the APA instructs that courts "shall" "hold unlawful and set aside agency action" that is contrary to law, arbitrary and capricious, or contrary to constitutional right. 5 U.S.C. § 706(2)(A)-(C). Plaintiffs have shown that the PSLF Rule contravenes the HEA, is arbitrary and capricious, and violates the First Amendment, and thus the Rule should be vacated. Defendants' beleaguered arguments to the contrary—that Section 706 of the APA does not actually authorize vacatur of unlawful final agency action, or alternatively that vacatur should be limited to Plaintiffs under traditional equitable principles—are unavailing.

As to their first argument, Defendants acknowledge that the APA's "set aside" remedy has been understood in this Circuit and elsewhere to provide for vacatur, not just plaintiff-specific relief, in the ordinary course. *See, e.g.*, *New York v. Trump*, No. 25-1236, 2026 WL 734941, at *19 (1st Cir. Mar. 16, 2026) ("If a district court decides that agency guidance violates the APA, it may

18

vacate the guidance, preventing the agency from using it going forward." (quoting *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2662 n.1 (2025) (Barrett, J., concurring))); *Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39, 50 (1st Cir. 2025) (recognizing "remedy of vacatur" under Section 706); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors*, 603 U.S. 799 (2024) (Kavanaugh, J., concurring) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the actions are vacated—not that their application to the individual petitioners is proscribed." (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989))); *Career Colls. & Schs. of Tex. v. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (relief under Section 706 is "not party-restricted"). Defendants offer no countervailing authority.[8]

As to their second argument, Defendants "fundamentally misunderstand[] vacatur as a remedy," *Ass'n of Am. Univs. v. Dep't of Def.*, 806 F. Supp. 3d 79, 121 (D. Mass. 2025). "[V]acatur acts directly on the 'agency action,'" *id.* (quoting *Corner Post*, 603 U.S. at 838 (Kavanaugh, J., concurring)), whereas injunctive relief is "directed at someone, and govern[s] that party's conduct," *id.* at 122 (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)). The scope of relief from vacatur depends entirely on the scope of the "irreducible" agency action, *Ass'n of Am. Univs.*, 806 F. Supp. 3d at 121—here, the PSLF Rule.

That remains true even after the Supreme Court's decision in *Trump v. CASA, Inc.*, which specifically did not address the "distinct question" of the scope of relief under the APA. 606 U.S. 831, 847 n.10 (2025); *id.* at 869 (Kavanaugh, J., concurring) ("[I[n cases under the [APA], plaintiffs may ask a court to preliminarily set aside a new agency rule" (citation omitted)). The Court's holding in *CASA*, after all, turned on its interpretation of the Judiciary Act of 1789; the

---

[8] Defendants raise this argument solely to "preserve" it, Defs. Br. 27 n.3, effectively conceding that this Court must follow existing precedent recognizing vacatur as an available APA remedy.

Court found that the Act did not provide courts with "equitable authority to issue universal injunctions." *Id.* at 839. Yet, as Justice Kavanaugh has explained, even if "equitable relief is ordinarily limited to the parties in a specific case[,] . . . in the APA, Congress did in fact depart from that baseline and authorize vacatur." *Corner Post,* 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring).

Courts to consider the availability of vacatur under the APA post-*CASA* agree. *See Make the Road N.Y. v. Noem*, 2025 WL 3563313, at *34 (D.C. Cir. Nov. 22, 2025) (statement of Millett and Childs, JJ.) ("*CASA* does not control the scope of relief available under Section 705 . . . . *CASA* is a statutory-interpretation case, and the statute interpreted was the Judiciary Act of 1789. Necessarily then*, CASA* is not a case about the scope of relief for agency review authorized by the APA when it was adopted in 1946."); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 767 (9th Cir. 2026) (affirming vacatur under Section 706 post-*CASA* where relief could not be limited to plaintiffs' members "because Plaintiffs do not simply challenge the application of the [agency's actions] to them, they challenge the Secretary's very authority to act"); *Ass'n of Am. Universities*, 806 F. Supp. 3d at 122-23.

Consistent with the text of the APA and longstanding precedent, the Court should vacate the PSLF Rule.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for summary judgment; deny Defendants' cross-motion to dismiss or, in the alternative, for summary judgment; declare the Rule unlawful; and vacate the Rule.

Dated: April 6, 2026

Respectfully submitted,

*/s/ Sarah R. Goetz*

Sarah Goetz*
Jennifer Fountain Connolly*
Victoria S. Nugent*
Simon C. Brewer*
Robin F. Thurston*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
sgoetz@democracyforward.org
jconnolly@democracyforward.org
vnugent@democracyforward.org
sbrewer@democracyforward.org
rthurston@democracyforward.org

Persis Yu (BBO #685951)
PROTECT BORROWERS (a fiscally sponsored
project of the Shared Ascent Fund)
1025 Connecticut Ave NW, #717
Washington, DC 20036
Phone: (202) 618-1328
persis@protectborrowers.org

R. T. Winston Berkman-Breen*
Khandice Lofton*
PROTECT BORROWERS (a fiscally sponsored
project of the Shared Ascent Fund)
40 Rector Street, 9th Floor
New York, NY 10006
winston@protectborrowers.org
khandice@protectborrowers.org

*Counsel for Plaintiffs National Council of Nonprofits, City of Boston, City of Albuquerque, City of Chicago, Amica Center for Immigrant Rights, Coalition for Humane Immigrant Rights, Legal Aid Society of the District of Columbia, Oasis Legal Services, American Federation of Teachers, American Federation of State, County and Municipal Employees, National Education Association, and National Association of Social Workers*

* Admitted pro hac vice

21

David Chiu*
*City Attorney*
Yvonne R. Meré*
*Chief Deputy City Attorney*
Mollie M. Lee*
*Chief of Strategic Advocacy*
Molly J. Alarcon*
Sophia L. Cai*
*Deputy City Attorneys*
CITY AND COUNTY OF SAN FRANCISCO
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102
Phone: (415) 554-4274
Cityattorney@sfcityatty.org
Yvonne.Mere@sfcityatty.org
Mollie.Lee@sfcityatty.org
Molly.Alarcon@sfcityatty.org
Sophia.Cai@sfcityatty.org

*Counsel for Plaintiff City and County of San Francisco*
* Admitted pro hac vice

Tony LoPresti*
*County Counsel*
Kavita Narayan*
*Chief Assistant County Counsel*
Meredith A. Johnson*
*Lead Deputy County Counsel*
Laura S. Trice*
*Deputy County Counsel*
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, Ninth Floor
San José, CA 95110-1770
Phone: (408) 299-5900
Fax: (408) 292-7240
Tony.LoPresti@cco.sccgov.org
Kavita.Narayan@cco.sccgov.org
Meredith.Johnson@cco.sccgov.org
Laura.Trice@cco.sccgov.org

*Counsel for Plaintiff County of Santa Clara*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2026, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


Dated: April 6, 2026                                   */s/ Sarah R. Goetz*

                                                        Sarah Goetz