**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NATIONAL COUNCIL OF NONPROFITS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> LINDA MCMAHON, *et al.*, <br> *Defendants*. | Case No. 25-cv-13242-MJJ |

| | |
|---|---|
| MASSACHUSETTS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, *et al.*, <br> *Defendants*. | Case No. 25-cv-13244-MJJ <br><br> Leave to file excess pages granted on January 27, 2026 |

**<u>DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR CROSS MOTION
TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.      Plaintiff Have Not Established Standing or Ripeness.......................................... 2

II.     The PSLF Final Rule is Consistent with the Department's Authority................................ 5

III.    Summary Judgment Should be Entered in Defendants' Favor on Plaintiffs'
        Arbitrary and Capricious Claim............................................................................. 7

IV.     The NCP Plaintiffs' First Amendment Claim is Without Merit. ...................................... 9

V.      Any Relief Should be Limited to the Parties Before the Court. ..................................... 11

CONCLUSION.................................................................................................................... 11

CERTIFICATE OF SERVICE ............................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Bantam Books v. Sullivan*,
   372 U.S. 58 (1963)...................................................................................................... 11

*California v. Texas*,
   593 U.S. 659 (2021).................................................................................................... 11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................................................ 2, 3, 5

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)...................................................................................................... 8

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)..................................................................................................... 2, 3

*FERC v. Elec. Power Supply Ass'n,*
   577 U.S. 260 (2016).................................................................................................... 8, 9

*Frese v. Formella*,
   53 F.4th 1 (1st Cir. 2022).............................................................................................. 10

*Gill v. Whitford*,
   585 U.S. 48 (2018)........................................................................................................ 11

*Littlefield v. Mashpee Wampanoag Indian Tribe*,
   951 F.3d 30 (1st Cir. 2020)........................................................................................... 6, 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983).......................................................................................................... 8

*National Rifle Association v. Vullo*,
   602 U.S. 175 (2024).................................................................................................. 10, 11

*Nat'l Urb. League v. Trump*,
   783 F. Supp. 3d 61 (D.D.C. 2025)................................................................................... 9

*Pub. Citizen, Inc. v. Trump*,
   297 F. Supp. 3d 6 (D.D.C. 2018)................................................................................ 3, 10

*Saline Parents v. Garland*,
   88 F.4th 298 (D.C. Cir. 2023)......................................................................................... 5

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)........................................................................................................ 2

*Texas v. United States*,
   523 U.S. 296 (1998)..................................................................................................... 3, 5

*U.S. Postal Serv. v. Konan*,
   146 S. Ct. 736 (2026).................................................................................................... 6

*United States v. Dist. of Columbia*,
   44 F. Supp. 2d 53 (D.D.C. 1999)................................................................................. 2

*United States v. Texas*,
   599 U.S. 670 (2023)...................................................................................................... 11

*Waterkeeper Alliance v. EPA*,
   853 F.3d 527 (D.C. Cir. 2017)...................................................................................... 7

**STATUTES**

5 U.S.C. § 706(2) .............................................................................................................. 11

20 U.S.C. § 1087e(m)(1).................................................................................................... 7

**REGULATIONS**

William D. Ford Direct Loan (Direct Loan) Program,
   90 Fed. Reg. 48966 (Oct. 31, 2025)............................................................................. 1, 2

**ADMINISTRATIVE MATERIALS**

*Restoring Public Service Loan Forgiveness*,
   Executive Order 14235 (Mar. 7, 2025)......................................................................... 9

**INTRODUCTION**

The Public Service Loan Forgiveness ("PSLF") Final Rule "fills out the statutory scheme Congress placed under" the Department of Education's ("Department") "supervision" by ensuring that "organizations that break the law and have a substantial illegal purpose" are not rewarded by the Department and American taxpayers. *See* William D. Ford Direct Loan (Direct Loan) Program, 90 Fed. Reg. 48966, 48972 (Oct. 31, 2025) ("PSLF Final Rule"). Plaintiffs insist that the PSLF Final Rule should be vacated because it is allegedly based on the application of novel legal standards for the determination of whether conduct is illegal. However, as Defendants have emphasized, the PSLF Final Rule "makes no substantive changes to the legality of certain actions but changes the consequences for breaking the law where an employer has a substantial illegal purpose." *Id*. at 48974. Stated differently, PSLF "[e]ligibility determinations are made by considering the activities employers engage in that are unlawful either under [existing] Federal or State law." *Id*. at 48978. The PSLF Final Rule *only* requires Plaintiffs' certification that they do not have a substantial illegal purpose—an assertion they readily and repeatedly make in this case. Plaintiffs thus cannot establish any ripe or redressable Article III injury.

Plaintiffs' claims also fail on the merits. The Department's objectives and decisions with respect to the PSLF Final Rule are embodied in the voluminous administrative record and lengthy PSLF Final Rule, which memorialize negotiated rulemaking sessions and nearly 14,000 comments with detailed responses. Both the administrative record and the PSLF Final Rule underscore that it is the policy of the Executive "to prevent Federal funds from subsidizing activities that undermine national security and American values." *Id*. at 48966. The policies and priorities of the current administration naturally informed the Department's rulemaking, but at bottom, the PSLF Final Rule is supported by a significant record that bolsters each of the decisions made. For the reasons set forth in Defendants' initial brief and further explained below, the PSLF Final Rule does not violate the APA or the Constitution. Accordingly, final judgment should be entered for Defendants on all claims.

1

**ARGUMENT[1]**

I.    **Plaintiff Have Not Established Standing or Ripeness.**

The PSLF Final Rule is clear that it is "limited to ensuring that employers meet statutory requirements for lawful public service activities." PSLF Final Rule at 48973. It explicitly states that "[o]rganizations that abide by Federal law and the laws of the State in which they operate will not be subject to potential loss of eligibility." *Id*. Plaintiffs, again, stress that their conduct is lawful. *See Nat'l Council of Nonprofits v. McMahon*, 1:25-cv-13242 (D. Mass.), ECF No. 112 at 5 ("NCP Reply"); *Commonwealth of Mass. v. U.S. Dep't of Educ.*, 1:25-cv-13244, (D. Mass.), ECF No. 101 at 4 ("Mass. Reply"). Thus, by Plaintiffs' own admission, they are not suffering any "actual or imminent" injury by virtue of the PSLF Final Rule that is redressable for Article III purposes. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Plaintiffs' "speculative" allegations about the potential that their admittedly lawful activities may be deemed unlawful amount to—at most—"possible future injury" that does not suffice under Article III. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified); *see also United States v. Dist. of Columbia*, 44 F. Supp. 2d 53, 58 (D.D.C. 1999) (If the "future events contemplated by the [Plaintiffs] are too speculative and the hardship is too abstract[,]" then the claims "[are] not ripe for review[.]"). Indeed, Plaintiffs rely on an attenuated chain of possibilities—that the Department commences enforcement action against them, that through those enforcement proceedings the Department determines that Plaintiffs have violated the law in a way enumerated in the PSLF Final Rule, that any reconsideration proceeding by Plaintiffs is unsuccessful, and that the Department ultimately deems Plaintiffs ineligible to participate in the PSLF program because they have a substantial illegal purpose. However, the Supreme Court has rejected theories of standing that rest on such a "speculative chain of possibilities." *Clapper*, 568 U.S. at 414; *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (explaining that because the theory of standing depended on a chain of contingencies, it might have demonstrated "a

---

[1] Defendants re-incorporate the arguments made in their consolidated initial brief and focus this filing on the arguments in Plaintiffs' oppositions.

chance" of injury, but "hardly [the] likelihood" necessary to satisfy Article III); *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 39 (D.D.C. 2018) ("And because this theory of harm is too uncertain to support standing, Plaintiffs' self-inflicted injury—sustained in order to avoid that speculative harm—must also fail."); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (A claim is not fit "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

Plaintiffs nevertheless argue that "regulatory costs and administrative burdens," NCP Reply at 2-4, sufficiently establish standing. But all the PSLF Final Rule requires is that Plaintiffs certify  what they readily and repeatedly admit in this case—that they are following the law. *See* PSLF Final Rule at 49002. Plaintiffs have not sufficiently pled or demonstrated any harm from certification, alone. Instead, Plaintiffs point to self-inflicted costs, including "determining what the Rule requires, collecting data on employment-verification processes, responding to inquiries from employees, and employing compliance counsel," NCP Reply at 2, but Plaintiffs' compliance preparations stemming from speculative fears about potential future action are neither reasonable nor traceable to any action by the Department. *See Clapper*, 568 U.S. at 416 ("The contention that [plaintiffs] have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing."). Similarly, because Plaintiffs have not established any injury from certification under the PSLF Final Rule, any claims from purported harms stemming from certification are not ripe. *See Texas,* 523 U.S. at 300-01. And any alleged hardship of having to certify what Plaintiffs readily admit in this case does not merit the Court wading into the legality of this PSLF Final Rule at this juncture. Despite Plaintiffs' suggestions to the contrary, NCP Reply at 3-4, *Alliance* and *Clapper* are mandatory authorities for these bedrock Article III principles. *See All. for Hippocratic Med.*, 602 U.S. at 381; *Clapper*, 568 U.S. at 414-16.

Plaintiffs also claim that they have standing and that their claims are ripe due to the purported "threat of enforcement." *See* NCP Reply at 4-7; Mass. Reply at 3-5. Plaintiffs argue that the PSLF Final Rule is "aimed directly" at them, Mass. Reply at 3, given policy

disagreements with the Federal government. NCP Reply at 5; Mass. Reply at 4.  But the PSLF

Final Rule, on its face, underscores that the controlling standard is violation of the law, not

policy disagreements.  *See* PSLF Final Rule at 48973.  Indeed, the PSLF Final Rule responds to

commentators who—like Plaintiffs—expressed concerns about how the government would

construe their missions by disclaiming that any determinations would be colored by the policy

preferences of the employer.  *See id.* at 48974 ("Federal law does not prohibit individuals from

advocating for illegal immigrants or representing them in Federal immigration court.

Organizations that do not aid or abet in criminal activity will not be disqualified from

participating in the PSLF program, while organizations that participate in unlawful behavior may

have a substantial illegal purpose depending on the nature of the offenses."); *id*. at 48978 ("The

Department would have no basis to remove eligibility from nonprofits engaged in work related to

immigrant communities, LGBTQ+ individuals, or racial justice if those organizations are

following the law."); *id*. at 48980 ("The Department rejects the idea that ordinary, lawful

assistance such as legal advice, medical care, or humanitarian support could trigger PSLF

disqualification."); id. at 48981 ("Medical providers performing activities within the bounds of

Federal and State law will not be affected.").  Plaintiffs' critique that the Department has not

"disavowed enforcement against [any] employers[,]" Mass. Reply at 4, has no bite because the

PSLF Final Rule applies equally to all employers consistent with its goal to "ensure that the

Department is not indirectly subsidizing [any] employers engaged in activities that have a

substantial illegal purpose that harm fellow Americans."  PSLF Final Rule at 48967.

Similarly, the Mass. Plaintiffs' reliance on the PSLF Final Rule's deterrent effect, Mass.

Reply at 1-2, is a red herring because constitutional causation and traceability is lacking.  The

Mass. Plaintiffs claim that they have standing because the PSLF Final Rule "will impact the

States' ability to recruit and retain quality employees." *Id*. at 2.  But that claim fundamentally

turns on whether employers engage in illegal conduct that constitutes a "substantial illegal

purpose" under the PSLF Final Rule.  *See, e.g.*, PSLF Final Rule at 48978 ("Only where a

determination has been made that an organization is engaging in illegal activities such that it has

a substantial illegal purpose will PSLF eligibility be at issue."). Although the PSLF Final Rule may "deter organizations from engaging in unlawful behavior," *id*. at 48991, Plaintiffs have not sufficiently demonstrated that any purported impact on their "recruiting tool[s]" has been caused by any reasonably likely employer designation under the PSLF Final Rule. *Clapper*, 568 U.S. at 415-16. At a minimum, fitness for review is lacking. *See Texas*, 523 U.S. at 300; *Saline Parents v. Garland*, 88 F.4th 298, 307 (D.C. Cir. 2023) ("Absent a concrete factual context, determination of the scope and constitutionality of a purported government policy in advance of its immediate adverse effect involves too remote and abstract an inquiry for the proper exercise of the judicial function. Judicial appraisal of the issue is likely to stand on a much surer footing in the context of a specific application of agency policy than could be the case in the framework of a generalized challenge." (citation modified)).

At bottom, the PSLF Final Rule only requires that employers certify they do not have a substantial illegal purpose, as dictated by existing Federal and State laws. In this case, Plaintiffs have repeatedly and without any apparent burden assured that they are in full compliance with all applicable laws. Plaintiffs' purported injuries thus hinge entirely on the potential that the Department may in the future, through enforcement, find that they have a substantial illegal purpose and deem them ineligible to participate in the PSLF program. As a result, Plaintiffs identify no imminent or impending injury stemming from the PSLF Final Rule, only an abstract fear that the Rule might be enforced in ways that remove their PSLF eligibility despite their compliance with Federal and State laws. These speculative claims regarding potential future harm do not pass Article III muster because they are not concrete, particularized, traceable to government action, or ripe and, as a result, the Complaint should be dismissed in its entirety.

**II.    The PSLF Final Rule is Consistent with the Department's Authority.**

There is no meaningful dispute that the Department has the authority to promulgate regulations governing the programs it administers, including the PSLF program. *See* NCP Reply at 9; Mass Reply at 11-12. The crux of the parties' disagreement lies in the Department's discharge of that authority and, specifically, whether the Department's interpretation of the term

5

"public service job" under the PSLF statute conforms with the statutory text.  *See* NCP Reply at 8; Mass. Reply at 7.

First, the PSLF Final Rule is not a "a departure from the specific choices Congress made."  NCP Reply at 9 (citation omitted); Mass. Reply at 6.  Defendants chiefly maintain that the PSLF Final Rule closely tracks the PSLF program's text and purpose by ensuring that only those professions that advance the public interest constitute eligible public service jobs.  *See* Defs' Consolidated Opp'n to Pls' Mots. for Summ. J. & Cross-Mot. to Dismiss, or in the Alternative for Summ. J., at 12-13, ECF No. 99 ("Defs' Cross-Motion"); *see* PSLF Final Rule at 48972 ("This rule advances the statutory scheme Congress created in section 455(m)(3)(B) of the PSLF statute in the HEA, which includes multiple references to public service in defining public service job."); *id*. at 48984 ("The Department does not believe Congress intended to prop up and subsidize the unlawful behavior of organizations.").[2]  The PSLF Final Rule does not depart from the "comprehensive list" of profession that Congress selected, *see* NCP Reply at 9, but instead ensures that the employers in those professions are serving the public interest consistent with PSLF's purpose.  Stated differently, the PSLF Final Rule does not "re-write[,]" Mass. Reply at 9, the statute by altering the categories of jobs eligible for PSLF benefits; rather, it embodies the Department's oversight in accordance with Congressional intent.

Second, Plaintiffs seemingly acknowledge surplusage in the categories of jobs listed under the PSLF statute's definition of "public service job[.]"  *See* NCP Reply at 11; Mass. Reply at 7.  Although Plaintiffs argue that any redundancies do not justify the PSLF Final Rule, *see* NCP Reply at 11, the Department takes its "commitment to promoting sound financial stewardship of government programs" seriously, PSLF Final Rule at 48999.  Pursuant to its authority, the Department interprets "these overlapping and arguably duplicative categories" to mean that "Congress provided for a long list of eligible professions to broadly ensure that all

---

[2] Consistent with *U.S. Postal Serv. v. Konan*, 146 S. Ct. 736 (2026), and *Littlefield v. Mashpee Wampanoag Indian Tribe*, 951 F.3d 30 (1st Cir. 2020), Defendants primarily rely on the text of the statute and secondarily rely on canons of interpretation to understand and give meaning to the redundancies in the statutory text.  *See* Mass. Reply at 6.

professions that *advance the public interest* were included in the list" and conversely to exclude organizations that "are breaking the law, which is contrary to the public interest." *Id*. at 48972 (emphasis added). The Department agrees with Plaintiffs that "Congress often intentionally uses statutory terms 'in an overlapping manner' in order to 'better' effectuate its purpose." Mass Reply at 8 (quoting *U.S. Postal Serv.*, 146 S. Ct. at 746). The PSLF Final Rule correctly interprets this "long list of eligible professions to broadly ensure that all professions that advance the public interest were included in the list." *See* PSLF Final Rule 48972; *see id*. ("This provides an important clue in interpreting the underlying statute, as the Department must presume that Congress would not want PSLF benefits to be received by employees of organizations that the Department knows are not serving the public interest. This includes organizations that are breaking the law, which is contrary to the public interest."). Although the NCP Plaintiffs hang their hat on the D.C. Circuit's decision in *Waterkeeper Alliance v. EPA*, 853 F.3d 527 (D.C. Cir. 2017), that decision is of no moment because the PSLF Final Rule does not purport alter the PSLF's loan cancellation mandate. If an organization does not break the law and is otherwise eligible under the PSLF program, then the loans of qualified borrowers working for that organization "shall" be cancelled. *See* 20 U.S.C. § 1087e(m)(1).[3]

## III.    Summary Judgment Should be Entered in Defendants' Favor on Plaintiffs' Arbitrary and Capricious Claim.

Plaintiffs argue that the PSLF Final Rule lacks rationales and justifications and that any consideration turns on factors Congress did not intend for the Department to consider. *See* NCP Reply at 11-12; Mass. Reply at 12-15. However, the PSLF Final Rule explains that it is "a necessary evolution of PSLF oversight" because it "strengthens the fundamental purpose of PSLF—to encourage borrowers to enter occupations that improve their communities and

---

[3] Plaintiffs again claim that the PSLF Final Rule improperly relies on the illegality doctrine, *see* NCP Reply at 11, but the PSLF Final Rule's references to the illegality doctrine only reinforce that the Department's rationale is not novel. *See* Defs' Cross-Motion at 16-17; *see also* PSLF Final Rule at 48973 ("The history surrounding the creation and use of the illegality doctrine is instructive in assessing whether this rule is unconstitutional or is a form of executive overreach.").

advance the public good while also guarding against the diversion of Federal benefits to organizations that harm their fellow Americans by engaging in illegal conduct." PSLF Final Rule at 48968. The PSLF Final Rule was promulgated to address the PSLF program's "significant challenges over the years, including high denial rates, administrative barriers, and widespread confusion among borrowers." *Id*. at 48969. To that end, the PSLF Final Rule "strengthens transparency and ensures PSLF is restored to its intended focus on public service for the betterment of communities" by ending "the subsidization of employment at organizations that are not only failing to serve the public interest but are actually doing harm by engaging in illegal conduct." *Id*. Moreover, contrary to Plaintiffs' assertions, NCP Reply at 12, Mass. Reply at 17, the PSLF Final Rule contains an extensive evaluation of reliance interests. *See* PSLF Final Rule at 48984, 48989-90; *see also* Defs' Cross-Motion at 20-21.

The Department's consideration (and explanation) of the impetus and rationale for the PSLF Final Rule satisfies the narrow and deferential arbitrary and capricious standard. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Indeed, the Department need only articulate "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (citation omitted). Plaintiffs may not agree with the Department's policy choices and determinations, but that does not render those conclusions arbitrary or capricious. *See FERC v. Elec. Power Supply Ass'n,* 577 U.S. 260, 292 (2016) ("A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives."). Additionally, despite Plaintiffs' critique of the Department's expertise and authority on this topic, NCP Reply at 14-15, the PSLF Final Rule emphasizes that "Congress charged the Department with the responsibility to administer the PSLF program" and "[f]ully delegating the responsibility for program integrity to a third party and thereby relinquishing the Department's role in safeguarding that integrity would constitute an abdication of its statutory duty." PSLF Final Rule at 48987. Specifically, "[w]aiting until another entity acts would create unnecessary delays, cost taxpayers more, and make the Department captive to third parties who may or may

not have an interest in protecting the Federal fiscal interest." *Id*.

Further, Plaintiffs' arguments that the PSLF Final Rule improperly creates new standards, that those standards are ambiguous, and that they chill lawful activities are premised on mischaracterizations of the scope and application of the PSLF Final Rule. *See* NCP Reply at 12-16; Mass. Reply at 12-18. Defendants have at all times emphasized that determining whether an organization has a substantial illegal purpose turns on whether that organization has violated Federal or State law (*i.e.*, the State Plaintiffs' own laws). *See, e.g.*, Defs' Cross-Motion at 22. That is the key inquiry in the PSLF Final Rule, and it governs the Department's selection of discrete, unlawful activities. At bottom, the PSLF Final Rule "prevents Federal funds from subsidizing harmful illegal activities through a program designed to reward public service." PSLF Final Rule at 48967. It follows that Federal programs are administered pursuant to the policies and priorities of the Executive—the PSLF Final Rule clearly articulates this point at the outset. *See id*. at 48966 ("This action aligns with President Trump's Executive Order *Restoring Public Service Loan Forgiveness*, Executive Order 14235 (Mar. 7, 2025) directing the Department to revise PSLF eligibility criteria to prevent Federal funds from subsidizing activities that undermine national security and American values."). The PSLF Final Rule does not, as Plaintiffs suggest, create new, ambiguous legal standards. *See* NCP Reply at 14; Mass Reply at 15. Instead, it exclusively relies on standards with settled legal meanings. *See, e.g.*, PSLF Final Rule at 48980. For the same reason, the PSLF Final Rule does not chill *lawful* conduct and any over-correction from Plaintiffs is not traceable to the PSLF Final Rule, *see supra* part I. To be clear, the PSLF Final Rule only restricts Plaintiffs' ability to engage in illegal activities while also maintaining PSLF benefits—activities that would be illegal even without those benefits.

**IV.    The NCP Plaintiffs' First Amendment Claim is Without Merit.**

The NCP Plaintiffs' facial and as-applied First Amendment challenges fail because the PSLF Final Rule is not focused on what organizations may say about any topic and a provision requiring parties "to certify that they do not violate federal laws that they are otherwise obligated to comply with does not chill protected speech." *See* Defs' Cross-Motion at 24-25 (quoting *Nat'l*

9

*Urb. League v. Trump*, 783 F. Supp. 3d 61, 103 (D.D.C. 2025)). As Defendants explained in their initial brief, the PSLF Final Rule does not violate the First Amendment because it only restricts Plaintiffs' ability to engage in illegal activities while also maintaining PSLF benefits— activities that would be illegal even without those benefits. *See id*. at 24. The NCP Plaintiffs nonetheless insist that the PSLF Final Rule violates the First Amendment given its purported "vagueness and malleability," NCP Reply at 17, but such vagueness claims are, at best, due process challenges that face their own insurmountable obstacles and that Plaintiffs do not assert. *See Frese v. Formella*, 53 F.4th 1, 6 (1st Cir. 2022) ("The vagueness doctrine, a derivative of due process, protects against the ills of laws whose prohibitions are not clearly defined." (quotation omitted)).

Plaintiffs rely on *National Rifle Association v. Vullo*, 602 U.S. 175 (2024), for the proposition that the PSLF Final Rule is view-point discriminatory. *See* NCP Reply at 18. But *Vullo*, which sets forth a third-party coercion framework, is inapposite. Unlike the PSLF Final Rule, *Vullo* concerned a government official's attempt to cudgel an insurance provider into no longer insuring the National Rifle Association ("NRA") because the official disagreed with the NRA's viewpoints. 602 U.S. 175. If the insurer did not comply and discontinue its coverage of the NRA, the government threatened to pursue the insurer for "technical infractions . . . unrelated to any NRA business." *Id*. at 192. The PSLF Final Rule makes clear that, notwithstanding the Executive's policy views, any enforcement will depend on an employer's violation of existing State or Federal law such that it has a substantial illegal purpose. This is easily distinguishable from *Vullo*, where the government official was not just executing the official's enforcement responsibilities, but threatening use of enforcement powers to coerce a specific regulated entity to disassociate from a particular organization with which the official disagreed. Stated differently, in *Vullo*, the official targeted a private entity and threatened non-enforcement-based financial retaliation. Here, in contrast, the PSLF Final Rule looks to existing laws to determine whether an employer's violation of any such laws renders its operations contrary to the public interest.

10

Moreover, concurring in *Vullo*, Justice Jackson stated that "the effect of [the government's] alleged coercion of regulated entities on the NRA's speech [was] significantly more attenuated" than in earlier applications of the third-party coercion doctrine, signaling that *Vullo* represents the outer boundary of what it means for an enforcement agency to "establish[] 'a system of prior administrative restraints.'" 602 U.S. at 202 (Jackson, J., concurring) (quoting *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963)). Unlike in *Vullo*, the PSLF Final Rule does not establish any similar system of restraint or coercion. The PSLF Final Rule expressly disclaims any intent to penalize employers based on their views and instead focuses only on conduct that violates existing law, precluding any incidence of unconstitutional coercion.

## V. Any Relief Should be Limited to the Parties Before the Court.

Defendants maintain that 5 U.S.C. § 706(2) is an instruction to disregard agency action as to a specific plaintiff, not to vacate generally. *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring); *California v. Texas*, 593 U.S. 659, 672 (2021) (noting that remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract" (citation modified)).

To the extent the Court is inclined to grant relief, any vacatur should apply only to those agency decisions for which Plaintiffs would suffer concrete injuries. For the reasons previously explained, Plaintiffs have not demonstrated that they will suffer any Article III injury that is concrete, particularized, traceable to government action, or ripe. The Court should thus limit any vacatur to specific agency decisions that resulted in concrete injury to the named Plaintiffs in this case. *See Gill v. Whitford*, 585 U.S. 48, 72 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it.").

## CONCLUSION

For all the reasons discussed herein, the Court should deny Plaintiffs' Motion, grant Defendants' Cross-Motion, and enter final judgment in Defendants' favor.

Dated:  April 27, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
*Trial Attorney*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC  20005
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I electronically filed this document with the Court by using the CM/ECF system, and that this document was served via the Court's CM/ECF system to all parties of record.

*/s/ Heidy L. Gonzalez*
Heidy L. Gonzalez

12